UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MICHAEL MORENO and MEDPRO, INC<br><br>    Plaintiffs,<br><br>v.<br><br>RORY E. TRINGALI<br><br>    Defendant. | Civil Action No.:<br>14-CV-04002-JBS-KMW<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION**

             **GOLDBERG & WOLF, LLC**
             1949 Berlin Road, Suite 201
             Cherry Hill, New Jersey 08003
             856-651-1600
             Attorneys for Plaintiffs

On the brief:

Warren S. Wolf, Esquire

## TABLE OF CONTENTS

TABLE OF CASES AND STATUTES..................................................................3

PRELIMINARY STATEMENT.............................................................................4

STATEMENT OF FACTS......................................................................................5

LEGAL ARGUMENT: A PRELIMINARY INJUNCTION
    IS APPROPRIATE IN THIS CASE ...............................................................6

POINT 1- Plaintiffs Will Continue to Suffer Irreparable Harm if the Preliminary
    Injunction is not Granted..............................................................................7

POINT 2- The Underlying Law is Well-Settled.......................................................8

POINT 3- Plaintiff Has Established a Likelihood of Success on the
    Merits of Its Claims .....................................................................................9

POINT 4- The Equities Balance in Favor of Plaintiff ............................................10

POINT 5- The Public Interest will be served with the Preliminary Injunction......10

CONCLUSION.......................................................................................................11

# TABLE OF CASES AND STATUTES

American Civil Liberties Union of New Jersey v. Black Horse Pike Regional Bd. of Educ.,
8 F.3d 1471 (3rd Cir. 1996) (en banc)..................................................................6

Bennington Foods LLC v. St. Croix Renaissance Group, 528 F.3d 176 (3d Cir. 2008)..............6

C.R. Bard, Inc. v. Wordtronics Corp., 235 N.J. Super 168 (Law Div. 1989).........................8

Crowe v. DeGioia, 90 N.J. 126 (1982).................................................................7

Dam Things from Denmark v. Russ Berrie & Co., 290 F.3d 548 (3rd Cir. 2002)...................6

Doe v. Nat'l Bd. of Medical Examiners, 199 F.3d 146 (3rd Cir. 1999)..............................6

EZ Sockets, Inc. v. Brighton-Best Socket Screw Mfg, Inc., 307 N.J. Super. 546 (1996)............9

In Re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137 (3rd Cir. 1982)......................6

Instant Air Freight, 882 F.2d 797 (3d Cir. 1989). ....................................................7

J.H. Renarde, Inc. v. Sims, 312 N.J. Super. 195 (Ch. Div.1998).....................................7

J.I. Kislak, Inc. v. Artof, 13 N.J. Misc. 129 (Ct. Ch.1935)............................................7

Nat'l Starch and Chem. Corp. v. Parker Chem. Corp., 219 N.J. Super.
158 (App. Div. 1987).....................................................................................7

Opticians Ass'n v. Indep. Opticians, 920 F.2d 187 (3d Cir.1990)....................................7

Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800 (3d Cir.1998).......................7

Samsung Am., Inc. v. Park, 2006 WL 3627072, (N.J. App. Div. December 11, 2006).............7

United Board and Carton Corp. v. Britting, 63 N.J. Super. 340 (App. Div. 1960)..................7

## PRELIMINARY STATEMENT

The Plaintiffs and Defendant have been competitors in the medical laser industry for over 10 years. The Plaintiffs have always operated within the boundaries of the law and competed fairly. The Defendant has a pattern of fraudulent and criminal conduct directed to the Plaintiffs and others in the medical laser industry. All the Plaintiffs have ever sought is for the Defendant to compete fairly against them.

In 2005, the Defendants sent mafia-style emails to the Plaintiffs to intimate them out of the business. The Plaintiffs and another colleague, Justin Williams, contacted the Federal Bureau of Investigation who advised that the Defendant was behind the emails.

In 2006 and 2007, the Defendant hired an internet hitman to destroy the Plaintiffs websites which are the primary source of Plaintiffs' sales. The Defendant was indicted for three crimes of the second degree. Although the Defendant admitting to orchestrating the crimes, the criminal Judge dismissed the case over a discovery dispute with the state, but such dismissal is currently pending review before the New Jersey Appellate Division.

To prove its criminal case, the state asked the Plaintiffs to provide it with Plaintiffs' sales contracts and tax returns to show damages. The Plaintiffs complied and the state produced these documents to the Defendant as part of its discovery obligations. As explained below, the Defendant has used the discovery he received from the state for the wrongful purpose to further attack and harass the Plaintiffs.

The Plaintiffs and Williams commenced a civil action to try to recover their damages before this Honorable Court. In 2012, the parties entered into a settlement agreement which contained, among other things, Non-Disparagement and Non-Defamation clauses. The parties agreed to a set amount of $5000 per violation of these clauses.

