IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL MORENO, et al., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | |
| v. | Civil Action<br>No. 14-4002 (JBS/KMW) |
| RORY E. TRINGALI, | |
| Defendant. | **FINDINGS OF FACT**<br>**AND**<br>**CONCLUSIONS OF LAW** |

APPEARANCES:

Warren S. Wolf, Esq.
GOLDBERG & WOLF, LLC
1949 Berlin Road, Suite 201
Cherry Hill, NJ 08003
    Attorney for Plaintiffs Michael Moreno and Medpro, Inc.

Lawrence A. Leven, Esq. (Did Not Attend)
175 Fairfield Avenue, Unit 1C
West Caldwell, NJ 07006
    Attorney for Defendant Rory E. Tringali

**SIMANDLE, Chief Judge:**

I.   INTRODUCTION

Plaintiffs Michael Moreno and Medpro, Inc.,[1] filed this unopposed motion for an Order to Show Cause why a preliminary

---

[1] Moreno is the sole owner of Medpro, Inc.

injunction should not issue against Defendant Rory E. Tringali.[2] [Docket Item 2.] In brief, Plaintiffs, who buy and sell pre-owned cosmetic lasers, accuse Tringali, a business competitor, of violating a non-disparagement and non-defamation provision of a settlement agreement arising out of prior litigation between the parties, and otherwise disparaging, defaming and harassing Plaintiffs.

Plaintiffs allege that in April 2014, Tringali created a website "for the sole purpose of harassing, intimidating and destroying the professional reputations of the Plaintiffs." (Compl. ¶ 49.) The website allegedly falsely implies that Plaintiffs are partners with, or involved in frauds and scams with, Justin Williams, Moreno's former partner. (Id. ¶ 8.) Plaintiffs also allege that Tringali recently contacted at least four of Plaintiffs' customers to "dissuade such customers from doing business with the Plaintiffs by claiming the Plaintiffs rip off their customers, commit frauds, and that there are many other victims of the Plaintiffs' alleged frauds out there." (Id. ¶¶ 8, 55.) Plaintiffs allege that Tringali "constantly emails and sends texts to Moreno to harass and intimidate him" and has

---

[2] This Court has jurisdiction under 28 U.S.C. § 1332(a). This case was removed from Superior Court of New Jersey, Burlington County, Chancery Division, by Defendant Tringali on the basis of diversity jurisdiction. Moreno and Medpro, Inc., are citizens of New Jersey, and Tringali is a citizen of New York. The matter in controversy exceeds $75,000. (Notice of Removal [Docket Item 1] ¶¶ 4-7.)

2

indirectly advised Plaintiffs (through third parties) that he "would sit outside Moreno's home, watch and take pictures of Moreno and his family." (Id. ¶¶ 62-63.)

For the reasons explained below, the Court will issue a preliminary injunction. The following constitute the findings of fact and conclusions of law supporting this preliminary injunction pursuant to Rules 52 & 65, Fed. R. Civ. P.

## II. Background

### A. Facts

On September 20, 2012, Plaintiff Michael Moreno and Defendant Rory E. Tringali, among others, executed a "Confidential Settlement Agreement and General Release," related to Medpro, Inc. v. Syneron, Inc., Civ. No. 08-3426 (JBS/KMW) (D.N.J. filed July 9, 2008). The underlying litigation involved allegations (by Moreno and Medpro, against Tringali and others) of computer fraud and abuse, Lanham Act violations, unfair competition, conversion, tortious interference with business relationships, and intentional infliction of emotional distress, among other causes of action. (See Docket Item 1, Medpro, Inc. v. Syneron, Inc., Civ. No. 08-3426 (D.N.J. filed July 9, 2008).)[3]

---

[3] A criminal indictment against Tringali for conspiracy (N.J.S.A. 2C:5-2A), computer-related theft (N.J.S.A. 2C:20-25B), and assuming a false identity (N.J.S.A. 2C:21-17A(1)), was dismissed because the State of New Jersey did not timely produce discovery to Defendant. (Compl. ¶¶ 39-43.) The State's appeal was still

3

The settlement agreement (attached to the Verified Complaint here as Exhibit A, and resubmitted as part of Exhibit 1 to the Certification of Warren S. Wolf, Esq., counsel for Plaintiffs), included a "Non Disparagement and Defamation" provision. It provides:

> Plaintiffs, Tringali and Syneron agree not to make any disparaging remarks about any Party to the civil litigation or cast any such party in a negative light, except to the Prosecutor or Judge in the pending criminal litigation. The parties agree that each violation of this section will result in the greater of $5000 damages per se or any actual damages a party can prove. This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.
>
> Plaintiffs and Defendants agree not to make any defamatory remarks about any Party to the civil litigation. The parties agree that each violation of this section will result in the greater of $5000 damages per se or any actual damages a party can prove. This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.

