IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MICHAEL MORENO and MEDPRO, INC.

          Plaintiffs,

    v.

RORY E. TRINGALI,

          Defendant.

HONORABLE JEROME B. SIMANDLE

Civil No. 14-4002 (JBS/KMW)

**OPINION**

APPEARANCES:

Warren S. Wolf, Esq.
GOLDBERG & WOLF, LLC
1949 Berlin Road, Ste 201
Cherry Hill, NJ 08003
    Attorney for Plaintiffs

Robert A. Vort, Esq.
Suite 101
2 University Plaza
Hackensack, NJ 07601
    Attorney for Defendant

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

This is an action by Plaintiffs Michael Moreno and Medpro Inc. against a business competitor, Defendant Rory Tringali, for violating a non-disparagement and non-defamation provision of a settlement agreement arising out of prior litigation between the parties, and otherwise defaming, disparaging, and harassing Plaintiffs. The case was removed to this Court by Defendant in June 2014, and, after Defendant Tringali failed to answer or

otherwise present a defense, the Clerk entered default.
Plaintiffs filed a motion for an Order to Show Cause why a
preliminary injunction should not issue, and the Court granted
Plaintiffs' motion and issued a preliminary injunction on July
24, 2014. Among other things, the Court ordered Defendant to
cease and desist from disparaging and defaming Plaintiffs on an
internet website, consistent with the "Non Disparagement and
Defamation" provision of the parties' settlement agreement from
2012.

Defendant has now moved to vacate default and to file an
Answer and Counterclaim adding additional parties to the action.
[Docket Item 12.] He also moves for an Order to Show Cause why a
preliminary injunction should not issue against Plaintiffs,
alleging that Plaintiffs violated the same non-disparagement and
non-defamation provision by directing a former business partner
to make two negative web postings about Defendant online.
[Docket Item 21]. For the reasons below, the Court will deny
Defendant's motion to set aside default and dismiss Defendant's
motion for a preliminary injunction as moot.

## II.  BACKGROUND

### A. Procedural History

The facts of this case have been set forth in an earlier
Opinion by this Court and need not be repeated at length here.

(July 24, 2014 Findings of Fact and Conclusions of Law [Docket Item 9].)

  Plaintiffs Michael Moreno and Medpro Inc. ("Medpro") buy and sell pre-owned cosmetic lasers. They filed a complaint against Defendant Rory E. Tringali, a business competitor, alleging, among other things, that Defendant was disparaging, defaming, and harassing Plaintiffs, and had breached the "Non Disparagement and Defamation" provision of an existing settlement agreement between them, which the parties entered into on September 20, 2012 after litigation. (Ex. A to Compl. [Docket Item 1-1] at 7-8.) Specifically, Plaintiffs alleged that Defendant Tringali put up a website (Ex. C to Compl. [Docket Item 1-1]) "for the sole purpose of harassing, intimidating and destroying the professional reputations of the Plaintiffs." (Compl. [Docket Item 1] ¶¶ 49.) The website allegedly falsely implies that Plaintiffs are partners with, or involved in frauds and scams with, Moreno's former business partner, Justin Williams. Plaintiffs also alleged that Tringali contacted at least four of Plaintiffs' customers to try to dissuade them from doing business with Plaintiffs. Finally, Plaintiffs complained that Tringali continued to harass Moreno via emails and texts. (Compl. ¶¶ 55-59; 62-64.)[1]

---

[1] In addition to a breach of contract claim, the Complaint

Defendant Tringali, through his attorney Lawrence A. Leven, removed the action to this Court on June 17, 2014. Shortly thereafter, on June 25th, Plaintiffs filed a motion for an Order to Show Cause why a preliminary injunction should not issue. The Court entered an Order to Show Cause on June 26, 2014, which was duly served on Mr. Leven as Defendant's counsel of record [Docket Item 5], and Defendant's response was due July 11, 2014, for a hearing on July 23, 2014. Defendant filed no opposition. Defendant also did not respond to the Complaint, and on July 21, 2014, the Clerk entered default against Defendant for failure to answer or otherwise respond.

