Warren S. Wolf, Esquire
GOLDBERG & WOLF, LLC
1949 Berlin Road, Suite 201
Cherry Hill, New Jersey 08003
Telephone: (856) 651-1600
Facsimile: (856) 651-1615
*Attorneys for Plaintiffs,*
*Michael Moreno and Medpro, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL MORENO AND MEDPRO, INC., | DOCKET NO. 14-CV-04002-JBS-KMW |
| Plaintiffs, | CIVIL ACTION |
| v. | |
| RORY E. TRINGALI, | **CERTIFICATION OF COUNSEL IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendant. | |

I, Warren Wolf, of full age hereby certify follows:

1.      I am an attorney authorized to practice law before this Court and offer this Certification in Support of Plaintiffs' Motion for Partial Summary Judgment.

2.      Exhibit 1 is a true and correct copy of Plaintiffs' Verified Complaint filed May 7, 2014.

3.      Exhibit 2 is a true and correct copy of the Substitution of Attorney filed by Lawrence Leven, Esquire on August 5, 2010 in the prior federal action among the parties, 08-cv-3426-JBS-KMW.

4.      Exhibit 3 is a true and correct copy of the Affidavit of Service of the Complaint and Summons upon Defendant.

5.      Exhibit 4 is a true and correct copy of Defendant's Notice of Removal filed by hos counsel.

6.      Exhibit 5 is a true and correct copy of the docket report from the prior federal action.

7.      Exhibit 6 is a true and correct copy of the Order for Preliminary Injunction entered on July 24, 2014 along with the Court's Findings of Fact and Conclusions of Law.

8.      Exhibit 7 is a true and correct copy of *Federal Insurance Company v. Von Windherburg-Cardeiro*, 2013 WL 6199253 (D.N.J. 2013).

9.      Exhibit 8 is a true and correct copy of *Colony Insurance Company v. Kwasnik, Kanowitz & Associates*, 2014 WL 2920810  (D.N.J. 2014).

10.     Exhibit 9 is a true and correct copy of *Jackson Hewitt, Inc. v. Dupree-Roberts*, 2013 WL 4039021 (D.N.J. August 7, 2013).

I certify under penalty of perjury that the foregoing is true and correct.

Date:  8/15/16                                   /s/ Warren S. Wolf
                                                Warren S. Wolf, Esquire

# Exhibit 1

Warren S. Wolf, Esquire
GOLDBERG & WOLF, LLC
1949 Berlin Road, Suite 201
Cherry Hill, NJ 08003
856-651-1600
Attorneys for Plaintiffs



SUPERIOR COURT OF NJ
BURLINGTON COUNTY
FILED
5-7-14
Civil Division



| | |
|---|---|
| MICHAEL MORENO, AND MEDPRO, INC.<br><br>Plaintiffs,<br><br>v.<br><br>RORY E. TRINGALI<br>Defendant. | SUPERIOR COURT OF NEW JERSEY BURLINGTON COUNTY CHANCERY DIVISION<br><br>C- 3 ⊃ ⊃ -14<br><br>VERIFIED COMPLAINT |

Plaintiffs, Michael Moreno and Medpro, Inc., allege against the Defendant, Rory E.

Tringali, as follows:

1.     Plaintiff, Michael Moreno ("Moreno"), is an individual residing at 17 Tuxedo

Court, Marlton, New Jersey 08053.

2.     Medpro, Inc. ("Medpro") is a corporation formed in the State of New Jersey in

2001 with a business address of 532 Old Marlton Pike, Suite 256, Marlton, New Jersey 08053.

3.     Moreno is and has always been the sole owner of Medpro.

4.     Rory E. Tringali ("Defendant" or "Tringali") is an individual residing at 48 Walter

Avenue, Hicksville, New York 11801.

5.     All of the parties have been in the business of selling pre-owned cosmetic lasers for

many years.

6.     Non-party, Justin Williams, is an individual residing in Texas.

7.     The Plaintiffs and Williams, either individually or through one of Williams'

companies, previously worked together on many laser sale transactions whereby the profits of


COPY

such sales were split between them.

8.    Although the Plaintiffs and Williams had sold many lasers together prior to 2009, most of the Plaintiffs' sales after 2009 did not involve Williams or any of his companies.

## JURISDICTION

9.    The Defendant has sent numerous emails, as further explained below, to the Plaintiffs who are residents of New Jersey, with the intention to harass Moreno.

10.    The Defendant has traveled to New Jersey and observed Moreno's home and family activities, as explained below.

11.    The Defendant has marketed himself to customers in New Jersey to sell medical lasers and, upon information believed, has sold lasers to residents of New Jersey.

12.    The Defendant was a party in a case captioned Medpro, Inc., et al. v. Syneron, Inc., et al. filed in the United States District Court for the District of New Jersey, Camden Vicinage, Civil Case Number 08-CV-3426 ("Federal Action") which resulted in the Settlement Agreement sought to be enforced through this new action filed in the Superior Court of New Jersey.

13.    The Defendant was indicted in the Superior Court of New Jersey, Burlington County under Indictment Number: 11-04-00030-S for the same conduct which was the subject of the aforementioned Federal Action which resulted in the Settlement Agreement sought to be enforced through this new action in the Superior Court of New Jersey.

14.    The Defendant created a website to harass and embarrass the Plaintiffs and Williams as explained below.

2

## BACKGROUND - VIGILIANTIES 4 JUSTICE

15.   Tringali registered the domain name "Vigilantes4Justice" at FindNot.com.

16.   On May 9, 2005, Tringali sent an e-mail to Moreno from Vigilantes4Justice@FindNot.com which contained clear threats of physical violence if Moreno did not post on an internet site known as DotMed.com his "sincere intentions to exit the business" of selling certain laser equipment.

17.   The text of the May 9, 2005 e-mail is contained below:

> We have been made aware over a period several years of fraudulent dealings that the two of you have inflicted on honest people that have trusted you.   These individuals have organized a group and have retained us to even the score.
>
> While your methods have defrauded our clients of their money and equipment, our methods are a much more personal and physical by nature.   Just as the both of you enjoy cheating unsuspecting customers, our representatives enjoy using their skills and tactics to right many past wrongs.   Like the both of you, they are neither ethical nor fair but as the both of you come to find they are extremely effective in getting you to see the era of your ways.
>
> You are to post on Dotmed.com by Thursday, May 12[th], by 2005 by 12pm Pacific Time your sincere intentions to exit the business.   In the event we do not see your post we will begin our initial phases of restitution, by contacting the IRS regarding your unreported income and other sources of income and assets.
>
> V4J

18.   On May 10, 2005, Tringali sent a second e-mail from Vigilantes4Justice@FindNot.com to Moreno as follows:

> The deadline still stands! EVERYONE in the Aesthetic Medical World And Those Looking To Enter This Field Will Be Advised No Matter What In Every Way Possible!   Then A More Personal Approach Will Be Taken As We Know Exactly Who We are Dealing With!   Our Clients Information Will Never Be Exposed Nor Found!

3

Clearly anyone driving a New Silver Range Rover and lives in the houses you do, with investment properties in Utah and Mike NJ has been doing some serious defrauding.