The Defendant appeared to be abiding by the agreement in 2013. However, in 2014, he began a series of defamatory attacks and other wrongful actions against the Plaintiffs and Williams. He began emailing Plaintiffs' customers and business contacts that Plaintiffs commit frauds, rip people off and used similar language to dishonestly tarnish Plaintiffs' reputations in violation of law and the agreement. The Defendant created a website purely designed to attract potential customers of Plaintiffs and Williams to show Plaintiffs commit fraud and commit scams. Upon information and belief, the Defendant obtained the identities of the Plaintiffs' customers from the state's discovery provided in the criminal case.

The Defendant is also harassing and intimidating the Plaintiffs again. He claims to have sat outside Plaintiff Michael Moreno's home observing him and his families' activities. The Defendant has improperly used the Medpro tax returns which he obtained from the state's discovery in the criminal case for the improper purpose of harassing Moreno about whether he has reported all of his taxes properly. He has emailed Moreno copies of his home valuation and other personal details to presumably spook Moreno that he's closely watching him. He constantly emails and texts Moreno to harass, annoy and intimidate him.

Plaintiffs request the Defendant be restrained and enjoined from all illegal conduct, conduct in violation of the settlement agreement, from contacting Plaintiff and Plaintiff's customers, from not seeking or publicizing any personal information about Moreno or his family members and having any contact with Plaintiffs whatsoever.

## STATEMENT OF FACTS

The facts contained within (1) the Verified Complaint attached to the Certification of Warren S. Wolf, Esquire in Support of Order to Show Cause ("Wolf Cert.") as Exhibit 1 and (2)

5

the entire Wolf Cert. with Exhibits are incorporated herein and not repeated for the sake of brevity.

## LEGAL ARGUMENT:
## A PRELIMINARY INJUNCTION IS APPROPRIATE IN THIS CASE

In order to obtain a preliminary injunction, the moving party must demonstrate "(1) the reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured pendente lite if relief is not granted. Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court 'should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.'" Bennington Foods LLC v. St. Croix Renaissance Group, 528 F.3d 176, 179 (3d Cir. 2008), quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989).

Before a District Court may grant preliminary injunctive relief in the Third Circuit, a court must weigh four factors: (1) the likelihood of the movant's success on the merits; (2) whether the movant will be irreparably injured if relief is not granted; (3) whether the party to be enjoined will suffer irreparable injury if the preliminary relief is granted; and (4) whether the public interest will be served by the preliminary injunctive relief. Dam Things from Denmark v. Russ Berrie & Co., 290 F.3d 548, 556 (3rd Cir. 2002); Doe v. Nat'l Bd. of Medical Examiners, 199 F.3d 146, 154 (3rd Cir. 1999); American Civil Liberties Union of New Jersey v. Black Horse Pike Regional Bd. of Educ., 8 F.3d 1471, 1477 n. 2 (3rd Cir. 1996) (en banc); In Re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3rd Cir. 1982). As discussed

below, a consideration of all four factors tilts decisively in favor of granting Plaintiffs a Preliminary Injunction.

### 1. Plaintiffs Will Continue to Suffer Irreparable Harm if the Preliminary Injunction is not Granted

"Irreparable harm" is generally defined in equity as the type of harm "that cannot be redressed adequately by monetary damages." Crowe v. DeGioia, 90 N.J. 126, 132-13 (1982). The inadequacy of money damages depends on the "nature of the injury or the right affected." Id. at 133. When damages cannot be quantified, such harm is considered irreparable. See, e.g., J.H. Renarde, Inc. v. Sims, 312 N.J. Super. 195, 203 (Ch. Div.1998); Nat'l Starch and Chem. Corp. v. Parker Chem. Corp., 219 N.J. Super. 158, 163 (App. Div. 1987); United Board and Carton Corp. v. Britting, 63 N.J. Super. 340 (App. Div. 1960).

To this end, diversion of a company's customers may constitute irreparable harm. J.I. Kislak, Inc. v. Artof, 13 N.J. Misc. 129, 132 (Ct. Ch.1935). This is so because the extent of the injury to the business as a result of this type of conduct cannot be readily ascertained, and as such, does not lend itself to a straightforward calculation of money damages. Samsung Am., Inc. v. Park, 2006 WL 3627072, *15 (N.J. App. Div. December 11, 2006). See also Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir.1998) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."); Opticians Ass'n v. Indep. Opticians, 920 F.2d 187, 195 (3d Cir.1990) (same). In a competitive industry where consumers are loyal, we believe that loss of market share is a "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Air Freight, 882 F.2d 797, 801 (3d Cir. 1989). As a result of the conduct of the Defendant, Plaintiffs have suffered, and will continue to suffer, irreparable harm. Plaintiffs' customer base includes the recipients of

7

Defendant's defamatory emails. Plaintiffs' customers and potential customers constantly search the internet to evaluate whether to do business with the Plaintiffs prior to purchasing their products. Such present and future customers will inevitably find the Defendants malicious attack website. The emails and website contact cause Plaintiffs to lose business and tarnish their reputations. Such a loss cannot be readily ascertained, and therefore, does "not lend itself to a straight calculation of money damages." Samsung Am., Inc., 2006 WL 3627072, at *15. There is no way to determine how many sales Plaintiffs have lost because potential customers went elsewhere after reading the Defendant's attack website.