(Compl. Ex. A at 7-8 [Docket Item 2-1 at 33-34].)

Notwithstanding Tringali's non-disparagement and non-defamation promise above, on April 4, 2014, Tringali sent an e-mail to Moreno and Justin Williams. The e-mail from Tringali ("Subject: Gloves are off"), reads: "I had ENOUGH with you, this is just the BEGINNING!" (Compl. Ex. B [Docket Item 2-1 at 41].)

---

pending when this matter was originally filed in state court. (Id. ¶ 44.)

The e-mail contains a hyperlink to "Justin-Williams-Brooke-Horan-Williams-Laser-Fraud-Crooks.com." (Id.)

That website[4] begins with the text: "Justin Williams: PRO Scammer," followed by "Justin Williams and Brooke Eden Horan Laser Fraud Crooks." (Compl. Ex. C at 1.) It continues: "The biggest fraud crooks couple in the Cosmetic Laser Industry. Educate yourself before dealing with these individuals!" (Id. at 2.) The website has several references to Moreno and Medpro ("Mike Moreno Medpro Lasers, New Jersey Business Partner Justin Williams"), and displays excerpts of e-mails from 2012 and 2013 composed by or addressed to Moreno or his customers. (Id. at 2-4.) Representative e-mails, punctuated with phrases like "I HAVE BEEN SCAMMED!!!", read in part:

> Mike/John,
>
> you are quite a team!!, over two years ago I wired money to you and till date you don't feel anything that I have had to wait and wait and wait, while listening to your numerous stories and excuses that make me ashamed for you.

(Id. at 3.)

> Jon/Mike
>
> as per my last email, I would like to terminate my contract with Med Pro. I DO NOT want to receive the laser from you. . . . [M]y lawyer . . . will be in contact with Mike within next couple of days to start legal proceedings.

---

[4] A printout from April 28, 2014, is in the record at Exhibit C to the Complaint, which is attached to the present motion at Exhibit 1.

5

(Id.)

>   Mike and john,
>
>   At this point I know I am not expecting anything from you guys. if this is how you do business I wonder why nobody has decided to do the right [sic] and help people in the aesthetics business to put you out of business.

(Id. at 7.)

Other e-mails describe connections between Williams and Moreno and Medpro, including the assertion that Williams used to be the manager of Medpro in Utah. (Id. at 4-5.) Much of the rest of the website focuses on Williams and Horan personally, including videos of Williams's house; photos of Williams, his house, cars, and other vehicles; a copy of his passport and driver's license; and photos of allegedly "fake" materials, presumably sold or otherwise handled by Williams. (Id. at 8-33.) The website promises "More pictures and documents coming soon!" (Id. at 33.) The website concludes with a message about Williams and Horan:

>   You can help stop these crooks! Speak your word!
>
>   Have you been a victim of these crooks Justin Williams and Brooke Eden Horan. Contact us with your story. Send us documents, picture or any compromising material you may have. We will post them on all our 148 justin Williams and brooke eden horan's affiliate websites.

(Id. at 38.)

The record also contains copies of e-mails from Tringali to one of Moreno's customers, including one from April 5, 2014:

6

> Leanne,
> Call me urgently. [Phone number omitted.]
> I have the way to help right now please.
> Do not answer or response to any email from justin, mike Moreno or Brooke or their lawyers, if they settled with you just tell me that. If they made you sign a settlement agreement making you sign a non disparagement agreement I cannot help you.
> I jus [sic] helped two victims and hopefully
> Help my self as well.
> Trust me,
> Rory Tringali

(Compl. Ex. D at 1-2.) The customer forwarded the e-mails to Moreno, saying "I have 12 more of these things if you want them all. I don't know what is going on but you completed your transaction with me so we are good . . . ." (Id. at 8.) One of the e-mails sent by Tringali to a third party appears to have information about (or a link to a webpage with information about) Moreno's residence, including the purchase price and property taxes. (Id. at 8-9.)

Another e-mail from Tringali to Moreno ("Subject: tax returns great for iIRS" [sic]) says: "Hope you reported well you and p[****] in Austin". (Compl. Ex. E at 1.) Attached is an image of the first page of several federal income tax returns for Medpro from 2005, 2006 and 2007. (Id. at 2.)

Finally, the record includes an e-mail from Tringali on April 3, 2014, publicizing information about Brooke Horan Williams, and Justin Williams's parents, including phone

7

numbers, e-mails and addresses, and social security numbers. (Pl. Ex. 5 [Docket Item 2-3 at 31-35].)