Defendant Tringali and his attorney, Mr. Leven, did not appear at the July 23rd hearing, at which the Court received testimony from Plaintiff Moreno that the disparaging comments and statements about him on Defendant's website and in email correspondence were false. On July 24, 2014, the Court granted Plaintiffs' motion for a preliminary injunction. [Docket Items 9 & 10.] Among other things, the Court ordered Defendant Tringali to (1) remove all references to Plaintiffs on Defendant's

---

contains the following causes of action: (1) defamation; (2) defamation per se; (3); tortious interference with prospective business relations; (4) intentional infliction of emotional distress; (5) civil assault; (6) intrusion of privacy/seclusion; (7) intrusion of privacy/false light; (8) common law unfair competition; and (9) injunctive relief.

website and any other website under his control; (2) delete any posts he created about Plaintiffs on any websites, blogs, chat rooms, and reviews which cast Plaintiffs in a negative light; (3) cease and desist from disparaging and/or defaming Plaintiffs and/or casting them in a negative light. (Preliminary Injunction Order [Docket Item 10].)[2]

**B. Defendant's Motion to Vacate Default**

After the Court's preliminary injunction findings and order were entered and electronically served upon attorney Leven, 73 days elapsed with no response from Leven or Defendant Tringali. Finally, on October 6, 2014, Tringali, represented by a new attorney, Robert A. Vort, Esq., moved to vacate the default and for leave to file an answer and counterclaim.[3] [Docket Item 12.]

---

[2] Additionally, the Court ordered Defendant to (1) cease and desist from contacting any of Plaintiffs' customers; (2) cease and desist from contacting Plaintiffs other than through counsel; (3) stay outside a 500-yard radius of Plaintiff's home in New Jersey; (4) refrain from defaming or disparaging Plaintiffs within the business community; (5) refrain from trying to obtain, distribute or publicize any private and personal information about Plaintiff Moreno or Moreno's family. [Docket Item 10.]

[3] Although Tringali's certification attached to his motion to vacate default is styled as a "Certification of Defendant in Support of Motion to Vacate Preliminary Injunction and for Leave to File Answer," Defendant's Proposed Order seeks only to vacate the default and permit the filing of an answer and counterclaim. Defendant's brief is only in support of a motion to vacate default, and the Tringali Certification makes clear that he is not asking the Court to modify or vacate the preliminary injunction. (Rory Tringali Cert. in Support of Mot. to Vacate Prelim. Inj. and for Leave to File Answer ("Tringali Cert.")

In support of his motion, Defendant attaches a certification by
Lawrence A. Leven, Defendant's previous attorney. Leven states
that when he took on Defendant's case, he "agreed to represent
Mr. Tringali in this action only until he obtained substitute
counsel whose office was closer to Camden," and that he did not
know until July 21, 2014, the date that default was entered,
that Tringali had not found new counsel. (Lawrence A. Leven
Cert. in Support of Mot. to Vacate Default ("Leven Cert.")
[Docket Item 12-2] ¶ 3.) Thus, two days before the July 23rd
preliminary injunction hearing, Leven knew that default had been
entered and that his client's case was in trouble, but he did
nothing. Leven asserts that at the time, he was "distracted" by
a trial in Essex County and by the funeral of a friend and was
"in no position to respond" to the request to enter default.
(Id.) He also asserts that the failure to respond to Plaintiffs'
motion for an order to show cause and to appear at the show
cause hearing was "entirely my fault because of my equivocal
conduct in not being more emphatic with Mr. Tringali." (Id. ¶
6.) He asserts that he has referred the case to Robert A. Vort,
"who will be filing a substitution of counsel simultaneously

---

[Docket Item 12-1] ¶ 3 ("I am not asking the Court now to modify
vacate[sic] the injunction it previously issued, either in whole
or in part. I ask only for the opportunity to defend this case
on the merits and to file claims against the plaintiffs and
others with whom they transact business.""))

with a motion to modify the default." (Id.) Leven's certification is dated September 17, 2014. Neither Leven nor Vort explains why Leven did not apprise the Court in July or August that he was not acting as Tringali's attorney any more, such as by seeking leave to withdraw. Moreover, there is no indication that either Leven or Vort extended the courtesy toward Plaintiff and Plaintiff's counsel that professionalism demands of a lawyer.

Defendant Tringali also filed a certification. Defendant asserts that he knew of Plaintiffs' application for a preliminary injunction and believed that Leven was preparing an opposition to it. He asserts, "Until today [September , 2014, but day is blank] when I read his certification, I did not understand that he was expecting me to retain new counsel for this action." (Tringali Cert. in Supp. of Mot. to Vacate [Docket Item 12-1] ¶ 3.)

Defendant argues that Leven's "failure to do anything in defense of the application for preliminary injunction" or to answer the Complaint demonstrates excusable neglect, because Tringali was entitled to rely on his attorney to abide by the Court's deadlines. (Mot. to Vacate [Docket Item 12-4], at 2-3.) Since Tringali says he was aware of the preliminary injunction motion and the entry of the preliminary injunction order against

7

him, he must also have been aware that his attorney had prepared
no opposition and that the July 23rd hearing had gone forward
without any defense presence, despite Leven's removal of the
case to this federal court. Thus, Tringali's statement that he
didn't realize that Leven was not defending him in the matter
until September 17th cannot be true.