We know that the three of you are all involved in:

www.Aesthetic-Partnes.com
www.BioAgeInternational.com
www.Cosmetic--Lasers.com
www.Respossessed--Medical--Equipment.com
www.Equipment--Finders.com
www.MedProOnline.com
Professional Athlete Consulting
www.Activnalsales.com
IMG/Innovative Medical Group (Scott Devous-Brooke Horan)

Specialty Equipment Group SEG
1076 Walburk Ave Layton, UT 84040

Following Telephone numbers:

801 603 9953   800 727 3130
801 842 3185   435 602 2966
435 647 0644   856 797 0048

4VJ

19.     The e-mails caused Moreno, who is married and has two young daughters, to suffer extreme emotional distress.

20.     Both the May 9 and May 10 e-mails were sent to others, including, but not limited to Justin Williams and, upon information and belief, some of Plaintiffs' customers and business contacts.

21.     On October 27, 2005 Tringali sent Moreno an e-mail stating that Tringali can prove Moreno committed perjury, wire fraud, mail fraud, violated the Rico Act and "something else that they have on him and cannot put it an e-mail."

4

22.     Tringali has made false and defamatory comments about the Plaintiffs to many individuals, including, but not limited to, Peter Hill, Dr. Rory Cuiffo, Holly Lombardo, Dr. Irma Montemayor, Don Curran, Ryan Cowan and Dr. Mona Alaquist.

23.     Tringali intended that his e-mails of May 9, 2005, May 10, 2005 and October 27, 2005 and his defamatory and untrue statements conveyed to many individuals, including, but not limited to Peter Hill, Dr. Rory Cuiffo, Holly LaBombard, Dr. Irma Montemayor, Don Curran, Ryan Cowan and Dr. Mona Alaquist  ("Tringali's Statements") would cause harm to the Plaintiffs.

24.     Tringali knew or should have expected that Tringali's Statements would cause harm to the Plaintiffs.

25.     Tringali's purpose in making such statements was to cause harm to the Plaintiffs.

26.     Tringali acted in an individual capacity.


## DEFENDANT'S INTERNET EMAIL BOMBS

27.     In or around November 2006, the Defendant hired a computer hacker, Matthew Willner, to sabotage and destroy Medpro's websites knowing that Medpro generates most of its business through its websites.

28.     Between November 2006 and February 2007, the Defendant disrupted and impaired Medpro's computer services, including access to any part of the Internet on four (4) separate occasions.

29.     More specifically, Defendant caused to be sent bulk quantities of unsolicited email containing hyperlinks to websites of Medpro, with Medpro's return email address, with the

5

intended effect of disrupting and impairing Medpro's websites.

30.     Defendant's illegal activities as described above constitute the largest email "bomb" in history of the Internet, according to law enforcement officials.

31.     The result of this "bomb" was that millions of emails were sent by the Defendant, but made to appear as if they were sent by Medpro.

32.     By sending the email "bombs" described above, Defendant impersonated Medpro, deceived customers and other intended recipients into believing that Medpro was sending this "bomb," and thereby falsely assuming the identity of Medpro for the sole purpose of injuring Plaintiffs and to obtain a financial benefit.

33.     One of the results from the Defendant's conduct was the receipt by Medpro of hundreds of emails and telephone calls from irate customers and other individuals who believed Medpro was responsible for the mass emailing.

34.     As a result of Defendant's conduct, Plaintiff was forced to shut down its operations for several weeks.

35.     Such shutdown resulted in loss and damage to Plaintiffs in excess of $250,000.

36.     As a result of Defendant's actions, Plaintiff lost hundreds of thousands of dollars of business, untold numbers of potential and actual clients, and was blacklisted by the Internet search engines.

37.     The illegal email "bombs" sent by the Defendant had resulted in significant and ongoing damages to Plaintiffs.

6

## THE INDICTMENT

38.    The Defendant was indicted by a grand jury convened in the Superior Court of New

Jersey, Burlington County under Indictment Number: 11-04-00030-S for the aforementioned

"bomb" conduct.

39.    The indictment contained three counts, each of which was a second-degree crime:

> (1) Conspiracy N.J.S.A. 2C: 5-2A, assumes false identity
> N.J.S.A. 2C: 21-17A(1);
> (2) Theft/computer related/alter N.J.S.A. 2C: 20-25B; and
> (3) Assumes false identity N.J.S.A. 2C: 21-17A(1).

40.    As part of a criminal case, the victim, Medpro, was required by the State to turn

over its tax returns and sales contracts to show the lost sales which resulted from the criminal

conduct.

41.    As part of the Defendant's constitutional rights, the State released Medpro's tax

returns and sales agreements, which identified Medpro's customers, to the Defendant for the

limited purpose of enabling the Defendant to be able to fairly defend himself against the charged

felonies.

42.    As explained below, the Defendant has used the information he obtained from the

State in a matter to further attack Moreno, Medpro and Medpro's customers.

43.    The criminal case was dismissed because, upon information and belief, the trial

court found that the State did not timely produce all of the discovery to the Defendant it was

required to produce.

44.    The State has filed an appeal of such dismissal and, as of the date of this complaint,

the Appellate Division has not yet ruled on whether to reverse the dismissal of the criminal case.

## THE FEDERAL LAWSUIT

45.    The Plaintiffs and Justin Williams commenced the Federal Action to recover damages caused from the aforementioned conduct of the Defendant.

46.    Eventually the Federal Action was settled pursuant to a Confidential Settlement Agreement and General Release ("Agreement") executed by the parties to the case.   Attached as Exhibit A is true copy of the Confidential Settlement Agreement and General Release.

47.    The Settlement Agreement contains a Non-Disparagement and Defamation clause as follows:

> 13.    **Non Disparagement and Defamation**
> Plaintiffs, Tringali and Syneron agree not to make any disparaging remarks about any Party to the civil litigation or cast any such Party in a negative light, except to the Prosecutor or Judge in the pending criminal litigation. The parties agree that each violation of this section will result in the greater of $5000 damages per se or any actual damages a party can prove. This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.
>
> Plaintiffs and Defendants agree not to make any defamatory remarks about any Party to the civil litigation.    The parties agree that each violation of this section will result in the greater of $5000 damages per se or any actual damages a party can prove. This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.

48.    The Defendant has breached the Non-Disparagement and Defamation clause on several occasions, as indicated below, each of which requires $5000 in damages.

## DEFENDANT'S MALICIOUS WEBSITE

49.    On April 4, 2014, Defendant emailed Plaintiffs and Williams indicating that the

8

"gloves are off", he has "had ENOUGH and WITH you, this is just the BEGINNING!" and with a link to a website that the Defendant appears to have built for the sole purpose of harassing, intimidating and destroying the professional reputations of the Plaintiffs and Williams. Attached as Exhibit B is a true copy of the email from the Defendant dated April 4, 2014.

50. When one clicks on the link identified in the email, "Justin-Williams-Brooke-Horan-Williams-laser-fraud-crooks.com," a website opens which shows, among other things Williams standing naked in a towel, Williams' wife's, Brooke Horan, bankruptcy filings and various headlines and emails claiming that Mike Moreno and Medpro are partners with Justin Williams and involved in the alleged fraud and scams scattered throughout the website. Attached as Exhibit C is a true copy of a printout of the pages of the website.

51. The website contains false statements to the extent it states and implies that Mike Moreno and/or Medpro are partners and/or involved with Justin Williams on the frauds and scams alleged on the Defendant's website.