Defendants' tormenting of the Plaintiffs with email, texts and unwanted visits to his home constitutes additional irreparable harm. Defendant's twisted use of the Plaintiff's tax returns Defendant obtained from the State in his criminal case serves no purpose, but to intentionally inflict emotional distress on the Plaintiffs. Such malicious conduct cannot be compensated with monetary damages.

### 2. The Underlying Law is Well-Settled

If a competitor uses unlawful means to compete, then it can be liable for unfair competition. C.R. Bard, Inc. v. Wordtronics Corp., 235 N.J. Super 168, 174 (Law Div. 1989). "Unlawful means" may include fraud, intimidation, misrepresentation, threats of civil or criminal action, or other violations of the law. Id. (citing McCue v. Deppert, 21 N.J. Super 591, 595-96 (App. Div. 1952)). To this end, the tort of interference with existing or prospective business relations is well-settled. The New Jersey Supreme Court set forth the elements of such a claim:

1) plaintiff must have had a reasonable expectation of economic advantage;

2) defendant must have interfered intentionally and with malice;

8

    3)    defendant's interference must have caused the loss of Plaintiff's prospective gain; and

    4)    the injury must have caused damage.

EZ Sockets, Inc. v. Brighton-Best Socket Screw Mfg, Inc., 307 N.J. Super. 546, 558 (1996)(citing Printing Mart v. Sharp Electronics, 116 N.J. 739, 351 (1980). While it is true that a business may induce a third party not to do business with a competitor, it may not use wrongful means to do so. Id. at 559.

The law is well-settled in this area and Plaintiffs are entitled to relief. Defendant's tactic of falsely advising Plaintiffs' customers via email and his attack website that Plaintiffs rip people off and commit frauds is defamatory and violates the Confidential Settlement Agreement entered into by the parties. There is no justification Defendant can offer for such hateful conduct or Defendant's intentional infliction of emotional distress upon Plaintiffs.

### 3. **Plaintiff Has Established a Likelihood of Success on the Merits of Its Claims**

Plaintiffs have established that Defendant made defamatory statements about it to customers of Plaintiffs' products and Plaintiffs' business associates, and has threatened, bullied and strong-armed Plaintiff presumably in an effort to scare him out of the business. Defendant has tortiously interfered with Plaintiffs' business relationships. There is no valid defense to this claim. The malicious attack website is presumably causing Plaintiffs to lose customers they do not even know about and will likely be unable to prove financial losses resulting from the attack website.

In short, Plaintiff is likely to succeed on the merits of its claims. As such, a preliminary injunction should be entered in Plaintiffs' favor.

### 4. The Equities Balance in Favor of Plaintiff

A balancing of the equities favors the Plaintiff. If Defendant is enjoined from defaming Plaintiffs and contacting the Plaintiffs and their customers, virtually no harm will occur to the Defendant. On the other hand, if Defendant is permitted to continue to threaten and intimate Plaintiffs' customers and business contacts, Plaintiff will, in all likelihood, have its reputation destroyed. Plaintiffs' reputation as an industry leader has been built up over 13 years in the industry. It will be nearly impossible to compensate such a loss of good will with monetary damages. The only way Plaintiffs can compete fairly is for the Defendant to follow the terms of the Settlement Agreement and not cast Plaintiffs in a negative light.

Moreover, if Defendant is restricted from contacting Plaintiffs and stalking out their house and family activities, no loss will come to Defendant. However, if Defendant keeps up his bullying conduct, Plaintiffs have to keep looking over their shoulder for the mafia- style threats contained within Defendant's Vigilantes 4 Justice emails. Equity favors the Plaintiffs.

### 5. The Public Interest will be served with the Preliminary Injunction

Defendant's harassment of the Plaintiffs does not serve the public interest because it serves to try to prevent the Plaintiff from competing fairly in the medical laser market. The false statements on the attack website cause the public to avoid doing business with the Plaintiff and thus unfairly limit competition. Defendant's emails and communications to Plaintiffs customers unfairly cast Plaintiffs in a negative light, in complete violation of the Settlement Agreement, and also hinder open competition. This will give the consumer less options for purchasing medical laser. Accordingly, the entry of the Preliminary Injunction serves the public interest and all non-parties to this action.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Honorable Court enter the Preliminary Injunction requested in the form of order.

**GOLDBERG & WOLF, LLC**

Dated: 6/25/14             BY:   /s/ Warren S. Wolf
                                 Warren S. Wolf, Esquire