### B. Procedural history

On May 12, 2014, Plaintiff commenced this action in Superior Court of New Jersey, Burlington County, by filing the Verified Complaint and Defendant timely removed the action to this Court. [Docket Item 1.] The Verified Complaint contains the following causes of action: (1) defamation, (2) defamation per se, (3) tortious interference with prospective business relations, (4) intentional infliction of emotional distress, (5) civil assault, (6) breach of contract, (7) intrusion of privacy/seclusion, (8) intrusion of privacy/false light, (9) common law unfair competition, and (10) injunctive relief. (Compl. ¶¶ 71-134.)

Plaintiffs filed the present motion for an order to show cause. [Docket Item 2.] Plaintiffs seek, among other things, a preliminary injunction directing Defendant to remove disparaging and defamatory statements from websites and other online forums; to cease and desist making disparaging or defamatory comments about Plaintiffs; to cease and desist contacting Plaintiffs or their customers; to stay away from Moreno's home; and to refrain from trying to obtain, distribute or publicize any personal information about the Plaintiffs or Moreno's family, including,

8

but not limited to, social security numbers, bank account numbers, and tax returns. [Docket Item 2-3 at 36-37.]

The Court entered the Order to Show Cause on June 26, 2014, which was duly served on Defendant's counsel [Docket Item 5], and Defendant's response was due July 11, 2014, for a hearing on July 23, 2014, at 11:00 A.M. Defendant did not file opposition, and did not appear at the hearing,[5] at which the Court received testimony from Plaintiff Moreno that the disparaging comments and statements about him on Defendant's website and in e-mail correspondence have no basis in fact and are false. The Court considered the Verified Complaint, the testimony of Moreno, the Certification of Warren S. Wolf, Esq., and the Exhibits attached thereto.

**III. Preliminary injunction standard**

In the Third Circuit, to obtain a preliminary injunction, "a plaintiff must show: '(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.'" Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 249-50 (3d Cir. 2011)

---

[5] Defendant seems to have ignored his responsibilities in this case. After removing the case, Defendant has never filed an answer, nor has defense counsel sought leave to withdraw.

(quoting Kos Pharm. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004)).

**IV. Discussion**

  **A. Likelihood of success on the merits**

Plaintiffs have demonstrated a likelihood of success on the merits for breach of contract, among other claims. "To establish a breach of contract claim, a plaintiff has the burden to show [(1)] that the parties entered into a valid contract, [(2)] that the defendant failed to perform his obligations under the contract and [(3)] that the plaintiff sustained damages as a result." Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007); Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 411 (2009) (citing Murphy with approval).

The Court finds that Plaintiffs have presented a valid contract -- the settlement agreement -- with a non-disparagement and non-defamation provision. (Compl. Ex. A 7-8.) Plaintiffs also present evidence that Defendant has disparaged Moreno and Medpro on his website and in e-mails to third parties by implying Plaintiffs' involvement in fraudulent conduct or scams with Justin Williams. (Compl. Ex. B.) These statements are strong evidence that Defendant failed to perform his obligations under the non-disparagement provision of the settlement agreement. Finally, Moreno testified that Defendant contacted several of his customers and attempted to persuade them not to

10

do business with Moreno. Although Moreno does not have specific evidence of lost business as a result of Tringali's efforts, he asserts that his business has slowed in the past few months. He also argues that it is impossible to quantify the impact of the false website and e-mail statements by Tringali on his reputation. (Pl. Mot. at 8.) The Court finds that the statements about Plaintiffs' business dealings are of a kind that tends to cause reputational harm that is difficult to quantify. Defendant's e-mail exchange with a Medpro customer further demonstrates a likelihood that Plaintiffs would establish damages from the breach of contract. Tringali's references to "help[ing] two victims" of Moreno and/or Williams suggests that Tringali had contact with other Medpro customers and succeeded in convincing them not to do business with Plaintiffs. (Compl. Ex. D at 1.) Plaintiffs' customer admitted that completing the transaction with Plaintiffs "was extremely stressful" with "this person[']s added commentary." (Id. at 8.)

    The Court holds that Plaintiffs have demonstrated a likelihood of success on the merits for a breach of contract claim with this unopposed evidence. Plaintiffs are likely to prove that Tringali's comments about Plaintiffs were also defamatory and false, and that they are likely to continue unless enjoined.

Plaintiffs also have demonstrated a likelihood of success on the merits for intrusion on seclusion. To prove a claim for intrusion on seclusion, the plaintiff must show that the defendant "intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 588 (2009).

The Court finds that Defendant has engaged in a pattern of publicizing personal information, including social security numbers of relatives of Moreno's former business partner. At the hearing before the Court, Moreno represented that Defendant has released bank account information about his business. Such distribution of this private data likely would be highly offensive to a reasonable person. Defendant's website also evinces an intention to release more documents as they are obtained, and Defendant has communicated to third parties his intention to travel to Moreno's home. Where Defendant has caused, and has threatened to continue to cause, personal distress and apprehension due to invasion of private interests and places, Moreno is not required to wait until further incursions happen before enjoining them. Plaintiffs have shown enough to establish a likelihood of success on the merits for

intrusion on seclusion, and Defendant has not contested or opposed any of Plaintiffs' allegations, assertions or evidence.