Plaintiffs filed a timely opposition to Defendant's motion,
arguing that Defendant's conduct in state court prior to removal
demonstrates that the failure to answer in this Court was
willful. [Docket Item 15.][4] In a certification by Plaintiffs'
attorney, Warren S. Wolf, Wolf asserts that shortly after the
Complaint and motion for preliminary injunction was initially
filed in state court, Plaintiffs attempted to serve the
Complaint upon Mr. Leven, who had represented Defendant in
previous disputes involving the same parties. (Cert. of Warren
S. Wolf in Opp. to Mot. to Vacate ("Wolf Cert.") [Docket Item
15-3] ¶ 6.) Mr. Leven then wrote a letter to the court stating
that he was Defendant's former attorney and did not represent
Defendant in the current matter. (See Wolf Cert. ¶ 7; Leven
Letter, Ex. B to Wolf Cert. [Docket Item 15-3].) Mr. Wolf
asserts that this was untrue, as the Appellate Division had

---

[4] Along with the opposition, Plaintiffs filed a cross motion,
which they later withdrew, to hold Tringali in contempt for
violating the preliminary injunction. [Docket Items 16, 20.]

informed him that Mr. Leven was Defendant's current counsel on the appeal of a criminal case. (Wolf Cert. ¶ 8.)

The Superior Court then ordered Plaintiffs to re-serve the complaint on Defendant Tringali, which Plaintiffs did by personal service on May 27, 2014. (Id. ¶ 10; Aff. of Service, Ex. D to Wolf Cert. [Docket Item 15-3].) Wolf states that as a result of Defendant's mischaracterization, the state court rescheduled the hearing on Plaintiffs' preliminary injunction from May 23, 2014 to June 20, 2014. Three days before the hearing, on June 17th, Defendant, acting through Mr. Leven, removed the case to this Court. (Wolf Cert. ¶ 11.) This demonstrates that Leven indeed represented Tringali; no one now suggests that he didn't.[5] Leven's statement to the Superior Court, that he did not represent Tringali, upon which the Superior Court relied in adjourning the first preliminary injunction hearing for a month, was not true.

Plaintiffs argue that Defendant's failure to respond in this case, when viewed in light of Defendant's actions in state court, showed a "strategic attempt to delay the entry of the

---

[5] It is not surprising that Leven represented Tringali in this case and filed the removal petition on his behalf, since Leven also represents Tringali in connection with defending his related criminal charges in State v. Tringali, Ind. No. 08-03-0037-S (Crim. Div., Burlington County, N.J.), which was recently dismissed for lack of territorial jurisdiction on April 22, 2015, as discussed below. See Part III.A, infra.

preliminary injunction." (Opp. to Mot. to Vacate [Docket Item 15-2], at 2.) They also argue that default should not be set aside because Defendant has no meritorious defense to the action since he admitted to most of the conduct alleged by Plaintiffs. (Id. at 6-8.) They finally argue that they were prejudiced by Defendant's delay tactics because the show cause hearing in state court scheduled for May 23rd had to be rescheduled for June 20th, and Defendant was allowed to keep his website active for an additional 28 days. (Id. at 10.)

### C. Defendant's Motion for a Preliminary Injunction

Before the Court could rule on Defendant's motion to vacate, Tringali moved for a preliminary injunction [Docket Item 21], claiming that Plaintiffs violated the "Non Disparagement and Defamation" provision by making two disparaging web postings about him on the website www.complaintsboard.com.

For the sake of completeness, and to assess the strength of Defendant's alleged defense, which is a factor in determining Defendant's motion to set aside the default, the Court will examine the factual allegations in Defendant's proposed motion for a preliminary injunction. The first posting is signed by Justin Williams, whom Plaintiffs allege is a former business partner, and is titled "Rory Tringali Fabricated Slander." (Ex. A to Mot. for Prelim. Inj. [Docket Item 21-1].) The post

10

purports to describe Williams' past business relationship with
Defendant Tringali and lists a number of alleged wrongs that
Tringali committed against Williams when they were business
partners. For example, according to Tringali, the posting
alleges that Tringali "owned 1/3 of a company with me & took
nearly $400,000 the first 6 mos. while I received less than
$15,000." (Id.) Williams also complains that Tringali "used the
[business] account with reckless disregard," and that he "is
just irresponsible & abused me to get what he wanted as my life
had no meaning to him other than the money I could provide."
(Id.) Alluding to when Tringali allegedly hacked Medpro's
website, the Williams posting also allegedly notes that Tringali
"launched a massive SPAM attack on a competitors website," and
that "[e]ach time the competitor re built their sites [Tringali]
launched another SPAM attack, causing hundreds of thousands of
innocent people problems & the competitor hundreds of thousands
in damages." Finally, Tringali asserts that Williams claims that
Tringali 'created dozens of alias' to fabricate slander" about
Williams on the internet, stalked Williams for over a year, and
caused him to lose the lease on his home. (Id.) The post
concludes,