52. The website casts the Plaintiffs in a negative light as it attempts to portray them as being involved in the alleged fraud and scams which are alleged on the website.

53. Every minute this website continues to contain the Plaintiffs' names, constitutes ongoing damages to the reputation of the Plaintiffs.

54. The information and emails the Defendant posted on his website were obtained by his improper access to an email account he was not authorized to view.

**DEFENDANT'S MALICIOUS CONDUCT TOWARD PLAINTIFFS' CUSTOMERS**

55. The Defendant has recently contacted at least four (4) of the Plaintiffs' customers to

dissuade such customers from doing business with the Plaintiffs by claiming the Plaintiffs rip off their customers, commit frauds, that there are many other victims of the Plaintiffs' alleged frauds out there.

56.     The four customers that the Plaintiffs are aware of at this time are Leanne Velona (Leanne.velona@marinello.com) of Whittier, California; Jen Chura (jchura@midtownsurgery.com) of New York, New York; Pamela Bellow-Olatunji (bnaturalspa@verizon.net) of Maryland and Nigeria; and Chafic Medawar (chafic@paraform-lb.com) of Lebenon.   Attached as Exhibit D are true copies of the aforesaid emails.

57.     These four customers are the only known to Plaintiff as presumably most others who would have received contact from Defendant likely would not have brought them to Plaintiffs' attention.

58.     Upon information and belief, Defendant used the sales contracts he obtained from the prosecutor in the criminal case to obtain the Plaintiffs' customer information to contact the customers in an attempt to disparage and defame the Plaintiffs.

59.     As part of his ongoing effort to smear the Plaintiffs, the Defendant emailed to at least one of the Plaintiff's customers the sale price and tax assessment value of the Plaintiff's home, presumably to show that the Plaintiffs are getting rich off of the scams alleged by the Defendant.

60.     Such tactic is consistent with the aforementioned malicious website wherein the Defendant posted pictures of Williams' homes and vehicles and consistent with the Vigilantes 4 Justice emails.

61.     The Defendant has disparaged the Plaintiffs to business associates and contacts in

the industry including, but not limited to, Tony Kokjohn, Jean Marc Porier, Mike Goodrich, Dough Grief and Rebecca Bell.

## DEFENDANT'S HARASSMENT OF PLAINTIFFS

62.     The Defendant has advised individuals, with the intent that it would be communicated to Plaintiffs, that the Defendant would sit outside Moreno's home, watch and take pictures of Moreno and his family.

63.     The Defendant constantly emails and sends texts to Moreno to harass and intimidate him, presumably seeking to jar Moreno's recollection of the Defendant's "Vigilantes 4 Justice" mafia-style threats and intimidation.

64.     In a recent email, the Defendant copied the Medpro tax returns he received from the State as part of its discovery in the criminal case and emailed same to Moreno with some choice language.   Attached as Exhibit E is a true copy of Defendant's email dated April 3, 2014 and the photograph of the Medpro tax returns which were contained within such email.

65.     Lawrence A. Leven, Esquire represents Defendant on the pending appeal of the criminal case and represented Defendant in the Federal Action lawsuit.

66.     Under letter dated April 28, 2014, Plaintiffs' counsel, Warren S. Wolf, Esquire, sent a letter to Mr. Leven in an effort to ask him to have his client discontinue this conduct toward the Plaintiffs, discontinue the aforesaid conduct against the Plaintiffs' customers and business contacts and remove all mention of the Plaintiffs on the Defendant's malicious attack website. Attached as Exhibit F is a true copy of Warren Wolf's letter of April 28, 2014 to Lawrence A. Leven, Esquire.

11

67.     Mr. Leven responded by email dated April 28, 2014 that he has forwarded Wolf's letter of April 28, 2014 to Defendant and will discuss the contents of said letter with Defendant. Attached as Exhibit G is a true copy of an email from Lawrence A. Leven, Esquire dated April 28, 2014.

68.     Wolf responded to Leven's email on April 28, 2014 by advising that all references to Medpro and Moreno must be removed from the malicious attack website within 24 hours or this lawsuit will be commenced.   Attached as Exhibit H is a true copy of an email from Warren Wolf dated April 28, 2014.

69.     As of present, the Defendant's malicious attack website continues to contain references to the Plaintiff and thus imply the Plaintiff is part of the frauds and scams alleged against Williams.

70.     Upon information and belief, the Defendant continues to email the link to the website to Plaintiffs' customers and business contacts.

## COUNT I - DEFAMATION

71.     The allegations contained above are incorporated herein by reference, but not repeated for the sake of brevity.

72.     Tringali's emails and malicious attack website contain defamatory content.

73.     Tringali's emails and malicious attack website contain defamatory statements of facts.

74.     Tringali's emails and malicious attack website contain false information about the Plaintiffs.

12

75.  Tringali's emails and malicious attack website were communicated to persons other than the Plaintiffs.

76.  Tringali had actual knowledge that his emails and malicious attack website were false.

77.  Tringali acted with reckless disregard as to the truth or falsity of his emails and malicious attack website.

78.  Tringali was negligent by failing to determine the falsity of his emails and malicious attack website.

79.  The emails and malicious attack website were made by Tringali with malicious intent.

80.  Tringali's emails and malicious attack website caused the Plaintiffs to lose sales revenues.

81.  Tringali's emails and malicious attack website caused damage to the Plaintiffs' reputations.

82.  Medpro is a Corporation for profit and Tringali's emails and malicious attack website tend to prejudice it and the conduct of its business or deter others from dealing with it.

**WHEREFORE**, Plaintiffs seek a permanent injunction enjoining the Defendant from continuing such conduct and requiring Tringali to retract such statements, an accounting of all profits received by the Defendant derived from such conduct, compensatory damages, punitive damages, counsel fees, costs and any other relief this Court may deem just and equitable.

13

## COUNT II – DEFAMATION PER SE

83.   The allegations contained above are incorporated herein by reference, but not repeated for the sake of brevity.

84.   Tringali's emails and malicious attack website contain allegations of criminality against the Plaintiffs.

85.   Tringali's emails and malicious attack website create a misrepresentation of the Plaintiffs.

86.   Tringali's emails and malicious attack website accuse the Plaintiffs of incompetence in their business practices.

87.   Tringali's emails and malicious attack website accuse the Plaintiffs of dishonesty in their business practices.

88.   Tringali's emails and malicious attack website caused damage to the Plaintiffs' reputations.

89.   Tringali's emails and malicious attack website caused the Plaintiffs to lose sales revenues.

WHEREFORE, Plaintiffs seek a permanent injunction enjoining the Defendant from continuing such conduct and requiring Tringali to retract such statements, an accounting of all profits received by the Defendant derived from such conduct, compensatory damages, punitive damages, statutory damages, counsel fees, costs and any other relief this Court may deem just and equitable.

## COUNT III
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

90.     The allegations contained above are incorporated herein by reference, but not repeated for the sake of brevity.

91.     Plaintiffs are in the business of buying and selling medical equipment.

92.     In connection with their business, Plaintiffs have various ongoing contractual relations with customers for the purchase and sale of medical equipment.

93.     The Defendant had knowledge of these contractual relations between the Plaintiffs and its customers.

94.     The Defendant wrongfully interfered with and/or usurped the Plaintiffs' contractual relations with these customers through knowingly false statements and misrepresentations that wrongfully interfered with Plaintiffs' dealings with these customers.