**B.    Irreparable harm**

Next, Plaintiffs must make a "clear showing of immediate irreparable injury." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1986). For a breach of contract claim, to determine whether a remedy in damages would be adequate, a court may consider the Restatement (Second) of Contracts: "'(a) the difficulty of proving damages with reasonable certainty; (b) the difficulty of procuring a suitable substitute performance by means of money awarded as damages; and (c) the likelihood that an award of damages could not be collected.'" Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 802 (3d Cir. 1989). The Third Circuit has found that the loss of reputation or goodwill, or the loss of market share, or the destruction of a business may constitute irreparable harm. See Robert E. Bartkus & Elizabeth J. Sher, N.J. Federal Civil Procedure § 5-2 at 175-76 (2014) (collecting cases). The Third Circuit has recognized that the "potential for damage to . . . reputation" may constitute irreparable harm in some circumstances. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 196 (3d Cir. 1990) ("Potential damage to reputation constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.").

13

Plaintiffs claim that they "have suffered, and will continue to suffer, irreparable harm" because "Plaintiffs' customer base includes the recipients of Defendant's defamatory emails" and Defendant's website will reach "Plaintiffs' customers and potential customers." (Pl. Mot. at 7-8.)

Plaintiffs have made a showing of irreparable harm. Defendant has contacted Plaintiffs' customers and has posted on the Internet disparaging comments about Moreno and his business practices. Two of the three factors in <u>Instant Air Freight</u> favor finding that money damages are inadequate: the difficulty of proving damages with reasonable certainty and the difficulty of procuring suitable substitute performance by means of money awarded in damages. The third factor -- the likelihood that an award of damages could not be collected -- cannot be determined on the record.

The type of allegations that Defendant has lodged against Moreno and Medpro, and Defendant's meddling contact with Plaintiffs' customers, are of a kind capable of causing immediate and irreparable harm. Moreno represented to the Court that he cannot quantify his business losses, but testified that his business is down and Defendant contacted at least one of his international customers, who later communicated to Moreno that she did not want to upset Defendant and have him "coming after her." This testimony supports the conclusion that Defendant's

14

campaign of harassment and disparagement is having an effect on the relationships between Plaintiffs and their customers. The record contains evidence that Defendant has contacted several other customers, and Defendant himself represented that he "helped" two "victims" of fraud, implying that Defendant dissuaded them doing further business with Plaintiffs. This harm is irreparable. The harm caused by publication of private and personal information, such as bank accounts and social security numbers is likewise irreparable.

    **C.**    **Harm to other interested parties**

Defendant would not be harmed if enjoined from disparaging Plaintiffs on his website or other online forums, or from refraining from publishing personal information about Plaintiffs, or visiting Moreno's home. This factor weighs in favor of a preliminary injunction.

    **D.**    **Public interest**

There is a public interest in the dissemination of truthful information about businesses, but the public is harmed by the spreading of false and defamatory statements about businesses, which could mislead consumers. There is a public interest in keeping the marketplace free from false accusations of fraud or other crimes against business rivals. This factor weighs in favor of a preliminary injunction.

**E.     Summary**

Plaintiffs have established a likelihood of success on the merits and made a clear showing of irreparable harm. The entry of a preliminary injunction would not harm Defendant and would advance the public interest keeping the marketplace free of false and defamatory statements about business competitors. Defendant offers no opposition in his own defense to any of Plaintiffs' allegations, assertions or evidence, and did not appear in his own defense before this Court. Because this motion was unopposed, and because there is no prospect of monetary harm to Defendant if this preliminary injunction proves to have been improvidently granted, the Court will waive the requirement of Fed. R. Civ. P. 65(c) for Plaintiffs to post an injunctive bond.

**V.     CONCLUSION**

For the reasons explained above, the Court will enter a preliminary injunction against Defendant Tringali. An accompanying Preliminary Injunction Order will be entered. In addition to the electronic posting of these documents on the Court's docket, the Order also provides that Plaintiffs' counsel shall mail a copy of these Findings of Fact and Conclusions of

16

Law and of the Order for Preliminary Injunction to both defense counsel and to Defendant to assure full and prompt notice.[6]

| | |
|---|---|
| **July 24, 2014** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |

---

[6] Ordinarily, service upon counsel of record suffices and there is no contact between an attorney and an opposing party who is represented by counsel, as in this case. Due to the seeming inaction of Mr. Leven in answering the Verified Complaint and appearing upon this motion, in an abundance of caution the Court authorizes direct service by mail upon Mr. Tringali at his last known address.