> I challenge Rory to an accounting & to take
> accountability for the fabricated slander. I am even
> willing to forgive him & resolve our differences but I
> will not take the illegal attacks any longer. . . . My

goal was to end the chaos, bring order to the business,
& show Rory how reckless he was living, in hopes he would
start working with me, rather than against me. It was
essentially an intervention of sorts & Rory decided to
go on the attack vs. listening to what his partners had
to say. It is time for it to end.

(Id.) There is no specific mention of Moreno or Medpro in the

posting.

The second post, entitled, "Rory Tringali Cyber Stalking &

Fabricated Slander," also purports to be written by Justin

Williams and describes Defendant's conduct towards Williams and

Medpro. The author describes Tringali's role in orchestrating "a

series of cyber attacks against Medpro websites," and describes

how Medpro was damaged by Tringali's actions. He states:

. . . Rory posts fabricated complaints, using alias', to
cause competitors harm. Rory has done this for years,
causing untold damage. . . . Rory stalks Michael Moreno,
Justin Williams, & families, doling out intimidation,
threats, & fabricating slander. . . . Rory Tringali owns,
cosmeticlaserfraud.com, a website used as a collection
point, for the complaints he fabricates. Posing as an
"Industry Activist", Rory is nothing more than a Cyber
Bully using the internet to terrorize his victims.

(Ex. B to Mot. for Prelim. Inj. [Docket Item 21-1].) The author

then states, "My name is Justin Williams, & I have been

terrorized by Rory [Tringali] for years." He goes on to describe

Tringali's actions against him, noting, among other things, that

Trinagli "was a 1/3 partner and spent $400,000 refusing to

account for his spending," that Tringali "obsessively stalks

me," and that Tringali "took customers money & fabricated

complaints instigating them to come after me, posting as a victim himself." The post concludes with two newspaper articles from the Burlington County Times and InformationWeek, which reported on Tringali's indictment in New Jersey state court in 2008 for disrupting the website of Medpro. (Id.)

Defendant seeks a preliminary injunction directing Plaintiffs to remove all references to Tringali on websites and other online forums, and to cease and desist making disparaging or defamatory comments about Tringali or casting Tringali in a negative light, "both directly or indirectly through their agent or co-conspirator, Justin Mackintosh Williams." (Id. ¶ 7.) In two certifications before the Court, Tringali states that he "believe[s] that Michael Moreno is conspiring with Williams to post these comments about me," and that the person who posted the web coments was "acting at the request or direction of Michael Moreno." (Cert. of Rory Tringali, Mot. for Prelim. Inj. ("Tringali Cert. 1") [Docket Item 21-1] ¶ 4; Cert. of Rory Tringali, Reply in Support of Mot. for Prelim. Inj. ("Tringali Cert. 2") [Docket Item 23-1] ¶ 2.) Defendant asserts that because Moreno is the "sole owner of MedPro" and the posting "refers to attacks on MedPro," "Moreno is the only person with motive sufficient to attack me; The hand may be the hand of Williams but the voice is that of Moreno." (Tringali Cert. 1.)

According to a printout which Defendant attaches as an exhibit, both postings were made by a user from Austin, Texas writing under the username "Everitas," (Posting Summary, Ex. C to Mot. for Prelim. Inj. [Docket Item 21-1]), which Defendant asserts is the location of Williams' home.

Defendant notes that Williams and Moreno have a history of working together. For support, they attach several exhibits purporting to show that the two sold laser equipment to at least one customer in 2012. (Exs. F, G, H, I to Mot. for Prelim. Inj.) Defendant also attaches emails between Plaintiffs' attorney, Warren Wolf, and Moreno and Williams from 2008 and 2010 suggesting that Williams and Moreno were partners. (Tringali Cert. 2; Ex. J to Mot. for Prelim. Inj.)

Plaintiffs deny that they had anything to do with the postings and oppose the preliminary injunction. (Opp. to Mot. for Prelim. Inj. [Docket Item 22], at 3.) Moreno asserts that he did not write or post the articles, nor did he direct anyone to write the articles. (Michael Moreno Cert. in Opp. to Def. Mot. for Prelim. Inj. ("Moreno Cert.") [Docket Item 22-1] ¶¶ 4-5.) He states that Justin Williams is not an employee or agent of Medpro and that neither he nor anyone else at Medpro has any authority or control over Williams. (Id. ¶¶ 7-8.) He asserts that he did not see the postings until after his attorney

forwarded them to him. (Id. ¶ 6.)