95.     Defendants' tortuous interference with Plaintiffs' contractual relations has been intentional, willful, in bad faith and malicious.

96.     Plaintiffs have been damaged by Defendants' tortious interference with Plaintiffs' contractual relations in an amount to be proved at trial.

97.     Tringali's emails and malicious attack website caused the loss of a prospective gain to the Plaintiffs.

98.     Absent Tringali's emails and malicious attack website, there is a reasonable probability that the Plaintiffs would have received anticipated economic benefits.

99.     Plaintiffs' are entitled to a full accounting and disclosure of profits from Defendants resulting from their tortious interference with Plaintiffs' contractual relations.

100.   The false and disparaging conduct of the Defendants has caused and will continue to cause irreparable harm to the Plaintiffs.

101.   On the basis of the inadequacy of monetary relief to remedy Plaintiffs' injuries from Defendants' tortious interference, Plaintiffs are entitled to permanent injunctive relief restraining Defendants from any further tortious interference.

**WHEREFORE**, Plaintiffs seek a permanent injunction enjoining the Defendant from continuing such conduct and requiring Tringali to retract such statements, an accounting of all profits received by the Defendant derived from such conduct, compensatory damages, punitive damages, counsel fees, costs and any other relief this Court may deem just and equitable.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

102.   The allegations contained above are incorporated herein by reference, but not repeated for the sake of brevity.

103.   Tringali's emails, malicious attack website and disclosed presence around Moreno's home and family were intentional and outrageous.

104.   Tringali's emails, malicious attack website and disclosed presence around Moreno's home and family proximately caused severe distress to Moreno.

**WHEREFORE**, Plaintiffs seek a permanent injunction enjoining the Defendant from continuing such conduct, compensatory damages, punitive damages, counsel fees, costs and any other relief this Court may deem just and equitable.

16

## COUNT V – CIVIL ASSAULT

105.   The allegations contained above are incorporated herein by reference, but not repeated for the sake of brevity.

106.   Tringali's emails, malicious attack website and disclosed presence around Moreno's home and family intended to cause a harmful or offensive contact with Moreno or an imminent apprehension of such a contact.

107.   Moreno was put into an imminent apprehension of such offensive contact based upon Tringali's emails, malicious attack website and disclosed presence around Moreno's home and family.

WHEREFORE, Plaintiffs seek a permanent injunction enjoining the Defendant from continuing such conduct, compensatory damages, punitive damages, counsel fees, costs and any other relief this Court may deem just and equitable.

## COUNT VI – BREACH OF CONTRACT

108.   Plaintiffs incorporate the preceding paragraphs as though set forth at full herein.

109.   The Agreement is a contract among the parties.

110.   Defendant has breached the Agreement by defaming and disparaging the Plaintiffs as indicated above.

111.   The Plaintiffs are entitled to $5000 for each of the Defendant's breaches of the Agreement.

112.   The Plaintiffs have been damaged by such breaches of the Agreement by the Defendant.

17

113. The Agreement also provides for reimbursement of counsel fees paid by the party in breach to the non-breaching party.

WHEREFORE, Plaintiffs seek a permanent injunction enjoining the Defendant from continuing such conduct, $5000 damages for each violation, counsel fees, costs and any other relief this Court may deem just and equitable.

## COUNT VII – INTRUSION OF PRIVACY/ SECLUSION

114. Plaintiffs incorporate the preceding paragraphs as though set forth at full herein.

115. Defendant's unauthorized access and viewing of emails with Plaintiffs intruded on Plaintiffs' privacy expectation of such emails.

116. Such intrusion was highly offensive to Plaintiffs.

117. Such intrusion is highly offensive to a reasonable person.

118. Plaintiffs have been damages by such intrusion.

WHEREFORE, Plaintiffs seek a permanent injunction enjoining the Defendant from continuing such conduct, compensatory damages, punitive damages, counsel fees, costs and any other relief this Court may deem just and equitable.

## COUNT VIII – INTRUSION OF PRIVACY/ FALSE LIGHT

119. Plaintiffs incorporate the preceding paragraphs as though set forth at full herein.

120. Defendant's unauthorized access of emails and publicizing same on the website unreasonably placed Plaintiffs in a false light.

121. Such false light was highly offensive to the Plaintiffs.

18

122.   Such false light was highly offensive to a reasonable person.

123.   Defendant had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiffs were placed.

124.   Plaintiffs have been damaged by being placed in such false light.

WHEREFORE, Plaintiffs seek a permanent injunction enjoining the Defendant from continuing such conduct, compensatory damages, punitive damages, counsel fees, costs and any other relief this Court may deem just and equitable.


## COUNT IX -- COMMON LAW UNFAIR COMPETITION

125.   Plaintiffs incorporate the preceding paragraphs as though set forth at full herein.

126.   The actions of Defendant constitute common law unfair competition.

127.   Defendant's acts were willful and in conscious disregard of Plaintiffs' rights.

128.   Plaintiffs suffered damages as a result.

WHEREFORE, Plaintiffs seek a permanent injunction enjoining the Defendant from continuing such conduct, compensatory damages, punitive damages, counsel fees, costs and any other relief this Court may deem just and equitable.


## COUNT X - INJUNCTIVE RELIEF

129.   Plaintiffs incorporate the preceding paragraphs as though set forth at full herein.

130.   Defendant is in a unique position to cause irreparable harm to the Plaintiffs.

131.   Plaintiff has a settled legal right to the relief it seeks.

132.   Plaintiff is likely to succeed on the merits of its claims.

133.    The balance of equities favors granting injunctive relief requested by Plaintiffs.

134.    As a result of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm, and thus is entitled to injunctive relief as follows:

a. Defendant must immediately remove all references to the Plaintiffs on the malicious attack website

b. Defendant must cease and desist from defaming the Plaintiffs or attempting to cast the Plaintiffs in a negative light to anyone;

c. Defendant must cease and desist from contacting any and all of Plaintiffs' customers;

d. Defendant must cease and desist from attempting to contact the Plaintiffs;

e. The Defendant shall not be permitted to be within a one (1) mile radius of the Moreno's home

f. Defendants must not defame or disparage Plaintiffs, within the business community.

WHEREFORE, Plaintiff is entitled to the relief sought in its Proposed Order for an Injunction, an award of compensatory and punitive damages, and all other equitable and legal relief that the Court deems just and appropriate against the Defendants, jointly, severally and in the alternative.

GOLDBERG & WOLF, LLC

Dated:  5-6-14                          BY: _____
                                             Warren S. Wolf, Esquire

20

## DESIGNATION OF TRIAL ATTORNEY

Warren S. Wolf, Esquire, is hereby designated as trial counsel on behalf of Plaintiffs.

GOLDBERG & WOLF, LLC

Dated:  5 - 6 - 14                     BY: _____
                                            Warren S. Wolf, Esquire

## R.4:5-1 CERTIFICATION

The undersigned attorney hereby certifies that the matter in controversy herein is not

subject to any other pending action in any other court or arbitration forum of which the

undersigned is aware, nor is any other action or arbitration process contemplated.