Plaintiffs argue that Williams may have had motive to attack Tringali because Williams and Tringali were former business partners and have been entangled in ongoing business disputes for the past ten years. (Opp. to Mot. for Prelim. Inj., at 4.) Plaintiffs note that Tringali and Williams had previously litigated a business dispute in the Southern District of Florida. (See Complaint, Ex. A to Wolf Certification [Docket Item 22-2].) They assert that Williams had previously sued Tringali for unfair competition in the District of New Jersey in a case filed in 2008. Finally, they note that Tringali's Proposed Counterclaim includes allegations that Williams had created laser sale websites that mimicked the content of Tringali's websites and diverted customers to Williams's site. (Opp. to Mot. for Prelim. Inj., at 4; Proposed Counterclaim.)

Plaintiffs request sanctions against Tringali for "his intentionally false statements and for attempting to tarnish Plaintiffs' credibility with false statements." (Id. 4-5.)

## III. DISCUSSION

### A. The Court will deny Defendant's motion to aside default.

Fed. R. Civ. P. 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." The Third Circuit leaves the

decision to vacate the entry of default or a default judgment to the "sound discretion of the [trial] court." Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951). However, "[the Third Circuit] has adopted a policy disfavoring default judgments and encouraging decisions on the merits." Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988).

In exercising its discretion to vacate entry of a default or a default judgment, the Court must consider (1) whether prejudice would accrue to the plaintiff if the motion were granted; (2) whether the defendant has presented a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. United States v. $ 55,518.05 in U.S. Currency, 728 F.2d 192, 194-195 (3d Cir. 1984); Medunic v. Lederer, 533 F.2d 891, 893 (3d Cir. 1976). Any doubt "should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits." Tozer, 189 F.2d at 245-46. Moreover, because the standard for setting aside default under Rule 55(c) is more lenient than the standard for opening a judgment under Rule 60(b), "(a)ny of the reasons sufficient to justify the vacation of a default judgment under Rule 60(b) normally will justify relief from a default entry and in various situations a default entry may be set aside for reasons that would not be enough to open a default judgment." 10 C. Wright &

A. Miller, Federal Practice and Procedures 2696 at 334 (1973); see also Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656 (3d Cir. 1982) ("Less substantial grounds may be adequate for setting aside a default than would be required for opening a judgment.").

In this case, the balance of factors does not weigh in favor of setting aside default. First, the Court finds that Defendant's conduct rises to the level of inexcusable neglect. The standard for culpable conduct is the 'willfulness' or 'bad faith' of a non-responding defendant, and "requires that as a threshold matter more than mere negligence be demonstrated." Hritz v. Woma Corp., 732 F.2d 1178, 1182-83 (3d Cir. 1984); see also Gross v. Stereo Component Syst., Inc., 700 F.2d 120, 124 (3d Cir. 1983) (noting that in the context of opening default judgment, "culpable conduct means actions taken willfully or in bad faith."); Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982) (stating same).

There is no question that Mr. Leven's failure to defend this case was more than merely negligent. Despite taking the affirmative step to seek a resolution in this forum, Mr. Leven failed to file an answer or otherwise respond to the Complaint other than removing it to this Court, and ignored the preliminary injunction Plaintiffs sought to be entered.

Defendant filed no opposition to Plaintiffs' motion for an order to show cause, and did not appear at the show cause hearing on July 23, 2014. The Court entered a preliminary injunction on July 24th and default was entered around the same time on July 21st, but Defendant did not act to vacate the default until October 6th, two and a half months later. In short, Defendant ignored his responsibilities in this case for nearly four months.

Mr. Leven provides no adequate justification for his tardiness. He admits that he saw the request to enter default and his only explanation for failing to act was that he was "distracted" by other matters and believed that Defendant had obtained substitute counsel in the case. (Leven Cert. ¶ 3-5.) That Mr. Leven was busy with other matters at the time is no excuse. He could easily have sought an extension of time to respond, which this Court could have addressed, but he did not do so even once. In any event, Mr. Leven's excuse of distraction rings hollow, for surely he was still functioning as an attorney throughout the entire four month period in which he was counsel of record in this case. Nor is the Court inclined to believe Mr. Leven's bare assertion that he thought Defendant had found other counsel to litigate the matter, when Mr. Leven provides no basis for making this assumption. Nothing in Mr. Leven's certification

suggests that he had arranged for substitution of new counsel in June or July, or that Defendant had told him that he was retaining a new attorney. On the contrary, Tringali asserts in his affidavit that he believed all along that Mr. Leven would be filing a response on his behalf, and that he "did not understand that [Mr. Leven] was expecting me to retain new counsel for this action." (Tringali Cert. 1, ¶ 2.) Despite his assertion that he believed new counsel had been obtained, Mr. Leven also admits that he "knew that [he] was counsel of record" at the time his response was due. (Leven Cert. ¶ 4.) He was therefore fully aware of his obligations to the Court at the time default was entered.