GOLDBERG & WOLF, LLC

Dated:  5-6-14                         BY: _____
                                            Warren S. Wolf, Esquire

21

## VERIFICATION

I, Michael Moreno, am the sole owner of Medpro Inc. Medpro, Inc. and I are the Plaintiffs in this action. I certify that I have read the Complaint and that the foregoing factual statements made therein are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: MAY 6, 2014

_____
Michael Moreno

# Exhibit A

## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release (the "Agreement") is entered into as of the date this Settlement Agreement is signed by the last party ("Effective Date") by and among plaintiffs, MedPro, Inc., a New Jersey corporation, Physicians Information Services, Inc., a Utah corporation, Michael Moreno, and Justin Williams and defendants, Syneron, Inc., a Delaware corporation, Rory Tringali, and, Mathew Justin Willner, (together, the "Parties"), parties to the litigation captioned, or otherwise referred to, as MedPro, Inc. , et al. v. Syneron, Inc., et al, United States District Court for the District of New Jersey, Camden Vicinage, 08-cv-3426 (the "Litigation").

Brook Horan is also added to this Agreement for the limited purpose of the last paragraph of the below Mutual Release section 5 pertaining to Horan and Willner.

### RECITALS

WHEREAS, on approximately July 9, 2008 MedPro, Inc., Physicians Information Services, Inc., Michael Moreno, and Justin Williams (collectively Plaintiffs") commenced a civil proceeding against defendants, Syneron, Inc., Rory Tringali, and, Mathew Justin Willner in the United States District Court for the District of New Jersey.

WHEREAS, Plaintiffs alleged that each and all defendants violated the Computer Fraud and Abuse Act of 1986, as amended, Lanham Act, common law infringement and unfair competition laws, New Jersey's unfair competition statute (N.J.S.A. §56:4-1, et. seq.), conversion laws, tortious interference with respect to business relations, trespass and chattels, the New Jersey Computer Fraud and Abuse Act , and the federal CAN Spam Act.

WHEREAS, On approximately October 22, 2008, Defendant, Syneron, Inc. filed its answer with defenses and crossclaims against Tringali and Willner.

WHEREAS, Defendants have denied each and every allegations made by Plaintiffs.

WHEREAS, the District Court stayed the proceedings at the request of Defendant, Willner as a result of related criminal charges that were brought by the State of New Jersey against Defendants, Tringali and Willner.

WHEREAS, on approximately September 25, 2009 the District Court modified the stay to require that Defendant Tringali answer the complaint.

WHEREAS, on approximately October 15, 2009 Defendant Tringali filed an Answer and Counterclaims.

WHEREAS, on approximately November 4, 2009, Plaintiffs answered Defendant Tringali's Counterclaims.

WHEREAS, Defendant Willner filed an Answer.

WHEREAS, in 2011, the Court lifted the stay in this civil proceeding and a Case Management Scheduling Order was entered.

WHEREAS, Brooke Horan may have had some interest in the intellectual property related to the Litigation.

WHEREAS, Justin Williams affirmatively represents that he is the sole owner of Physicians Information Services, Inc.

WHEREAS, Michael Moreno affirmatively represents that he is the sole owner of MedPro, Inc.

WHEREAS, the parties now wish to settle and resolve any and all disputes between them.

<u>TERMS</u>

NOW THEREFORE, in consideration of the mutual promises set forth in this Agreement, and for other good and valuable consideration, the receipt of which and the legal sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

1.      The parties acknowledge the above recitations and incorporate them into this Agreement.

2.      Syneron, Inc.'s Obligations

        Within twenty (20) days of the Syneron, Inc.'s receipt of a fully executed original of this Agreement signed by all parties, Syneron, Inc. will deliver to Plaintiffs' attorney, Warren Wolf, Esquire, a check in good funds in the amount of $50,000.00 (Fifty Thousand Dollars) made payable to MedPro, Inc.

3.      Mathew Justin Willner's Obligations

        Within twenty (20) days of the execution of this Agreement, Mathew Justin Willner will pay Plaintiffs in good funds the amount of $20,000.00 (Twenty Thousand Dollars) made payable to: MedPro, Inc. The check will be delivered by certified mail to Plaintiffs' attorney, Warren Wolf, Esquire within twenty (20) days of all parties signing this release.

4.      Rory Tringali's Obligation

        Within twenty (20) days of the execution of this Agreement, Rory Tringali will pay Plaintiffs in good funds the amount of $2,500.00 (Two Thousand Five Hundred Dollars) made payable to: MedPro, Inc. The check will be delivered by certified mail to Plaintiffs' attorney, Warren Wolf, Esquire within twenty (20) days of all parties signing this release.

5.    MedPro, Inc., Physicians Information Services, Inc., Michael Moreno, and Justin Williams' Obligations

(a)    Plaintiffs agree to file with the Court a Stipulation to Dismiss in the form attached hereto within five (5) days of delivery of all the settlement payments described, assuming such checks are bank or certified. Otherwise, the Stipulation will be filed within 5 days of clearance of all funds. By signing this Agreement, all of the attorneys authorize Plaintiffs' counsel to affix their signatures electronically to the Stipulation.

(b)    If any party does not timely pay its required amount indicated above, Plaintiff agrees not to use such party's non-payment as a basis to revive the litigation against any party which timely paid and has not otherwise violated any terms of this Agreement.    Plaintiffs reserve all rights as to any Defendants which are in breach of this Agreement. Plaintiffs do not waive any such rights.

6.    Mutual Release

Each Party releases, acquits and forever discharges the other Party and its heirs, executors, administrators, predecessors, successors and assigns, parent companies, subsidiaries affiliates, directors, officers, employees, members, shareholders, partners, insurers, reinsurers, representatives and/or agents (including, without limitation, their accountants and attorneys), from any and all actions, causes of action, claims, rights, demands, lawsuits, debts, sums of money, accounts, controversies, agreements, contracts, promises, variances, damages, liabilities, losses, costs and expenses of every kind, name, and nature, whether known or unknown, liquidated, fixed or contingent, and whether arising out of contract, tort, or otherwise, in law or in equity, which either Party ever had or may now have against the other Party from the beginning of the world through the Effective Date.

4

Notwithstanding anything contained herein to the contrary, Willner and Tringali do not release each other from any claims each may have against the other related to the pending criminal matter.

Horan and Willner release each other from any and all claims each may have against the other.

7.    **Attorney's Fees and Costs**

Each party hereto shall bear all attorneys' fees and costs arising from the actions of their own counsel, if any, in connection with the Litigation, this Settlement Agreement and the matters and documents referred to herein and all related matters.  However, if any party is found to be in breach of this Agreement, it shall pay the reasonable legal fees and costs incurred by the non-breaching party to enforce its rights in this Agreement.

8.    **Warranty of Capacity to Execute Agreement**

The Plaintiffs each represent and warrant that (a) no person or entity other than the Plaintiffs have had any interest in the claims, demands, obligations, or causes of action referred to in this Settlement Agreement, and that no plaintiff has sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement; (b) each Plaintiff has the right and authority to execute this Agreement and that MedPro has the right to receive delivery of the Settlement amount; (c) no other person or entity has any interest in the claims; (d) there are no other persons or entities who now have or may in the future acquire the rights of Plaintiffs to proceed against Syneron on any action, claim, cause of action or controversy relating to any of the claims; and (e) Plaintiffs affirmatively represent that they are not aware of, at this time, any claims held by any others arising from the allegations in the Complaint; and (f) Plaintiffs are the only persons and entities who have an interest in the

businesses alleged to be damaged by the commercial transactions that are the subject of the Litigation.   Subsections (e) and (f) are qualified by Plaintiff's counsel's representation that he believes the Internet Service Providers may have claims under the CAN Spam Act.