Mr. Leven's certification also fails to explain why he waited another two and a half months before seeking substitution of new counsel or vacating default. There is no indication that Defendant had trouble obtaining new counsel, nor does Mr. Leven attempt to provide an explanation for why nothing was filed before October 6, 2014. In fact, in his certification dated September 17, 2014, Mr. Leven states that Defendant's case had already been referred to Robert A. Vort. Defendant then waited another three weeks before filing the instant motion to vacate the default and a notice of substitution of counsel, with no

explanation for the further delay.[6]

In light of Mr. Leven's knowing and willful failure to defend this action in a timely manner, and his failure to provide any adequate explanation for failure to act, the Court finds that Defendant's actions rose to the level of "culpable conduct." See, e.g., In re Pandolfelli, No. 09-2068, 2012 WL 503668, at *5 (D.N.J. Feb. 15, 2012) (affirming bankruptcy court's finding that defendant's failure to timely answer constituted "culpable conduct" because defendant was properly served with complaint and was fully apprised of his obligation to answer and failure to do so was an "intentional decision not to respond to a complaint" rather than "delay caused by inadvertence"); Local Union No. 98 Intern. Bhd. of Elec. Workers v. E. Elec. Corp. of N.J., 2009 WL 3075358, at *3 (D.N.J. Sept. 25, 2009) (finding that defendants' failure to respond to a complaint for one year constituted "blatant, or at a minimum, reckless disregard of the rules" and amounted to "culpable conduct").

---

[6] Mr. Leven's culpable conduct extend beyond this forum; his actions in state court prior to removal lends further support to the conclusion that he acted willfully and in bad faith. He initially refused to accept service of process of the complaint in state court, falsely claiming that he did not represent Defendant when in fact he was representing Defendant in a pending criminal trial. That misrepresentation can only be seen as an attempt to avoid court process and delay litigation.

The Court further finds that Defendant Tringali was aware of, and ratified, his counsel's default on his behalf. When Mr. Leven did not oppose or attend the preliminary injunction hearing, the Court required Plaintiffs' counsel, Mr. Wolf, to serve a copy of the preliminary injunction opinion and order directly upon Defendant Tringali. See Preliminary Injunction Order (filed July 24, 2014) at p. 2. The Court's Findings of Fact and Conclusions of Law spelled out, at length, the fact that Leven had not opposed and that Defendant was in default, see Findings (filed July 24, 2014) at 1 (indicating Leven "did not attend"); at 9 (Defendant "did not file opposition and did not appear at the hearing"); at 9 n.5 ("Defendant seems to have ignored his responsibilities in this case. After removing the case, Defendant has never filed an answer nor has defense counsel sought leave to withdraw"); and finally at 10 n.6 (explaining why the Court was directing service of the Preliminary Injunction by mail directly on Defendant Tringali, recognizing that usually "service upon counsel of record suffices" but requiring service as direct notice to Tringali "in an abundance of caution" and "[d]ue to the seeming inaction of Mr. Leven.") Whatever Tringali says he knew or didn't know from Mr. Leven, it is clear that Tringali was informed, by the Court through Mr. Wolf's mailing on July 24, 2015, (See Wolf Cert. ¶

21

15), of the failure to defend. Tringali's professed ignorance of Leven's non-feasance until September, 2014, when Tringali's certification states he became aware "that [Leven] was expecting me to retain new counsel," rings entirely false. Tringali well knew he was defaulted for several months before seeking relief in the present motion, and he is also responsible for the default and for entry of the preliminary injunction. Tringali's acquiescence in not defending this suit was also culpable conduct.

The Court notes that the second factor also weighs against setting aside default, because Defendant appears to have no meritorious defense to Plaintiffs' claims. "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984) (citing Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951)). Defendant admits to the majority of allegations in Plaintiffs' complaint that form the basis for Plaintiffs' claims. (Proposed Answer and Counterclaim [Docket Item 12-3].) He admits, for example, that he put up a website that attempts to portray Plaintiffs as being involved with Williams in alleged frauds and scams; communicated with Plaintiffs' customers to try

to dissuade them from doing business with Plaintiffs and sent
one customer a link to where Plaintiff Moreno lives; disparaged
Plaintiffs to business associates and contacts in the industry;
and emailed Plaintiffs copies of Plaintiffs' tax returns, which
Plaintiffs allege was harassment. (Id. ¶¶ 25-27, 29, 32, 34,
37.) These admissions would likely be sufficient to establish
claims for breach of contract, intrusion of privacy, and
harassment.