9.     No Admission of Liability

Each Party understands and agrees that this Settlement Agreement is not to be construed as an admission of liability on the part of either Party and that the Parties expressly deny any liability for any negligence, warranty or other damage of any kind or nature.

10.     Informed Decision

The Parties each acknowledge that it has had the advice of independent counsel and executes this Settlement Agreement as its free act and deed.

11.     Further Settlement Terms

This Agreement and Full Release and the legal relations between the Parties hereto shall be governed and construed by the laws of New Jersey. The terms of this Settlement Agreement are contractual and not mere recitals. The Parties each acknowledge that it sought the advice of counsel throughout the negotiations leading to this Settlement Agreement, that they have read and reviewed with, and consulted fully with their attorneys regarding the meaning and effect of this Settlement Agreement and that they understand and agree to them, that the terms and provisions of this Settlement Agreement are not to be construed more strictly against one Party than against the other, and that it is the voluntary intention of all Parties to this Settlement Agreement that its terms and provisions be construed as having the plain meaning of the terms used herein, for the express purposes of making a full and final compromise of all claims and precluding forever further or additional claims or litigation against each other arising out of the aforesaid.

12. **Confidential Agreement**

The Parties agree to keep the terms of this claim and settlement confidential, except: (a) when compelled to disclose them in response to a valid order or other decree from a court of competent jurisdiction, provided that the party intending to disclose same will immediately seek to seal said disclosure or the terms of the settlement and notify the other Parties to this Agreement of such intended disclosure; (b) disclosures to financial professionals as necessary for the receipt of accounting services; (c) disclosures in the related pending criminal proceedings against Willner and Tringali, so long as the party seeking to disclose in such criminal proceeding first submits a bona-fide, good faith application to keep such disclosure confidential and under seal, on notice to all Parties to this Agreement, but denial of said application shall not bar the party from offering it to the criminal Judge or Prosecutor; and (d) disclosures related to enforcement of this Settlement Agreement.  The Parties are only allowed to state publicly that "the matter is settled and its terms are confidential."

The Parties agree that only Matthew Willner shall have an additional exception to non-disclosure whereby he can disclose this Agreement to a bona-fide, prospective employer or when seeking a professional license or certification.

13. **Non Disparagement and Defamation**

Plaintiffs, Tringali and Syneron agree not to make any disparaging remarks about any Party to the civil litigation or cast any such Party in a negative light, except to the Prosecutor or Judge in the pending criminal litigation.   The parties agree that each violation of this section will result in the greater of $5000 damages per se or any actual damages a party can prove.   This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.

Plaintiffs and Defendants agree not to make any defamatory remarks about any Party to the civil litigation.   The parties agree that each violation of this section will result in the greater of $5000 damages per se or any actual damages a party can prove.   This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.

14.   Entire Agreement

This Agreement is the entire agreement among the Parties with respect to the matters set forth herein and there are no written or oral understandings, promises, agreements, statements or representations among the Parties directly or indirectly related to this Agreement that are not incorporated in it. This Settlement Agreement is an integrated writing and it may not be changed or modified, except in a writing specifically referring hereto and duly executed by the Parties. The Parties agree that no parol evidence shall be admitted in any judicial proceeding to establish any terms inconsistent with this Settlement Agreement. The Parties agree that they will make no claim at any time or place that this Settlement Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character.

15.   Counterparts.

This Agreement may be executed in any number of counterparts, each of which, when so executed shall be deemed an original, but all such counterparts together shall constitute one and the same instrument. A photocopy or pdf of the fully executed original of this Agreement shall be deemed to be an original for any and all purposes.

**(REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK: SIGNATURES APPEAR ON THE FOLLOWING PAGE)**

8

**THE UNDERSIGNED PARTIES HAVE CAREFULLY READ ALL OF THE FOREGOING CONFIDENTIAL FULL AND FINAL MUTUAL RELEASE AND SETTLEMENT AGREEMENT, UNDERSTAND THE TERMS, AND SIGN IT KNOWINGLY AND VOLUNTARILY.**

IN WITNESS WHEREOF, the Parties, each intending to be legally bound, have caused this Agreement to be executed, through their respective duly authorized agents, on the dates set forth below.

Date: 9/20/12

Michael Moreno, personally and as an Officer and owner of MedPro, Inc.

Date: _____

Justin Williams, personally and as an Officer and owner of Physician Information Services, Inc.

Date: _____

Brooke Horan (as to the Willner release only)

Date: _____

Syneron, Inc.

By: Yair Maloa, Controller

Date: _____

Rory Tringali

Date: _____

Mathew Justin Willner

9

THE UNDERSIGNED PARTIES HAVE CAREFULLY READ ALL OF THE FOREGOING CONFIDENTIAL FULL AND FINAL MUTUAL RELEASE AND SETTLEMENT AGREEMENT, UNDERSTAND THE TERMS, AND SIGN IT KNOWINGLY AND VOLUNTARILY.

IN WITNESS WHEREOF, the Parties, each intending to be legally bound, have caused this Agreement to be executed, through their respective duly authorized agents, on the dates set forth below.

Date: _____

Michael Moreno, personally and as an Officer and owner of MedPro, Inc.

Date: 9-7-12

Justin Williams, personally and as an Officer and owner of Physician Information Services, Inc.

Date: 9-7-12

Brooke Horan (as to the Willner release only)

Date: _____

Syneron, Inc.

By: Yair Malca, Controller

Date: _____

Rory Tringali

Date: _____

Mathew Justin Willner

9

THE UNDERSIGNED PARTIES HAVE CAREFULLY READ ALL OF THE FOREGOING CONFIDENTIAL FULL AND FINAL MUTUAL RELEASE AND SETTLEMENT AGREEMENT, UNDERSTAND THE TERMS, AND SIGN IT KNOWINGLY AND VOLUNTARILY.

IN WITNESS WHEREOF, the Parties, each intending to be legally bound, have caused this Agreement to be executed, through their respective duly authorized agents, on the dates set forth below.

Date: _____

Michael Moreno, personally and as an Officer and owner of MedPro, Inc.

Date: _____

Justin Williams, personally and as an Officer and owner of Physician Information Services, Inc.

Date: _____

Brooke Horan (as to the Willner release only)

Date: 8/20/f 2o12

Syneron, Inc.

By: Yule Malca, Controller

Date: _____

Rory Tingall

Date: _____

Mathew Justin Willner

9

THE UNDERSIGNED PARTIES HAVE CAREFULLY READ ALL OF THE FOREGOING CONFIDENTIAL FULL AND FINAL MUTUAL RELEASE AND SETTLEMENT AGREEMENT, UNDERSTAND THE TERMS, AND SIGN IT KNOWINGLY AND VOLUNTARILY.

IN WITNESS WHEREOF, the Parties, each intending to be legally bound, have caused this Agreement to be executed, through their respective duly authorized agents, on the dates set forth below.

Date: _____

Michael Moreno, personally and as an Officer and owner of MedPro, Inc.

Date: _____

Justin Williams, personally and as an Officer and owner of Physician Information Services, Inc.

Date: _____

Brooke Horan (as to the Willner release only)

Date: _____

Syneron, Inc.