Defendant makes no argument in his brief for the existence
of a meritorious defense. However, Defendant claims in his
Proposed Answer that the action is "barred by the release given
by plaintiffs to Tringali." (Proposed Answer and Counterclaim at
10, ¶ 70.) Defendant is presumably referring to the Settlement
Agreement the parties executed in 2012. Paragraph 6 of the
Settlement Agreement is the Mutual Release provision, which
releases each party from any past and present claims they may
have against the other, "whether arising out of contract, tort,
or otherwise, in law or equity." (Settlement Agreement, Ex. A to
Complaint [Docket Item 1-1] ¶ 6.) Plaintiffs' claims, however,
arise out of Defendant's conduct after the execution of the
Settlement Agreement, conduct which is not covered by the Mutual
Release provision. The Mutual Release provision therefore would
provide no defense to Plaintiff's suit.

Defendant also asserts that the action is barred by the doctrine of unclean hands. (Proposed Answer and Counterclaim, at 10, ¶ 70.) "In simple parlance, [the doctrine of unclean hands] merely gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Borough of Princeton v. Bd. of Chosen Freeholders of Mercer Cnty., 777 A.2d 19, 32 (N.J. 2001) (citation omitted); see also Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 147 n.12 (3d Cir. 1999) (doctrine of unclean hands will deny equitable relief "when the party seeking relief is guilty of fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities."). Defendant provides no explanation for the basis of this defense, but in the proposed Counterclaim he asserts that Plaintiffs have themselves engaged in fraud by making statements to customers and business associates that Defendant was going to jail. (Proposed Answer and Counterclaim, at 17.) Defendant was under indictment at the time these statements were allegedly made. The indictment, returned in 2008, charged Tringali with conspiracy to commit computer related theft, N.J.S.A. 2C:20-25(b) & N.J.S.A. 2C:2-6, and impersonation, N.J.S.A. 2C:21-17a(1) & N.J.S.A. 2C:2-6, in connection with a spamming incident against MedPro, Inc. The

alleged co-conspirator, Matthew Wilner, entered a plea of guilty in 2010. See State v. Rory Tringali, Ind. No. 08-03-0037-S (Crim. Div., Burlington County, N.J.), opinion filed April 22, 2015, at pp. 1-2. The underlying criminal conduct was allegedly directed against Moreno and MedPro in four spam attacks in 2006-2007. Id. at pp. 4-5. The Superior Court only recently granted Tringali's motion to dismiss the indictment, finding the Court lacked territorial jurisdiction over Tringali's misconduct, which occurred in Florida. (Id. at 12-17, and Order filed April 22, 2015.) The Superior Court made no findings about the merits of the indictment. If one assumes that Moreno made statements that Tringali would be going to jail, that is not necessarily far-fetched prediction for one who is under indictment and whose alleged co-conspirator has entered a guilty plea. It is unlikely that such statements at that time about Tringali's business practices would give rise to any claim for fraud or disparagement, as they were based upon the evidence of the victims, Moreno and MedPro, as found by the grand jury and ratified in the co-defendant's 2010 guilty plea. Accordingly, this Court does not find it likely that the "unclean hands" doctrine would apply to bar this suit. The strength of such a defense is not sufficient to require relief from Defendant's

default.[7]

_____

[7] In evaluating the unclean hands defense, the Court additionally notes that Defendant is unlikely to succeed in his preliminary injunction motion. Defendant asks this Court to order Moreno and Medpro to take down two web postings written by an individual with the online username "Everitas," but the record indicates that "Everitas" is not Moreno, but Justin Williams, who is not a party to this action. Moreover, an examination of the content of the web postings suggests that they were written by Williams, not Moreno.

Nor is the Court persuaded by Defendant's allegation that Williams acted at Moreno's direction. (See Tringali Cert. 2 ¶ 2.) Plaintiffs assert that the relationship they have with Williams is in the past. (See Complaint [Docket Item 1-1] ¶ 7) (stating that the "Plaintiffs and Williams, either individually or through one of Williams' companies, previously worked together on many laser sale transactions . . . .") They also note that "[a]lthough the Plaintiffs and Williams had sold many lasers together prior to 2009, most of the Plaintiffs' sales after 2009 did not involve Williams or any of his companies." (Id. ¶ 8.) Additionally, Moreno asserts that he did not ask or direct anyone to write the web postings, that he has no "authority or control over Justin Williams," and that Williams "is not an employee or agent of Medpro." (Moreno Cert. [Docket Item 22-1] ¶¶ 5, 7, 8.) He further asserts that he did not know about the web postings by Williams until he was alerted to them by his attorney. (Id. ¶ 6.)