By: Yair Malca, Controller

Date: 8/12/12

Rory Tringali

Rory Tringali: Sworn to me on August 22, 2012
Keith Seidman
Notary

KEITH SEIDMAN
Notary Public, State of New York
No. 01SE6265549
Qualified in Nassau County
Con— ...

Date: _____

Mathew Justin Willner

9

THE UNDERSIGNED PARTIES HAVE CAREFULLY READ ALL OF THE FOREGOING CONFIDENTIAL FULL AND FINAL MUTUAL RELEASE AND SETTLEMENT AGREEMENT, UNDERSTAND THE TERMS, AND SIGN IT KNOWINGLY AND VOLUNTARILY.

IN WITNESS WHEREOF, the Parties, each intending to be legally bound, have caused this Agreement to be executed, through their respective duly authorized agents, on the dates set forth below.

Date: _____

_____
Michael Moreno, personally and as an Officer and owner of MedPro, Inc.

Date: _____

_____
Justin Williams, personally and as an Officer and owner of Physician Information Services, Inc.

Date: _____

_____
Brooke Horan (as to the Willner release only)

Date: _____

Syneron, Inc.

_____
By: Yair Malca, Controller

Date: _____

_____
Rory Tringali

Date: 9/10/12

_____
Mathew Justin Willner

# Exhibit B

Warren Wolf

**From:** rory tringali <rorytringali@me.com>
**Date:** April 4, 2014 4:55:48 PM EDT
**To:** Brooke Horan Williams <zanenolan@me.com>, Brooke Horan
<zanenolan@icloud.com>, Justin Williams <lasermedical007@me.com>
**Cc:** Moreno <lasermmoreno@gmail.com>
**Subject: Gloves are off**

I had ENOUGH with you, this is just the BEGINNING!


JUSTIN-WILLIAMS-BROOKE-HORAN-WILLIAMS-LASER-FRAUD-CROOKS.COM

1

# Exhibit C



# Justin Williams: PRO Scammer

Justin Williams and Brooke Eden Horan Laser Fraud Crooks



Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser cri... Page 2 of 39

The biggest fraud crooks couple in the Cosmetic Laser Industry. Educate yourself before dealing with these individuals!

## BROOKE EDEN HORAN current bankruptcy amount of $642,968.05, is a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A)

Horan Adversarial Proceeding 3 complaint (PDF)
Horan Adversarial Proceeding 3 docket (WORD)
Horan Bankruptcy (WORD)
Horan Adversarial Proceeding 2 compaint (PDF)
Horan Adversarial Proceeding 2 docket (WORD)



**Scambook Reports**
Click the Scambook logo above for more info
about Justin Williams.



**Complaint Board:**
Click the Complaints Board logo above for more
info about Justin Williams.



Click the Ripoff  Report logo above
to read more complaints about Justin.



Click for Justin Williams' estimated property value
on Zillow.com

# Mike Moreno Medpro Lasers, New Jersey Business Partner Justin Williams ✪

Mike Moreno Medpro Lasers, New Jersey Business Partner

From: Mike Moreno <lasermmoreno@gmail.com>
Date: May 10, 2013 at 7:26:38 AM EDT
To:

Cc: J W <williamsjustin@icloud.com>
Subject: Re: Eric Poon Amex chargeback

Don't say "you guys" here.  There is exactly ONE person out there ripping people off and we all know who it is now.  I was told to book this deal as JW had the laser "ready to ship".   I asked about this every day for weeks and weeks and was told "it was shipped" and "I have this handled".  It is now obvious and apparent what is and has been going on here.

If I am responsible for half of what JW stole here, then let me know and I will pay it and be done.  I am tired of getting ripped off and being made to look bad through these types of business dealings.   It just never ends and it doesn't have to be like this.  Feel free to call me to discuss as I will do my part even though JW stole this guys money and never shipped the laser.

# I HAVE BEEN SCAMMED!!!
From: pamela <xxxxxxx@XXXXXXX
Date: May 27, 2013 at 11:13:47 PM EDT
To: Mike Moreno <lasermmoreno@gmail.com>, Support < lasersupportteam@aestheticlasersales.com>,
Subject: I HAVE BEEN SCAMMED!!!

Mike/John.
you are quite a team!!, over two years ago I wired money to you and till date you don't feel anything that I have had to wait and wait and wait, while listening to your numerous stories and excuses that make me ashamed for you.
John, while pretending to be different you also took money from me for an equipment you do not posess and did not see .I called you immediately,even though you said the system was on its way that is four months ago and nothing but stories. you are scam artists and it will end with me .I will put you out of business.
II have decided that this will end now, I am not leaving the country until I get what I paid for plus costs.

# I HAVE BEEN SCAMMED!!! REPLY
From: L <@gmail.com>
Date: May 28, 2013 at 9:08:03 AM EDT
To: xxxxxxx <pamela>
Cc: Support <lasersupportteam@aestheticlasersales.com>, Mike Moreno <lasermmoreno@gmail.com>
Subject: Re: I HAVE BEEN SCAMMED!!!

Pam,

I am so sorry that you have experienced this.  As I mentioned to you previously,  I have had good experiences with Mike and encourage you to reach out to him so this can be resolved. In terms of John, I personally feel responsible as I referred you to him.  I witnessed firsthand the transaction between you and him.  Overall, I'm quite confused and very disappointed.   This is such a small industry with less than six degrees of separation.  Fortunately for you, there are many ways to have your story told so that others don't get taken advantage of.   I would first try to get a written guarantee that the items you purchased will be delivered and the date confirmed.   If you do not receive a response today, I would suggest the following:
1. Contact your attorney and have these individuals served via certified mail (there may be a Justin Williams involved in the transaction aka John)
2. Contact all the various laser sources such as Dotmed and share your story (I have a direct source)
3. Send an email blast to all your friends and associates in the industry to inform them of your experience
4. Contact the local news and radio stations in the areas where the sellers are located (most local stations

will conduct an investigation if there is perceived fraud) and the community newspapers will provide coverage
5. Take your experience viral...there is power in social media

What I think is the most troublesome is unlike others on the market looking for used lasers, you have a wealth of resources available. Anyone in the industry would be very happy to get your business. Are these guys aware that you have opened your third location in Africa and in the process of your fourth in one of the richest counties in the US?

Although I usually don't get involved in these issues I feel a personal responsibility since your transaction was based on my referral. I have built my life on my reputation within the industry and it has always served me well. I will do all I can to assist you. However, I hope it doesn't have to go to the abovementioned extremes. At the end of the day we should all be able to benefit from each other's success. I see many great things in the future for you Pam!

=============================================

Mike/John.
you are quite a team!!, over two years ago I wired money to you and till date you don't feel anything that I have had to wait and wait and wait, while listening to your numerous stories and excuses that make me ashamed for you.
John, while pretending to be different you also took money from me for an equipment you do not posess and did not see .I called you immediately,even though you said the system was on its way that is four months ago and nothing but stories. you are scam artists and it will end with me .I will put you out of business.
II have decided that this will end now, I am not leaving the country until I get what I paid for plus costs.