Tringali points to nothing in the record that would suggest that Williams and Moreno have a current relationship, or that Williams would take orders from Moreno. Tringali claims that Williams and Moreno were involved in a single business transaction together as late as 2012, but that hardly suggests that the two individuals conspired together to create web postings in 2014 disparaging Tringali. Similarly, the emails Tringali attaches from 2008 and 2010 indicating that the two had some sort of business relationship at the time is insufficient for an inference that Moreno and Williams planned the incident in question, four years later. In short, Tringali has not provided a single shred evidence in support of his bald assertion that "Medpro and Williams are one and the same," nor can the Court find anything in the record to show that Williams and Moreno have a current business relationship.

In the absence of any evidence that Plaintiffs played a part in putting up the two allegedly disparaging web posts, Defendant

Having found that Defendant has willfully defaulted and as not proffered a likely meritorious defense, the Court turns briefly to the question of prejudice. Plaintiffs argue that they were prejudiced when the state court adjourned the preliminary injunction hearing for 20 days when Mr. Leven refused to accept service of process on the false assertion that he did not represent Defendant in the case.  Mr. Leven's assertion was false, as indeed he represented Tringali and acted as his attorney to remove the case to federal court. Plaintiffs suffered the prejudice of unwarranted delay caused by Leven's dilatory behavior and later by his failure to answer after the case was removed to federal court. In this Court, Plaintiffs moved for an order to show cause promptly after removal, and a preliminary injunction was entered one month later, or a total of two months after the initial preliminary injunction hearing was scheduled in state court on May 23, 2014, all due to Defendant's tactics in refusing service and then, when re-served, removing the case to federal court.

The Third Circuit has stated that as a general matter, the court "does not favor defaults" and "in a close case doubts should be resolved in favor of setting aside the default and

---

cannot show that an injunction directed at Moreno and MedPro to take down Williams' web postings would likely succeed.

reaching a decision on the merits." Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982).  This is not a close case. Because Defendant's conduct (both attorney and client) in failing to timely answer was willful, because Defendant has not raised a meritorious defense to the Plaintiffs' claims, and because prejudice accrued to Plaintiff, the Court will deny Defendant's motion for relief from default.

Defendant's request for a preliminary injunction will therefore be dismissed as moot without prejudice to Defendant's right to file a separate action in a court of competent jurisdiction.[8] An accompanying Order will be entered.

***

The Court will deny Plaintiffs' request for sanctions under Rule 11, Fed. R. Civ. P., against Defendant for making false statements about Plaintiffs in his motion for a preliminary injunction.[9] (See Opp. to Mot. for Prelim. Inj. at 4.) The Court

---

[8] As Defendant's motion for a preliminary injunction is moot, the Court need not address Plaintiff's request for sanctions against Defendant for making false statements in its preliminary injunction motion. (See Opp. to Mot. for Prelim. Inj. at 4.)

[9] In determining whether to impose sanctions under Federal Rule of Civil Procedure 11, courts must apply an objective good faith standard by testing the knowledge of a signing attorney against a testing the knowledge of a signing attorney against a "reasonable" standard. Napier v. Thirty or More Unidentified Agents, 855 F.2d 1080, 1090-91 (3rd Cir. 1988); Lieb v. Topstone Indus., Inc., 788 F.2d 151, 157 (3d Cir. 1986). The critical element of the objective good faith standard is the reasonable inquiry requirement. Consequently, sanctions shall only be

was unimpressed with Defendant's proposed motion, as discussed above, but has dismissed it as moot. The proposed motion, in the end, counted against Defendant in his Rule 55(c) motion. The Court is unwilling to open this case for a mini-trial on the truth or falsity of Defendant's proposed allegations in the context of a Rule 11 hearing, when the Court has already determined that these allegations are a nullity due to Defendant's default.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to vacate default and dismiss Defendant's motion for a preliminary injunction as moot. The accompanying Order will be entered.


| __June 30, 2015__ | | __s/ Jerome B. Simandle__ |
| Date | | JEROME B. SIMANDLE |
| | | Chief U.S. District Judge |

---

imposed when it appears that a pleading has been interposed for any improper purpose or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law. Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir. 1988). Here, Defendant's proposed pleading has not been permitted to be filed, and unless it is filed, the requirement for Rule 11 sanctions is not satisfied.