UPS SHIPMENT NOTIFICATION
From: Elina <elino
Date: December 3, 2012 at 3:21:36 AM EST
To: Support <lasersupportteam@aestheticlasersales.com>, Mike Moreno <lasermmoreno@gmail.com>
Subject: Re: UPS Shipment Notification

Jon/Mike
as per my last email. I would like to terminate my contract with Med Pro. I DO NOT want to receive the laser from you. From your email below I understand you dont intend to settle the issue of terminating the contract and a full refund between us directly, therefore my lawyer Bonny Wright will be in contact with Mike within next couple of days to start legal proceedings. She is already in posession of the contract and all the correspondence between us uncluding emails. Bonny will handle all the correspondence from now on.
I do hope it will be.sorted as quickly as possible.
Elina

# JUSTIN WILLIAMS' EMAILS

On 3/3/11 12:50 AM, "Justin Williams" <williamsjustin911@gmail.com> wrote:

>The websites were owned by Brooke Horan and she managed the websites and
>managed the domain names for the websites. Brooke would also manage the
>webmail and distribute the leads coming from the websites every morning.
> Later Brooke managed the websites with Tom Forbes and was the main
>contact for all computer related consulting with Forbes. The business
>MEdPro was managed in UT with as large warehouse located in Park City and
>managed by Justin. The windows all said MedPRo and there was a large
>MEDPRO sign on the wall when you walked in the door. All technical operations and service was
managed in UT as well as

>all deliveries and refurbishment took place in UT. The money would go to
>MedPro in NJ and immediately be transferred to UT to the PIS account for
>management. All Accounting and book keeping was managed in UT. The entire
>business operations were in UT as well as the employees with taxes paid
>to UT state by MedPRo. MedPro West became a DBA of PIS in UT. Later on
>the website was housed in UT in the warehouse with servers and computers
>with all technical computer services were done in UT as well. All mail
>and deliveries would go to UT. Mike M had a home office in NJ and that
>was it. All business was done in UT 100% and always was never in NJ.
>
>The websites were owned by Justin and Brooke until October 2009 when MM
>had them transfer to MedPro and MM along with all domain names. All
>money for the company was put in by JW and liens of credit were in UT in
>UT banks. MM visited UT several times to do business and visit the
>warehouse operations.
From: Justin Williams <williamsjustin@me.com>
Date: March 2, 2011 12:32:26 AM MST
To:
Subject: writing


MedPro West was the warehouse in UT, all employees, equipment, IP, technical services, website
management, servers, etc. were in UT

MedPro would receive the funds from the sales and immediately transfer ALL money as it was received to
PIS that was owned by JW Brooke

All accounting and book keeping/accounting was done in UT

PIS would manage the business entirely

PIS would pay Moreno a monthly draw and then profits were distributed based on if they were above
expenses

All domains were owned by Justin/Brooke and were hosted through domain servers owned by JW Brooke

Web servers for web sites were owned by JW and housed in UT ware house

All business operation were managed in

# Justin and Brooke News & Updates   

### Justin Williams Personal E-mails

Released on April 14th, 2014

NEW   Aug, 19 2012 - Personal Email - 10 Pages

NEW   Jan 24, 2013 - Personal Email - 2 Pages

NEW    Ebay Listings BMW for Sale

NEW    Ebay Listings second BMW for Sale

NEW    Ebay Listings Winnebago Luxury Camper for sale

NEW    Ebay Listings Racing Bike for Sale

---

### Justin Williams & Brooke Horan Docs                  Released on April 14th, 2014

NEW    Stipulation and consent order (pdf)

SOON    More coming soon! stay tuned...

SOON    More coming soon! stay tuned...

---

### Justin Williams & Brooke Horan Updates               Released on April 14th, 2014

NEW    Lakeway Resident Directory (pdf)

NEW    Closer look at Justin Williams' House

SOON    More coming soon! stay tuned...

DELIVERY
From: Andreas <andreas.XXXXX@GMAIL..com>
Date: December 17, 2012 at 5:04:41 AM EST
To: Daniel <global@gmail.com>, Mike Moreno< lasermmoreno@gmail.com>, Support <
lasersupportteam@aestheticlasersales.com>
Subject: Re: Delivery

Please inform me asap where is the freight. The client called her lawyer as she has no information
up to now
I believe that you must be more accurate and give us an information
In case that up to tomorrow we will not know where is the freight and when is going to be delivered
then I am going to explain to the Police what is going on
Waiting your soonest reply to the above matter
Dr. Andreas Roumbas

Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser cri... Page 7 of 39

## PALOMAR AND TITAN HANDPIECE

From: bnatur <bnXXX@gmail.com>

Date: October 27, 2013 at 11:30:27 PM EDT

To: Mike Moreno <lasermmoreno@gmail.com>, Support <lasersupportteam@aestheticlasersales.com>

Subject: Palomar and Titan handpiece

Mike and john,

Greetings,

At this point I know I am not expecting anything from you guys.if this is how you do business I wonder why nobody has decided to do the right and help people in the aesthetics business to put you out of business

Pamela.

Sent from my iPad

# FINAL NOTICE

From: sherry <sherry@yahoo.ca>

Reply-To: sherry yousefian <sherry@yahoo.XXX>

Date: Tuesday, September 10, 2013 at 2:18 PM

Subject: final notice

Mr. Justin:

I did call you many times. You ignoring all my calls and emails. It's more than 3 months past and you left me with no system. I have all yours and your wife's (Brook) information true police deportment. I will call them if I need them. I will call eBay and report you as farad person and company. I have enough information to fallow up. My husband called you and you didn't take it serious. I will report you to business brow. You have 24 hours to answer me. My husband has the way to get the whole many back.

for your own good is better to answer ASAP.

**Sherry**

CLICK "CLOSE TO PLAY"BUTTON BELOW TO PLAY VIDEO.



Close to play

| Justin Williams' House | Download |
|---|---|



Close to play

| Justin William's House | Download |
|---|---|

Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser cri... Page 9 of 39

# Justin Williams and Brooke Eden Horan's Photo Gallery 

Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser ...   Page 10 of 39













Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser ...   Page 13 of 39













Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser ...   Page 16 of 39





Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser ...   Page 17 of 39





Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser ...   Page 18 of 39













## Best Ecommerce Platform

X bizcommerce.com/FreeTrial

#1 Rated All-In-One Shopping Cart. Don't Wait Start Selling Online Now



# Justin Williams



**Do You Have a Complaint?**

Add a complaint and spread the word.

Submit a Complaint Now!













Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser ...   Page 25 of 39



Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser ...   Page 26 of 39





Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser ...   Page 28 of 39



Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser ...   Page 29 of 39



Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser ... Page 30 of 39



Justin Williams and Brooke Eden Horan - Biggest Laser, Fraud Crooks, cosmetic laser ...   Page 31 of 39











STAY TUNED!

MORE PICTURES AND DOCUMENTS COMING SOON!



COMING SOON!

STAY TUNED!

MORE PICTURES

AND DOCUMENTS



## Contact Us

You can help stop these crooks! Speak your word!

Have you been a victim of these crooks Justin Williams and Brooke Eden Horan. Contact us and tell us your story. Send us documents, pictures or any compromising material you may have. We will post them on all our 148 justin williams and brooke eden horan's affiliate websites. Thank you

for your support.

lasercrooks@hmamail.com

Form Disabled Temporarily. Send us an email instead.

Name

Email

Subject

Message

SEND

Copyright © 2014 LaserCrooks INC.
Licensed under CC BY 3.0. Built on Bootstrap.