THE COUNSEL CERTIFICATION WITH EXHIBITS EXCEEDED THE 10.0 MB E-FILING LIMIT SO WE SPLIT IT INTO TWO PARTS.

THE FIRST FILING CONTAINED THE CERTIFICATION AND A PORTION OF EXHIBIT 1.  THIS FILING CONTAINS THE REMAINING PORTION OF EXHIBIT 1 AND EXHIBITS 2 – 9.

# Exhibit D

**Warren Wolf**

**From:** Leanne Velona <leanne.velona@marinello.com>
**Date:** April 7, 2014 3:24:44 PM EDT
**To:** "Mike Moreno (lasermmoreno@gmail.com)" <lasermmoreno@gmail.com>, "Justin Williams (lasermedical007@me.com)" <lasermedical007@me.com>
**Subject: FW: Urgent way to help**

Do you want me to send you all of the emails this person sends me?

LeAnne Velona
Director of Education – Esthetic & Massage
12449 Putnam Street
Whittier, CA 90602
562-945-2211 x 141

Never underestimate the power of small changes.

**From:** Rory Tringali [mailto:cosmeticlasermarketing@gmail.com]
**Sent:** Saturday, April 05, 2014 10:15 AM
**To:** Leanne Velona
**Subject:** Re: Urgent way to help

Leanne,

Call me urgently 1-305-965-2211

I have the way to help right now please.

Do not answer or respond to any email from justin , mike Moreno or Brooke or their lawyers, if they settled with you just tell me that. If they made you sign a settlement agreement making you sign a non disparagement agreement I cannot help you.

I jus helped two victims and hopefully
Help my self as well.

Trust me ,

1

Rory

Rory Tringali
Cosmetic Laser Marketing LLC
Buy/Sell/Trade
Worldwide
1-305-965-2211 <tel:1-305-965-2211> Mobile
1-516-502-9757 <tel:1-516-502-9757> Fax
Email:Rory@cosmeticlasers.com

Warren Wolf

**From:** Leanne Velona <leanne.velona@marinello.com>
**Date:** April 9, 2014 12:36:40 PM EDT
**To:** "Mike Moreno (lasermmoreno@gmail.com)" <lasermmoreno@gmail.com>, "Justin Williams (lasermedical007@me.com)" <lasermedical007@me.com>
**Subject: FW: Read: Justin Williams ESR LLC-Medpro Lasers**

fyi

LeAnne Velona
Director of Education – Esthetic & Massage
12449 Putnam Street
Whittier, CA  90602
562-945-2211 x 141

Never underestimate the power of small changes.

**From:** Rory Tringali [mailto:cosmeticlasermarketing@gmail.com]
**Sent:** Tuesday, March 25, 2014 3:18 PM
**To:** Leanne Velona
**Subject:** Re: Read: Justin Williams ESR LLC-Medpro Lasers

Did you hear from him? I have been in contact with other victims and I found out how a way for a chance to recover.

Rory

On 3/4/14, 1:41 PM, Leanne Velona wrote:

> Your message
>
>> To: Leanne Velona
>> Subject: Re: Justin Williams ESR LLC-Medpro Lasers
>> Sent: Tuesday, March 04, 2014 10:36:33 AM (UTC-08:00) Pacific Time (US & Canada)
>
> was read on Tuesday, March 04, 2014 10:40:24 AM (UTC-08:00) Pacific Time (US & Canada).

--

Best Regards;

Rory Tringali



1

**BUY • SELL • TRADE • BROKERAGE**

1-305-965-2211 | Mobile
1-516-502-9757 | Fax
rory@cosmeticlasers.com
www.cosmeticlasermarketing.com

This message may contain confidential and/or privileged information.
If you are not the intended recipient or authorized to receive this for the
intended recipient, you must not use, copy, disclose or take any action.

Please consider the environment before printing this email

Warren Wolf

**From:** Leanne Velona <leanne.velona@marinello.com>
**Date:** April 9, 2014 12:36:13 PM EDT
**To:** "Mike Moreno (lasermmoreno@gmail.com)" <lasermmoreno@gmail.com>, "Justin Williams (lasermedical007@me.com)" <lasermedical007@me.com>
**Subject:** FW: Lasers issues & resolve/refund

fyi

LeAnne Velona
Director of Education – Esthetic & Massage
12449 Putnam Street
Whittier, CA  90602
562-945-2211 x 141

Never underestimate the power of small changes.

**From:** Rory [mailto:cosmeticlasermarketing@gmail.com]
**Sent:** Thursday, January 09, 2014 8:15 AM
**To:** Leanne Velona
**Subject:** Re: Lasers issues & resolve/refund

Call me. Ripoffreport.com

Complaintsboard.com

Scamclub.com

Yelp.com

Dotmed.com

Call me as I list spoke I a client of there's that been ripped off for over 1 year and they are posting the truth

**Rory Tringali**
**Cosmetic Laser Marketing LLC**
**Buy/Sell/Trade**
**Worldwide**
**1-305-965-2211** <tel:1-305-965-2211> Mobile
**1-516-502-9757** <tel:1-516-502-9757> Fax
**Email:Rory@cosmeticlasers.com**

**Warren Wolf**

**From:** Leanne Velona <leanne.velona@marinello.com>
**Date:** April 9, 2014 12:36:53 PM EDT
**To:** "Mike Moreno (lasermmoreno@gmail.com)" <lasermmoreno@gmail.com>, "Justin Williams (lasermedical007@me.com)" <lasermedical007@me.com>
**Subject: FW: Justin Williams ESR LLC-Medpro Lasers**


fyi

LeAnne Velona
Director of Education – Esthetic & Massage
12449 Putnam Street
Whittier, CA 90602
562-945-2211 x 141

Never underestimate the power of small changes.

---

**From:** Rory Tringali [mailto:cosmeticlasermarketing@gmail.com]
**Sent:** Thursday, March 06, 2014 9:31 AM
**To:** Larry Leven Attoney At Law
**Cc:** Doctor Spence; Leanne Velona; Mike Goodrich; webbankus@gmail.com; jchura@midtownsurgery.com; nenupharlaser@hotmail.com; Cynthia; beth@greenmetalusa.com; kelly@longevitylounge.info; bnaturalspa@verizon.net; chafic@paraform-lb.com; Alfonso Villarreal
**Subject:** Re: Justin Williams ESR LLC-Medpro Lasers

Federico,

I was a victim of fraud from Justin & Brooke Williams. I had no control of the money in your purchases made not a check book and Justin & Brooke closed the account.

I will contact my attorney.

Rory Tringali
Cosmetic Laser Marketing LLC
Buy/Sell/Trade
Worldwide
1-305-965-2211 <tel:1-305-965-2211> Mobile
1-516-502-9757 <tel:1-516-502-9757> Fax
Email:Rory@cosmeticlasers.com

On Mar 6, 2014, at 12:28 PM, Federico Jose Rodriguez Rodriguez <fjrr15@hotmail.com> wrote:

Rory:

You have responsabilities for the 1/3 of the company, so if you do not want problem, refund me this part of the money, as soon as posible.

1

> Date: Tue, 4 Mar 2014 13:41:18 -0500
> From: cosmeticlasermarketing@gmail.com
>
To: mdspencemd@beyondbb.com; leanne.velona@marinello.com; mikegoodrich@live.com; we
bbankus@gmail.com; jchura@midtownsurgery.com; fjrr15@hotmail.com; nenupharlaser@hotm
ail.com; merlot59@yahoo.com; beth@greenmetalusa.com; kelly@longevitylounge.info;bnatural
spa@verizon.net; chafic@paraform-lb.com; alfonso.villarreal@ghunther.com
> Subject: Re: Justin Williams ESR LLC-Medpro Lasers
>
>
>

Warren Wolf

**From:** Leanne Velona <leanne.velona@marinello.com>
**Date:** April 9, 2014 12:40:20 PM EDT
**To:** "Mike Moreno (lasermmoreno@gmail.com)" <lasermmoreno@gmail.com>, "Justin Williams (lasermedical007@me.com)" <lasermedical007@me.com>
**Subject:** FW: 17 TUXEDO COURT, Evesham Township owned by MORENO, MICHAEL J & ELYSE J - NJParcels.com New Jersey Property Data

I have 12 more of these things if you want them all.
I don't know what is going on but you completed your transaction with me so we are good, just thought you might want to see some of the things this guy sent to me. It was extremely stressful completing our transaction and having this persons added commentary.

LeAnne Velona
Director of Education - Esthetic & Massage
12449 Putnam Street
Whittier, CA  90602
562-945-2211 x 141

Never underestimate the power of small changes.


-----Original Message-----
From: Rory Tringali [mailto:cosmeticlasermarketing@gmail.com]
Sent: Tuesday, January 14, 2014 2:27 PM
To: laser213@gmail.com
Subject: 17 TUXEDO COURT, Evesham Township owned by MORENO, MICHAEL J & ELYSE J - NJParcels.com New Jersey Property Data

http://njparcels.com/property/0313/11.53/7

1



●●○○○ AT&T  LTE          5:24 PM
                    njparcels.com

## Property Information

This property is residential.
It is in the LD zone.
The property is 1.0467 acres in size.

### 5 Acre Lots in Goldendale

sites.google.com/site/casera

Close to Town on Paved Road, Trees.. Very little road to build or plow!



### Structure Information

Building Description: HUNTINGTON
It was built in 2010.

## Tax, Deed, and Sale Information

17 TUXEDO COURT was last sold for **$1,415,200.00** on 2010-06-14.
The Deed is recorded at the Clerk's Office in book **06718** on page **00713**.

In 2013, this property is assessed for **$1,017,100.00**. The land is assessed at $200,000.00 and the improvements are assessed at $817,100.00. In 2012, the property's assessed value was $1,017,100.00.

17 TUXEDO COURT costs Michael J & Elyse J Moreno **$26,597.16** annually in taxes.

The last time this record was synced with the assessor's database was on June 1st, 2013.

# Exhibit E

Warren Wolf

**From:** rory tringali <rorytringali@me.com>
**Date:** April 3, 2014 10:09:27 PM EDT
**To:** Moreno <lasermmoreno@gmail.com>
**Subject: tax returns great for iIRS**

Hope you reported well you and pussy in Austin

Apr 14 08 10:17a

**Form 1120S**

U.S. Income Tax Return for an S Corporation

▶ Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation.
▶ See separate instructions.

Department of the Treasury
Internal Revenue Service

OMB No. 1545-0130

**2007**

For calendar year 2007 or tax year beginning _____ 2007, ending _____

A Effective date of S election
8/15/2001

B Business code number
454390

Use the IRS label. Otherwise, print or type.

MEDPRO, INC
23 RIDING RUN DRIVE
MARLTON, NJ 08053

C Employer identification number
23-3818985

D Date incorporated
8/15/2001

F Total assets (see instructions)
70,53

---

**Form 1120S**

U.S. Income Tax Return for an S Corporation

▶ Do not file this form unless the corporation has filed Form 2553 to elect to be an S corporation.
▶ See separate instructions.

Department of the Treasury
Internal Revenue Service

OMB No. 1545

**200**

For calendar year 2006 or tax year beginning _____ 2006, ending _____

A Effective date of S election
8/15/2001

B

Use the IRS label. Otherwise.

MEDPRO, INC
23 RIDING RUN DRIVE
MARLTON, NJ 08053

C Employer identification number
23-3818985

D Date incorporated
8/15/2001

---

**Form 1120S**

U.S. Income Tax Return for an S Corporation

▶ Do not file this form unless the corporation has filed Form 2553 to elect to be an S corporation.
▶ See separate instructions.

Department of the Treasury
Internal Revenue Service

OMB No. 1545

**20**

For calendar year 2005 or tax year beginning _____ 2005, and ending _____

A Effective date of S election
8/15/2001

B Business code number
454390

Use the IRS label. Otherwise, print or type.

MEDPRO, INC
23 RIDING RUN DRIVE
MARLTON, NJ 08053

C Employer identification number
23-3818

D Date incorporated
8/15/2

E Total assets (see instructions)

F Check applicable boxes: (1) ☐ Initial return   (2) ☐ Final return   (3) ☐ Name change   (4) ☐ Address change   (5) ☐ Am

G Enter number of shareholders in the corporation at end of the tax year ▶

Caution: Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | | |
|---|---|---|---|
| 1a Gross receipts or sales | 4,284,420. | b Less returns and allowances | 88,890. c Bal ▶ 1c | 4, |
| 2 Cost of goods sold (Schedule A, line 8) | | | 2 | 3, |
| 3 Gross profit. Subtract line 2 from line 1c | | | 3 | |
| 4 Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | 4 | |
| 5 Other income (loss) (attach statement) | | | 5 | |
| 6 Total income (loss). Add lines 3 through 5 | | | ▶ 6 | |
| 7 Compensation of officers | | | 7 | |
| 8 Salaries and wages (less employment credits) | | | 8 | |
| 9 Repairs and maintenance | | | 9 | |
| 10 Bad debts | | | 10 | |
| 11 Rents | | | 11 | |
| 12 Taxes and licenses | | SEE STATEMENT 1 | 12 | |
| 13 Interest | | | 13 | |
| 14a Depreciation (attach Form 4562) | 14a | 2,130. | | |
| b Depreciation claimed on Schedule A and elsewhere on return | 14b | | | |
| c Subtract line 14b from line 14a | | | 14c | |
| 15 Depletion (Do not deduct oil and gas depletion.) | | | 15 | |
| 16 Advertising | | | 16 | |
| 17 Pension, profit-sharing, etc., plans | | | 17 | |
| 18 Employee benefit programs | | | 18 | |
| 19 Other deductions (attach statement) | | SEE STATEMENT 2 | 19 | |
| 20 Total deductions. Add the amounts shown in the far right column for lines 7 through 19 | | | ▶ 20 | |
| 21 Ordinary business income (loss). Subtract line 20 from line 6 | | | 21 | |
| 22 Tax: a Excess net passive income tax (attach statement) | 22a | | | |
| b Tax from Schedule D (Form 1120S) | 22b | | | |

# Exhibit F

LAW OFFICE OF

# GOLDBERG & WOLF, L.L.C.

WARREN S. WOLF*
JORDAN B. GOLDBERG*
JONATHAN M. ROMVARY*

*MEMBER  NJ & PA BARS*

1949 BERLIN ROAD
SUITE 201
CHERRY HILL, NEW JERSEY
08003

856-651-1600
FAX 856-651-1615

April 28, 2014

**VIA EMAIL (lawrence.leven@gmail.com),**
**FACSIMILE (973-228-4496)**
**AND FIRST CLASS MAIL**

Lawrence A. Leven, Esquire
175 Fairfield Avenue, Unit 1C
West Caldwell, New Jersey 07006

     Re:    Rory Tringali/ Medpro, Inc.

Dear Larry:

     We are writing in an effort to mitigate damages Mr. Tringali is causing to Medpro, Inc, through his harassment of its principal, Mike Moreno, tortious interference with its business relations, libel and breach of the non-disparagement clause in the settlement agreement. We understand Mr. Tringali has parted ways with Justin Williams, but do not understand why Mr. Tringali is bringing Medpro into it.

     Your client emails Mr. Moreno copies of Medpro tax returns Mr. Tringali obtained through discovery after Mr. Tringali was indicted for multiple felonies. Your client advises people that he sits outside Mr. Moreno's house and observes his family activities. Your client emails Mr. Moreno assessment valuations and other details of Mr. Moreno's home. This conduct is clearly intended to harass our client and appears criminal in my opinion.

     Your client has been emailing Medpro's customers and advising them that Medpro is a scammer and rips off its customers. This is untrue, defamatory and casting our client in a negative light. The settlement agreement requires Mr. Tringali to pay $5000 per occurrence of this.

     Your client has improperly obtained emails involving our client and posted them on a website he built to tarnish the reputations of Justin Williams and his wife. This appears to be a further effort to harass, defame and disparage our client.

     Demand is hereby made that your client CEASE and DESIST from (1) further contacting Mr. Moreno (2) attempting to cast Medpro and/or Mr. Moreno in a negative light to Medpro's associates, clients or the general public and (3) posting any information about Medpro or Mr.

Lawrence A. Leven, Esquire
April 28, 2014
page 2

Moreno on your client's Justin Williams attack website or anywhere else on the internet.

We do not know what your client seeks to obtain by this conduct other than finding himself a defendant in a new lawsuit.   In addition to the $5000 per occurrence remedy, your client's conduct may be deemed a material breach of the settlement agreement which would void the release for the internet email bombs he orchestrated and the other allegations in the federal lawsuit. Kindly be advised our client reserves all rights to seek all damages arising from Mr. Tringali's conduct.

If you are interested in resolving this amicable, please contact me immediately.

Sincerely,

Warren S. Wolf, Esquire
GOLDBERG & WOLF, LLC

cc:     Kenneth R. Sharpe, D.A.G.
        Medpro, Inc.

LAW OFFICES

# GOLDBERG & WOLF, LLC

WARREN S. WOLF*
JORDAN B. GOLDBERG*
JONATHAN M. ROMVARY*

1949 BERLIN ROAD
SUITE 201
CHERRY HILL, NEW JERSEY 08003

_____

*MEMBER NJ & PA BARS

856.651.1600
FAX 856.651.1615

### FACSIMILE TRANSMISSION SHEET

DATE:      April 28, 2014

TO:        Lawrence A. Leven, Esquire

FAX NO:    973-228-4496

RE:        Rory Tringali/ Medpro, Inc.

FROM:      WARREN S. WOLF, ESQUIRE

COMMENTS:  Please see attached.

TOTAL PAGES INCLUDING COVER PAGE: ___3___ PAGES

### ***CONFIDENTIAL NOTE***

The documents accompanying this facsimile transmission contain information from the law firm of Goldberg & Wolf, LLC which is confidential and/or legally privileged.   The information is intended only for the use of the individual or entity named on this transmission sheet.   If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this facsimile information is strictly prohibited, and that the documents should be returned to this firm immediately.   In this regard, if you have received this facsimile in error, please notify us by telephone immediately so that we can arrange for the return of the original documents to us at no cost to you.

P. 1

* * * Communication Result Report ( Apr. 28. 2014 12:34PM ) * * *

1)
2)

Date/Time: Apr. 28. 2014 12:32PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 2648 | Memory TX | 19732284496 | P.  3 | OK | |

---

Reason for error
    E. 1) Hang up or line fail            E. 2) Busy
    E. 3) No answer                       E. 4) No facsimile connection
    E. 5) Exceeded max. E-mail size       E. 6) Destination does not support IP-Fax

LAW OFFICES
GOLDBERG & WOLF, LLC
150 BELLOR ROAD
WARREN S. WOLF*                     SUITE 201
JORDAN R. GOLDBERG*         CHERRY HILL, NEW JERSEY 08003
JONATHAN H. ROSMANY*

*MEMBERS N.J. & PA BARS                     856.651.1600
                                     FAX 856.651.1615

FACSIMILE TRANSMISSION SHEET

DATE:        April 28, 2014

TO:          Lawrence A. Lever, Esquire

FAX NO:      973-228-4495

RE:          Rasy Telegdi/ Medpro, Inc.

FROM:        WARREN S. WOLF, ESQUIRE

COMMENTS:    Please see attached.

TOTAL PAGES INCLUDING COVER PAGE: __3___ PAGES

***CONFIDENTIAL NOTE***

The documents accompanying this facsimile transmission contain information from the law firm of Goldberg & Wolf, LLC which is confidential and/or legally privileged.  The information is intended only for the use of the individual or entity named on this transmission sheet.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this facsimile information is strictly prohibited, and that the documents should be returned to this firm immediately.  In this regard, if you have received this facsimile in error, please notify us by telephone immediately so that we can arrange for the return of the original documents to us at no cost to you.

# Exhibit G

**Warren Wolf**

| From: | Alicia Amoroso |
|---|---|
| Sent: | Monday, April 28, 2014 3:09 PM |
| To: | Warren Wolf |
| Subject: | FW: Rory Tringali/Medpro, Inc. |

**From:** lawrence leven [mailto:lawrence.leven@gmail.com]
**Sent:** Monday, April 28, 2014 3:05 PM
**To:** Alicia Amoroso
**Subject:** Re: Rory Tringali/Medpro, Inc.

Dear Warren,

I received your email / fax. Rory is out of the country, I believe he will be returning this weekend. I have sent a copy of your letter to him. Upon his return I will discuss the contents of the letter

On Mon, Apr 28, 2014 at 12:39 PM, Alicia Amoroso <AliciaAmoroso@goldbergwolf.com> wrote:

Dear Mr. Leven,

Please find attached hereto correspondence with regard to the above-referenced matter.  If you do not receive the attachment, please contact the undersigned.

Thank you,

**Alicia Amoroso**

Legal Assistant to the Law Office of

Goldberg & Wolf, LLC

GOLDBERG & WOLF, LLC.

1949 Berlin Road

Suite 201

Cherry Hill, New Jersey 08003

1

Ph 856-651-1600 x-307 Fax 856-651-1615

E-mail: aliciaamoroso@goldbergwolf.com

NOTICE: This email (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender if you have received this email in error, then delete it.  Thank you.

IRS CIRCULAR 230 NOTICE:  Any federal tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending any transaction or matter addressed in this communication.

Above email is for intended recipient only and may be confidential and protected by attorney/client privilege.

If you are not the intended recipient, please advise the sender immediately.

Unauthorized use or distribution is prohibited and may be unlawful. Phone 856.651.1600 Fax 856.651.1615

--
Lawrence Leven Attorney At Law
175 Fairfield Avenue, Suite 1C
West Caldwell, NJ 07006
1-973-228-5926 Tel.
1-973-228-4496 Fax
Email: Lawrence.leven@gmail.com

# Exhibit H

## Warren Wolf

| | |
|---|---|
| From: | Warren Wolf |
| Sent: | Monday, April 28, 2014 5:12 PM |
| To: | 'lawrence.leven@gmail.com' |
| Subject: | tringali/medpro |

Larry,

I appreciate the call and your representation that Mr. Tringali will not send any disparaging emails this week until you and he have a chance to discuss same after he returns from his trip. However, my client continues to be disparaged through his website http://justin-williams-brooke-horan-williams-laser-fraud-crooks.com which falsely claims Moreno and Medpro are partners with Williams. If your client does not remove any and all references to Moreno and Medpro from this website within 24 hours, we will file a lawsuit and seek injunctive relief. As part of an effort to "keep the peace" this week until Tringali returns, please ask him to take all references to Moreno and Medpro off the website immediately.

Assuming all Medpro and Moreno content are immediately removed and nothing else is sent out this week, my client and I will be happy to discuss Tringali's concerns with Moreno in an effort to reach an amicable resolution.

Warren S. Wolf, Esquire
GOLDBERG & WOLF, LLC
1949 Berlin Road, Suite 201
Cherry Hill, New Jersey 08003
Ph 856-651-1600 Fax 856-651-1615
wwolf@goldbergwolf.com

NOTICE: This email (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be protected by the attorney/ client privilege. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender if you have received this email in error, then delete it.
IRS CIRCULAR 230 NOTICE: Any federal tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending any transaction or matter addressed in this communication.

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

RECEIVED

LAWRENCE A. LEVEN, ESQ.
175 FAIRFIELD AVENUE, UNIT 1C
WEST CALDWELL, NJ 07006
(973) 228-5926
Attorney for Defendant Rory Tringali

AUG 0 5 2010

| | |
|---|---|
| MEDPRO, INC. and PHYSICIANS INFORMATION SERVICES, INC., a Joint Venture, MICHAEL MORENO and JUSTIN WILLIAMS<br><br>Plaintiffs<br><br>v.<br><br>SYNERON, INC., RORY TRINGALI and MATHEW JUSTIN WILNER | CIVIL ACTION NO: 1:08-cv-03426-JBS-KMW<br><br><br><br>SUBSTITUTION OF ATTORNEY |

The undersigned hereby consents to the substitution of LAWRENCE A. LEVEN, as Attorney(s) for the Defendant RORY E. TRINGALI, pro se in the above-entitled cause.

RORY E. TRINGALI, pro se
Withdrawing Attorney

LAWRENCE A. LEVEN
Superseding Attorney

Dated: July 29, 2010

# Exhibit 3

MICHAEL MORENO, ET AL

       vs.

RORY E. TRINGALI

Plaintiff

Defendant

2 0 1 4 0 5 2 1 1 5 1 1 1 9

Superior Court Of New Jersey

BURLINGTON Venue

Docket Number: BUR C 32 14

**Person to be served (Name and Address):**
RORY E. TRINGALI
48 WALTER AVENUE
HICKSVILLE NY XXXXX     11801
By serving: RORY E. TRINGALI

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Attorney: WARREN S. WOLF, ESQ.

**Papers Served:** SUMMONS AND VERIFIED COMPLAINT, EXHIBITS, PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE, ORDER TO SHOW CAUSE WITHOUT TEMPORARY RESTRAINTS,

Cost of Service pursuant to R. 4:4-3(c)

$ ____.___

**Service Date:**   [X] Served Successfully      [ ] Not Served

Date/Time:   _05/27/2014_ @  _8:04AM_

[ ] Delivered a copy to him/her personally

[XX] Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

[ ] Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. (indicate name & official title at right)

Attempts:   Date/Time: _____
           Date/Time: _____
           Date/Time: _____

Name of Person Served and relationship/title:

MR. TRINGALI  (FIRST NAME
                          REFUSED)
CO-RESIDENT _____

**Description of Person Accepting Service:**
MALE     35-45     5'8-5'10          170-190     WHITE     BLACK
SEX: ___ AGE: _____ HEIGHT: _____ WEIGHT: __lbs.__ SKIN: _____ HAIR _____ OTHER: _____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] No response on:   Date/Time: _____
           Date/Time: _____
           Date/Time: _____

Other:

**Served Data:**
Subscribed and Sworn to me this

_28th_ day of _MAY_     2014

Notary Signature: _Nancy A Noel_

_9/11/18_

Name of Notary      Commission Expires

RICK LETTAU

RICK LETTAU

I, _____
was at the time of service a competent adult, over the age of 18 and not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

Signature of Process Server          Date
_____          05/28/2014

RICK LETTAU

Name of Private Server: _____  Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) 672-1952

NANCY A. LETTAU
Notary Public, State of New York
NO. 01LE0093760
Qualified in Nassau County
Commission Expires February 11, 20XX

# Exhibit 4

LAWRENCE A. LEVEN, ESQ.
175 FAIRFIELD AVENUE, UNIT 1C
WEST CALDWELL, NJ 07006
Tax I.D. No: 22-3549741
(973) 228-5926
FAX (973) 228-5926
Attorney(s) FOR PLAINTIFF
MICHAEL MORENO AND MEDPRO, INC.

       *Plaintiff,*

      vs.

RORY E. TRINGALI
      *Defendants,*

RECEIVED

JUN 1 7 2014

AT 8:30 _____M
WILLIAM T. WALSH, CLERK

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
BURLINGTON COUNTY

DOCKET NUMBER
C32-14

CIVIL ACTION

VERIFIED COMPLAINT

## NOTICE OF REMOVAL

The Defendant Rory E. Tringali files a notice of removal pursuant to 28 U.S.C 1446(a) and respectfully represents that:

1. On May 12, 2014, a civil action was commenced against the Defendant Rory E. Tringali (Tringali) in the Superior Court of New Jersey Burlington County Chancery Division, entitled Michael Moreno and MedPro, Inc. (Moreno) & (Medpro) Medpro v. Trangali baring docket number C-032-14. A copy of the notice to the Defendant and the complaint are attached to this notice as Exhibit A.

2. Removal is timely because 35 days have not elapsed since service of the Defendant Tringali of the documents attached as Exhibit A and Exhibit B. Tringali was served on May 27, 2014.

3. The above described action is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. 1332.

4. Plaintiff Medpro according to its state court complaint is a New Jersey corporation whose principal place of business is in Evesham, New Jersey.

5. Plaintiff Michael Moreno is a New Jersey citizen.

6. Defendant Rory Tringali is a New York citizen.

7. The amount in controversy exceeds &75,000.00 exclusive of interest and costs. Defendant Tringali demands $250,000.00 according to his prayer for damages on his counterclaim.

Wherefore, petitioner prays that the above action now pending against Rory Tringali and Medpro and Moreno in New Jersey Superior Burlington County Court Chancery Division be removed from that court to this Court.

Lawrence A. Leven
175 Fairfield Avenue
West Caldwell, New Jersey 07006
Phone(973)228-5926
Email: lawrence.leven@gmail.com
Attorney for Defendant Counterclaimant
Rory E. Tringali

# Exhibit 5

SCHEDO

# U.S. District Court
## District of New Jersey [LIVE] (Camden)
## CIVIL DOCKET FOR CASE #: 1:14-cv-04002-JBS-KMW

MORENO et al v. TRINGALI
Assigned to: Chief Judge Jerome B. Simandle
Referred to: Magistrate Judge Karen M. Williams
Case in other court: Burlington County Superior Court, C
32 14
Cause: 28:1441 Notice of Removal Libel,Assault,Slander

Date Filed: 06/17/2014
Jury Demand: Plaintiff
Nature of Suit: 320 Assault Libel &
Slander
Jurisdiction: Diversity

**Plaintiff**

**MICHAEL MORENO**

represented by **WARREN S. WOLF**
GOLDBERG & WOLF, LLC
1949 BERLIN ROAD, STE 201
CHERRY HILL, NJ 08003
(856) 651-1600
Fax: 856-651-1615
Email:
WWOLF@GOLDBERGWOLF.COM
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MEDPRO, INC.**

represented by **WARREN S. WOLF**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**RORY E. TRINGALI**

represented by **LAWRENCE A LEVEN**
175 FAIRFIELD AVENUE, UNIT 1C
WEST CALDWELL, NJ 07006
973-228-5926
Email: lawrence.leven@gmail.com
*TERMINATED: 10/06/2014*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ROBERT A. VORT**
SUITE 101
2 UNIVERSITY PLAZA

CM/ECF LIVE - U.S. District Court for the District of New Jersey          Page 2 of 7

HACKENSACK, NJ 07601
(201) 342-9501
Fax: 201-342-9504
Email: rvort@vortlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 06/17/2014 | 1 | NOTICE OF REMOVAL by RORY E. TRINGALI from BURLINGTON COUNTY SUPERIOR COURT, case number C 32 14. ( Filing and Admin fee $ 400 receipt number NEW20404, filed by RORY E. TRINGALI. (Attachments: # 1 Amended Complaint, # 2 Civil Cover Sheet, # 3 Cover Letter)(nz, ) (Entered: 06/23/2014) |
| 06/23/2014 |   | CLERK'S OFFICE QUALITY CONTROL MESSAGE - As of May 1, 2006, Civil initial pleadings such as complaints and notices of removal must be filed electronically. Payment of the filing fee is made via the internet (pay.gov). Visit our website at www.njd.uscourts.gov for additional information. In the future, to expedite the processing of the initial pleadings, counsel is requested to file complaints and notices of removal electronically. (nz, ) (Entered: 06/23/2014) |
| 06/25/2014 | 2 | MOTION for Order to Show Cause *on Short Notice* by MEDPRO, INC., MICHAEL MORENO. (Attachments: # 1 Certification Part 1, # 2 Certification Part 2, # 3 Certification Part 3, # 4 Text of Proposed Order, # 5 Brief, # 6 Certificate of Service)(WOLF, WARREN) (Entered: 06/25/2014) |
| 06/25/2014 | 3 | Corporate Disclosure Statement by MEDPRO, INC. identifying none as Corporate Parent.. (WOLF, WARREN) (Entered: 06/25/2014) |
| 06/26/2014 |   | Set Deadlines as to 2 MOTION for Order to Show Cause *on Short Notice*. Motion set for 7/21/2014 before Chief Judge Jerome B. Simandle. The motion will be decided on the papers. No appearances required unless notified by the court. (tf, ) (Entered: 06/26/2014) |
| 06/26/2014 | 4 | ORDER TO SHOW CAUSE: Show Cause Hearing set for 7/23/2014 11:00 AM in Camden - Courtroom 4A before Chief Judge Jerome B. Simandle. Defendant shall file and serve a written response to this Order to Show Cause and the request for entry of injunctive relief and proof of service by 7/11/2014. The Plaintiff must file and serve any written reply to the Defendant's order to show cause opposition by 7/18/2014. Signed by Chief Judge Jerome B. Simandle on 6/26/2014. (tf, ) (Entered: 06/26/2014) |
| 07/18/2014 | 5 | Certification of Service of Order to Show Cause on behalf of MEDPRO, INC., MICHAEL MORENO Re 4 Order to Show Cause,. (WOLF, WARREN) (Entered: 07/18/2014) |
| 07/18/2014 | 6 | Proposed Pretrial Order *on Order to Show Cause* by MEDPRO, INC., MICHAEL MORENO. (WOLF, WARREN) (Entered: 07/18/2014) |
| 07/18/2014 | 7 | Request for Default by MEDPRO, INC., MICHAEL MORENO against Rory E. Tringali. (WOLF, WARREN) (Entered: 07/18/2014) |

| | | |
|---|---|---|
| 07/21/2014 | | Clerk's ENTRY OF DEFAULT as to RORY E. TRINGALI for failure to plead or otherwise defend. (tf, ) (Entered: 07/21/2014) |
| 07/23/2014 | 8 | Minute Entry for proceedings held before Chief Judge Jerome B. Simandle: Preliminary Injunction Hearing and Order to Show Cause held on 7/23/2014. Ordered Preliminary Injunction granted. Opinion and Order to be filed by the Court. (Court Reporter/Recorder Lisa Marcus.) (tf, ) (Entered: 07/23/2014) |
| 07/24/2014 | 9 | FINDINGS OF FACT AND CONCLUSIONS OF LAW. Signed by Chief Judge Jerome B. Simandle on 7/24/2014. (tf, ) (Entered: 07/24/2014) |
| 07/24/2014 | 10 | ORDERED that Plaintiffs' 2 motion for a preliminary injunction is GRANTED. Signed by Chief Judge Jerome B. Simandle on 7/24/2014. (tf, ) (Entered: 07/24/2014) |
| 10/06/2014 | 11 | Substitution of Attorney - Attorney LAWRENCE A LEVEN terminated. Attorney ROBERT A. VORT for RORY E. TRINGALI added.. (VORT, ROBERT) (Entered: 10/06/2014) |
| 10/06/2014 | 12 | MOTION to Vacate *default* by RORY E. TRINGALI. (Attachments: # 1 Affidavit, # 2 Affidavit, # 3 Affidavit, # 4 Brief, # 5 Text of Proposed Order) (VORT, ROBERT) (Entered: 10/06/2014) |
| 10/06/2014 | | Set Deadlines as to 12 MOTION to Vacate *default*. Motion set for 11/3/2014 before Chief Judge Jerome B. Simandle. The motion will be decided on the papers. No appearances required unless notified by the court. (tf, ) (Entered: 10/06/2014) |
| 10/20/2014 | 13 | Letter from Warren Wolf for Extension of Time to Respond to Motion re 12 MOTION to Vacate *default*, Set/Reset Motion and R&R Deadlines/Hearings. (WOLF, WARREN) (Entered: 10/20/2014) |
| 10/21/2014 | 14 | TEXT ORDER:Plaintiffs' request for an extension of time 13 is granted. Plaintiffs' response to Defendant's motion to vacate 12 shall be due by no later than October 27, 2014. Any reply shall be due by no later than November 3, 2014. ORDERED by Chief Judge Jerome B. Simandle on 10/21/14. (mb, ) (Entered: 10/21/2014) |
| 10/27/2014 | 15 | RESPONSE in Opposition filed by MEDPRO, INC., MICHAEL MORENO re 12 MOTION to Vacate *default and Cross Motiono for Contempt* (Attachments: # 1 Text of Proposed Order, # 2 Brief, # 3 Certification)(WOLF, WARREN) (Entered: 10/27/2014) |
| 10/28/2014 | | CLERK'S QUALITY CONTROL MESSAGE - The Response in Opposition to Motion submitted by Warren Wolf on 10/27/2014 contains a Cross-Motion. PLEASE RESUBMIT THE CROSS-MOTION USING THE CORRECT EVENT MOTION in order to have the Motion placed on the Court's calendar. Counsel is only to re-file the Motion and may refer to the supporting documents as being filed on the docket in entry # 15 . This submission will remain on the docket unless otherwise ordered by the court. (tf, ) (Entered: 10/28/2014) |
| 10/28/2014 | 16 | Cross MOTION to hold Tringali IN CONTEMPT re 15 Response in Opposition to Motion, 12 MOTION to Vacate *default* by MEDPRO, INC., MICHAEL |

| | | |
|---|---|---|
| | | MORENO. (Attachments: # 1 Text of Proposed Order)(WOLF, WARREN) (Entered: 10/28/2014) |
| 10/28/2014 | | Set Deadlines as to 16 Cross MOTION to hold Tringali IN CONTEMPT re 15 Response in Opposition to Motion, 12 MOTION to Vacate *default* . Motion set for 12/1/2014 before Chief Judge Jerome B. Simandle. The motion will be decided on the papers. No appearances required unless notified by the court. (tf, ) (Entered: 10/28/2014) |
| 11/06/2014 | 17 | Letter re 16 Cross MOTION to hold Tringali IN CONTEMPT re 15 Response in Opposition to Motion, 12 MOTION to Vacate *default* . (WOLF, WARREN) (Entered: 11/06/2014) |
| 11/10/2014 | 18 | Letter from Robert A. Vort re 17 Letter. (VORT, ROBERT) (Entered: 11/10/2014) |
| 11/11/2014 | 19 | BRIEF *in support of deft motion and in opposition to pltf motion* (Attachments: # 1 Affidavit in opposition to cross-motion)(VORT, ROBERT) (Entered: 11/11/2014) |
| 11/26/2014 | 20 | NOTICE by MEDPRO, INC., MICHAEL MORENO *of Withdraw without Prejudice of Cross Motion for Contempt filed at Document 16* (WOLF, WARREN) (Entered: 11/26/2014) |
| 12/24/2014 | 21 | MOTION for Preliminary Injunction by RORY E. TRINGALI. (Attachments: # 1 Affidavit, # 2 Brief, # 3 Text of Proposed Order)(VORT, ROBERT) (Entered: 12/24/2014) |
| 12/24/2014 | | Set Deadlines as to 21 MOTION for Preliminary Injunction . Motion set for 1/20/2015 before Chief Judge Jerome B. Simandle. The motion will be decided on the papers. No appearances required unless notified by the court. (tf, ) (Entered: 12/24/2014) |
| 01/06/2015 | 22 | MEMORANDUM in Opposition filed by MEDPRO, INC., MICHAEL MORENO re 21 MOTION for Preliminary Injunction (Attachments: # 1 Certification Plaintiffs', # 2 Certification Counsel's)(WOLF, WARREN) (Entered: 01/06/2015) |
| 01/15/2015 | 23 | BRIEF in Support filed by RORY E. TRINGALI re 21 MOTION for Preliminary Injunction (Attachments: # 1 Certification of Rory Tringali, # 2 Certification of Robert Vort)(VORT, ROBERT) (Entered: 01/15/2015) |
| 02/10/2015 | 24 | Letter from Robert A. Vort re 21 MOTION for Preliminary Injunction . (VORT, ROBERT) (Entered: 02/10/2015) |
| 04/23/2015 | 25 | Letter from Robert A. Vort. (Attachments: # 1 Exhibit Superior Court order, # 2 Exhibit Superior Court opinion)(VORT, ROBERT) (Entered: 04/23/2015) |
| 06/30/2015 | 26 | OPINION. Signed by Chief Judge Jerome B. Simandle on 6/30/2015. (tf, ) (Entered: 06/30/2015) |
| 06/30/2015 | 27 | ORDER denying Defendants' 12 Motion to Vacate Default; dismissing as moot Defendant's 21 Motion for Preliminary Injunction. Signed by Chief Judge Jerome B. Simandle on 6/30/2015. (tf, ) (Entered: 06/30/2015) |

| | | |
|---|---|---|
| 07/01/2015 | 28 | TEXT ORDER: A Telephone Status Conference has been set for July 30, 2015 at 2:30 p.m. Counsel for Plaintiff shall initiate the call. Ordered by Magistrate Judge Karen M. Williams on 7/1/2015. (nz) (Entered: 07/01/2015) |
| 07/02/2015 | 29 | AMENDED TEXT ORDER: The Telephone Status Conference previously set for July 30, 2015 at 2:30 p.m. has been adjourned. The new date and time for the telephone status conference is August 7, 2015 at 2:00 p.m. Counsel for Plaintiff shall initiate the call. Ordered by Magistrate Judge Karen M. Williams on 7/2/2015. (nz) (Entered: 07/02/2015) |
| 08/07/2015 | 30 | SCHEDULING ORDER: Telephone Status Conference set for 12/16/2015 10:30 AM before Magistrate Judge Karen M. Williams. Pretrial Factual Discovery due by 1/29/2016. Signed by Magistrate Judge Karen M. Williams on 8/7/2015. (tf, ) (Entered: 08/07/2015) |
| 08/07/2015 | | Minute Entry for proceedings held before Magistrate Judge Karen M. Williams: In-Person Initial Conference held on 8/7/2015. (nz) (Entered: 08/10/2015) |
| 10/28/2015 | 31 | Letter from Robert A. Vort re 30 Scheduling Order. (VORT, ROBERT) (Main Document 31 replaced on 10/28/2015) (drw, ). (Entered: 10/28/2015) |
| 10/30/2015 | 32 | TEXT ORDER The Court has scheduled a telephone status conference for November 9, 2015 at 11:30 a.m. to address the letter dated October 28, 2015 from Robert A. Vort, Esquire, counsel for defendant. Counsel for defendant shall initiate the call. Ordered by Magistrate Judge Karen M. Williams on 10/30/2015. (Ramos, Nicole) (Entered: 10/30/2015) |
| 11/02/2015 | 33 | Letter from Warren Wolf, Esq. re 31 Letter. (WOLF, WARREN) (Entered: 11/02/2015) |
| 11/05/2015 | 34 | Letter from Robert A. Vort. (VORT, ROBERT) (Entered: 11/05/2015) |
| 11/06/2015 | 35 | Letter from Warren Wolf re 34 Letter. (WOLF, WARREN) (Entered: 11/06/2015) |
| 11/10/2015 | 36 | TEXT ORDER Upon letter application dated November 9, 2015 from Warren Wolf, Esquire, counsel for plaintiff, the Court hereby GRANTS the request to adjourn the telephone status conference previously set for November 9, 2015. Ordered by Magistrate Judge Karen M. Williams on 11/10/2015. (Ramos, Nicole) (Entered: 11/10/2015) |
| 11/12/2015 | 37 | Letter from Robert A. Vort. (VORT, ROBERT) (Entered: 11/12/2015) |
| 11/16/2015 | 38 | TEXT ORDER Upon letter application dated November 12, 2015 from Robert A. Vort, Esquire, counsel for defendant, the Court hereby GRANTS the request to reschedule the telephone status conference previously set for November 9, 2015 to address the letters dated October 28, 2015 and November 5, 2015 from Robert A. Vort, Esquire, counsel for defendant [Doc. Nos. 31 and 34], and the letters dated November 2, 2015 and November 6, 2015 from Warren Wolf, Esquire, counsel for plaintiff [Doc. Nos. 33 and 35]. The new date and time of the telephone status conference is November 23, 2015 at 9:30 a.m. Counsel for defendant shall initiate the call. Ordered by Magistrate Judge Karen M. Williams on 11/16/2015. (Ramos, Nicole) (Entered: 11/16/2015) |

| 11/23/2015 | 39 | AMENDED SCHEDULING ORDER: Telephone Status Conference set for 2/16/2016 @ 2:30 PM before Magistrate Judge Karen M. Williams. Pretrial Factual Discovery due by 4/29/2016. Signed by Magistrate Judge Karen M. Williams on 11/23/2015. (drw) (Entered: 11/23/2015) |
|---|---|---|
| 11/23/2015 | | Minute Entry for proceedings held before Magistrate Judge Karen M. Williams: Telephone Discovery Conference held on 11/23/2015. (nz) (Entered: 11/23/2015) |
| 02/10/2016 | 40 | Letter from Warren Wolf, Esq. re 39 Scheduling Order. (WOLF, WARREN) (Entered: 02/10/2016) |
| 02/10/2016 | 41 | Letter from Robert A. Vort. (VORT, ROBERT) (Entered: 02/10/2016) |
| 02/15/2016 | 42 | Letter re 39 Scheduling Order. (WOLF, WARREN) (Entered: 02/15/2016) |
| 02/15/2016 | 43 | Letter from Robert A. Vort re 42 Letter. (VORT, ROBERT) (Entered: 02/15/2016) |
| 02/16/2016 | 44 | TEXT ORDER Upon letter application dated February 15, 2016 from Warren S. Wolf, Esquire, counsel for plaintiff, and it appearing that all counsel consent to the request to reschedule the telephone status conference previously set for February 16, 2016, the Court hereby GRANTS the request. The new date and time of the telephone status conference is February 22, 2016 at 9:30 a.m. Ordered by Magistrate Judge Karen M. Williams on 2/16/2016. (Ramos, Nicole) (Entered: 02/16/2016) |
| 02/22/2016 | 45 | TEXT ORDER The Court has scheduled a telephone status conference for April 25, 2016 at 10:30 a.m. Counsel for plaintiff shall initiate the call. Ordered by Magistrate Judge Karen M. Williams on 2/22/2016. (Ramos, Nicole) (Entered: 02/22/2016) |
| 02/22/2016 | | Minute Entry for proceedings held before Magistrate Judge Karen M. Williams: Telephone Status Conference held on 2/22/2016. (nz) (Entered: 02/23/2016) |
| 04/22/2016 | 46 | TEXT ORDER Due to a scheduling conflict, the Court hereby reschedules the telephone status conference previously set for April 25, 2016. The new date and time of the telephone status conference is April 26, 2016 at 11:00 a.m. Ordered by Magistrate Judge Karen M. Williams on 4/22/2016. (Ramos, Nicole) (Entered: 04/22/2016) |
| 04/25/2016 | 47 | Letter from Robert A. Vort. (VORT, ROBERT) (Entered: 04/25/2016) |
| 04/26/2016 | 48 | AMENDED SCHEDULING ORDER: On or before 6/24/2016, defendant shall submit to his deposition in this case. All other discovery is complete. Dispositive Motions due by 8/15/2016. Signed by Magistrate Judge Karen M. Williams on 4/26/2016. (TH, ) (Entered: 04/26/2016) |
| 04/26/2016 | | Minute Entry for proceedings held before Magistrate Judge Karen M. Williams: Telephone Status Conference held on 4/26/2016. (nz) (Entered: 04/29/2016) |

## PACER Service Center

CM/ECF LIVE - U.S. District Court for the District of New Jersey                Page 7 of 7

| Transaction Receipt | | | |
|---|---|---|---|
| 08/13/2016 11:39:25 | | | |
| PACER Login: | jg0337:2570674:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:14-cv-04002-JBS-KMW Start date: 1/1/1970 End date: 8/15/2016 |
| Billable Pages: | 5 | Cost: | 0.50 |

# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MICHAEL MORENO, et al.,

           Plaintiffs,

   v.

RORY E. TRINGALI,

           Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 14-4002 (JBS/KMW)

**PRELIMINARY INJUNCTION
ORDER**

    This matter having come before the Court on a motion for an order to show cause why a preliminary injunction should not issue by Plaintiffs Michael Moreno and Medpro, Inc. [Docket Item 2]; the Court having considered the unopposed motion submissions of Plaintiffs and having held a hearing on July 23, 2014; for the reasons explained in the Opinion of today's date; and for good cause shown;

    IT IS this __24th__ day of ____July____, 2014, hereby

    ORDERED that Plaintiffs' motion for a preliminary injunction is **GRANTED**; and it is further

    ORDERED that Defendant Rory E. Tringali shall within seven (7) days of entry of this Order remove all references to Plaintiffs on the website http://justin-williams-brooke-horan-williams-laser-fraud-crooks.com and any other websites under

Defendant's control which case Plaintiffs in a negative light; and it is further .

ORDERED that Defendant Tringali cease and desist from disparaging and/or defaming the Plaintiffs and/or casting the Plaintiffs in a negative light, consistent with the "Non Disparagement and Defamation" provision of the settlement agreement discussed in the accompanying Opinion; and it is further

ORDERED that Defendant Tringali cease and desist from contacting any of Plaintiffs' customers whose identity was obtained from the State as discovery in the criminal case described herein; and it is further

ORDERED that Defendant Tringali cease and desist from contacting the Plaintiffs other than through counsel; and it is further

ORDERED that Defendant Tringali stay outside a 500-yard radius of Plaintiff Moreno's home in Marlton, N.J.; and it is further

ORDERED that Defendant Tringali refrain from defaming or disparaging Plaintiffs within the business community; and it is further

ORDERED that Defendant Tringali shall within seven (7) days of entry of this Order delete any posts he created about the Plaintiffs on any websites, blogs, industry chat rooms, review,

2

etc., which cast Plaintiffs in a negative light; and it is further

ORDERED that Defendant Tringali refrain from trying to obtain, distribute or publicize any private and personal information about the Plaintiffs or Michael Moreno's family, including, but not limited to, social security numbers, bank account numbers and tax returns; and it is further

ORDERED that Plaintiffs' counsel shall serve a copy of this Order and of the accompanying Findings upon Defense Counsel by mail and upon Defendant Rory E. Tringali by certified mail and ordinary mail at his last known address.


s/ Jerome B. Simandle
JEROME B. SIMANDLE
Chief U.S. District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MICHAEL MORENO, et al.,

              Plaintiffs,

    v.

RORY E. TRINGALI,

              Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 14-4002 (JBS/KMW)

**FINDINGS OF FACT
AND
CONCLUSIONS OF LAW**

APPEARANCES:

Warren S. Wolf, Esq.
GOLDBERG & WOLF, LLC
1949 Berlin Road, Suite 201
Cherry Hill, NJ 08003
    Attorney for Plaintiffs Michael Moreno and Medpro, Inc.

Lawrence A. Leven, Esq. (Did Not Attend)
175 Fairfield Avenue, Unit 1C
West Caldwell, NJ 07006
    Attorney for Defendant Rory E. Tringali

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

    Plaintiffs Michael Moreno and Medpro, Inc.,[1] filed this

unopposed motion for an Order to Show Cause why a preliminary

---

[1] Moreno is the sole owner of Medpro, Inc.

injunction should not issue against Defendant Rory E. Tringali.[2]
[Docket Item 2.] In brief, Plaintiffs, who buy and sell pre-
owned cosmetic lasers, accuse Tringali, a business competitor,
of violating a non-disparagement and non-defamation provision of
a settlement agreement arising out of prior litigation between
the parties, and otherwise disparaging, defaming and harassing
Plaintiffs.

Plaintiffs allege that in April 2014, Tringali created a
website "for the sole purpose of harassing, intimidating and
destroying the professional reputations of the Plaintiffs."
(Compl. ¶ 49.) The website allegedly falsely implies that
Plaintiffs are partners with, or involved in frauds and scams
with, Justin Williams, Moreno's former partner. (Id. ¶ 8.)
Plaintiffs also allege that Tringali recently contacted at least
four of Plaintiffs' customers to "dissuade such customers from
doing business with the Plaintiffs by claiming the Plaintiffs
rip off their customers, commit frauds, and that there are many
other victims of the Plaintiffs' alleged frauds out there." (Id.
¶¶ 8, 55.) Plaintiffs allege that Tringali "constantly emails
and sends texts to Moreno to harass and intimidate him" and has

---

[2] This Court has jurisdiction under 28 U.S.C. § 1332(a). This
case was removed from Superior Court of New Jersey, Burlington
County, Chancery Division, by Defendant Tringali on the basis of
diversity jurisdiction. Moreno and Medpro, Inc., are citizens of
New Jersey, and Tringali is a citizen of New York. The matter in
controversy exceeds $75,000. (Notice of Removal [Docket Item 1]
¶¶ 4-7.)

indirectly advised Plaintiffs (through third parties) that he "would sit outside Moreno's home, watch and take pictures of Moreno and his family." (Id. ¶¶ 62-63.)

For the reasons explained below, the Court will issue a preliminary injunction. The following constitute the findings of fact and conclusions of law supporting this preliminary injunction pursuant to Rules 52 & 65, Fed. R. Civ. P.

## II. Background

### A.   Facts

On September 20, 2012, Plaintiff Michael Moreno and Defendant Rory E. Tringali, among others, executed a "Confidential Settlement Agreement and General Release," related to Medpro, Inc. v. Syneron, Inc., Civ. No. 08-3426 (JBS/KMW) (D.N.J. filed July 9, 2008). The underlying litigation involved allegations (by Moreno and Medpro, against Tringali and others) of computer fraud and abuse, Lanham Act violations, unfair competition, conversion, tortious interference with business relationships, and intentional infliction of emotional distress, among other causes of action. (See Docket Item 1, Medpro, Inc. v. Syneron, Inc., Civ. No. 08-3426 (D.N.J. filed July 9, 2008).)[3]

---

[3] A criminal indictment against Tringali for conspiracy (N.J.S.A. 2C:5-2A), computer-related theft (N.J.S.A. 2C:20-25B), and assuming a false identity (N.J.S.A. 2C:21-17A(1)), was dismissed because the State of New Jersey did not timely produce discovery to Defendant. (Compl. ¶¶ 39-43.) The State's appeal was still

The settlement agreement (attached to the Verified Complaint
here as Exhibit A, and resubmitted as part of Exhibit 1 to the
Certification of Warren S. Wolf, Esq., counsel for Plaintiffs),
included a "Non Disparagement and Defamation" provision. It
provides:

> Plaintiffs, Tringali and Syneron agree not to make any
> disparaging remarks about any Party to the civil
> litigation or cast any such party in a negative light,
> except to the Prosecutor or Judge in the pending
> criminal litigation. The parties agree that each
> violation of this section will result in the greater
> of $5000 damages per se or any actual damages a party
> can prove. This amount is not intended as a penalty,
> but is agreed upon in the event actual damages are too
> difficult to prove.
>
> Plaintiffs and Defendants agree not to make any
> defamatory remarks about any Party to the civil
> litigation. The parties agree that each violation of
> this section will result in the greater of $5000
> damages per se or any actual damages a party can
> prove. This amount is not intended as a penalty, but
> is agreed upon in the event actual damages are too
> difficult to prove.

(Compl. Ex. A at 7-8 [Docket Item 2-1 at 33-34].)

Notwithstanding Tringali's non-disparagement and non-
defamation promise above, on April 4, 2014, Tringali sent an e-
mail to Moreno and Justin Williams. The e-mail from Tringali
("Subject: Gloves are off"), reads: "I had ENOUGH with you, this
is just the BEGINNING!" (Compl. Ex. B [Docket Item 2-1 at 41].)

---

pending when this matter was originally filed in state court.
(Id. ¶ 44.)

4

The e-mail contains a hyperlink to "Justin-Williams-Brooke-Horan-Williams-Laser-Fraud-Crooks.com." (Id.)

That website[4] begins with the text: "Justin Williams: PRO Scammer," followed by "Justin Williams and Brooke Eden Horan Laser Fraud Crooks." (Compl. Ex. C at 1.) It continues: "The biggest fraud crooks couple in the Cosmetic Laser Industry. Educate yourself before dealing with these individuals!" (Id. at 2.) The website has several references to Moreno and Medpro ("Mike Moreno Medpro Lasers, New Jersey Business Partner Justin Williams"), and displays excerpts of e-mails from 2012 and 2013 composed by or addressed to Moreno or his customers. (Id. at 2-4.) Representative e-mails, punctuated with phrases like "I HAVE BEEN SCAMMED!!!", read in part:

> Mike/John,
>
> you are quite a team!!, over two years ago I wired money to you and till date you don't feel anything that I have had to wait and wait and wait, while listening to your numerous stories and excuses that make me ashamed for you.

(Id. at 3.)

> Jon/Mike
>
> as per my last email, I would like to terminate my contract with Med Pro. I DO NOT want to receive the laser from you. . . . [M]y lawyer . . . will be in contact with Mike within next couple of days to start legal proceedings.

---

[4] A printout from April 28, 2014, is in the record at Exhibit C to the Complaint, which is attached to the present motion at Exhibit 1.

(Id.)

> Mike and john,
>
> At this point I know I am not expecting anything from you guys. if this is how you do business I wonder why nobody has decided to do the right [sic] and help people in the aesthetics business to put you out of business.

(Id. at 7.)

Other e-mails describe connections between Williams and Moreno and Medpro, including the assertion that Williams used to be the manager of Medpro in Utah. (Id. at 4-5.) Much of the rest of the website focuses on Williams and Horan personally, including videos of Williams's house; photos of Williams, his house, cars, and other vehicles; a copy of his passport and driver's license; and photos of allegedly "fake" materials, presumably sold or otherwise handled by Williams. (Id. at 8-33.) The website promises "More pictures and documents coming soon!" (Id. at 33.) The website concludes with a message about Williams and Horan:

> You can help stop these crooks! Speak your word!
>
> Have you been a victim of these crooks Justin Williams and Brooke Eden Horan. Contact us with your story. Send us documents, picture or any compromising material you may have. We will post them on all our 148 justin Williams and brooke eden horan's affiliate websites.

(Id. at 38.)

The record also contains copies of e-mails from Tringali to one of Moreno's customers, including one from April 5, 2014:

6

> Leanne,
> Call me urgently. [Phone number omitted.]
> I have the way to help right now please.
> Do not answer or response to any email from justin,
> mike Moreno or Brooke or their lawyers, if they
> settled with you just tell me that. If they made you
> sign a settlement agreement making you sign a non
> disparagement agreement I cannot help you.
> I jus [sic] helped two victims and hopefully
> Help my self as well.
> Trust me,
> Rory Tringali

(Compl. Ex. D at 1-2.) The customer forwarded the e-mails to

Moreno, saying "I have 12 more of these things if you want them

all. I don't know what is going on but you completed your

transaction with me so we are good . . . ." (Id. at 8.) One of

the e-mails sent by Tringali to a third party appears to have

information about (or a link to a webpage with information

about) Moreno's residence, including the purchase price and

property taxes. (Id. at 8-9.)

Another e-mail from Tringali to Moreno ("Subject: tax

returns great for iIRS" [sic]) says: "Hope you reported well you

and p[****] in Austin". (Compl. Ex. E at 1.) Attached is an

image of the first page of several federal income tax returns

for Medpro from 2005, 2006 and 2007. (Id. at 2.)

Finally, the record includes an e-mail from Tringali on

April 3, 2014, publicizing information about Brooke Horan

Williams, and Justin Williams's parents, including phone

7

numbers, e-mails and addresses, and social security numbers.
(Pl. Ex. 5 [Docket Item 2-3 at 31-35].)

   B.   Procedural history

   On May 12, 2014, Plaintiff commenced this action in
Superior Court of New Jersey, Burlington County, by filing the
Verified Complaint and Defendant timely removed the action to
this Court. [Docket Item 1.] The Verified Complaint contains the
following causes of action: (1) defamation, (2) defamation per
se, (3) tortious interference with prospective business
relations, (4) intentional infliction of emotional distress, (5)
civil assault, (6) breach of contract, (7) intrusion of
privacy/seclusion, (8) intrusion of privacy/false light, (9)
common law unfair competition, and (10) injunctive relief.
(Compl. ¶¶ 71-134.)

   Plaintiffs filed the present motion for an order to show
cause. [Docket Item 2.] Plaintiffs seek, among other things, a
preliminary injunction directing Defendant to remove disparaging
and defamatory statements from websites and other online forums;
to cease and desist making disparaging or defamatory comments
about Plaintiffs; to cease and desist contacting Plaintiffs or
their customers; to stay away from Moreno's home; and to refrain
from trying to obtain, distribute or publicize any personal
information about the Plaintiffs or Moreno's family, including,

but not limited to, social security numbers, bank account numbers, and tax returns. [Docket Item 2-3 at 36-37.]

The Court entered the Order to Show Cause on June 26, 2014, which was duly served on Defendant's counsel [Docket Item 5], and Defendant's response was due July 11, 2014, for a hearing on July 23, 2014, at 11:00 A.M. Defendant did not file opposition, and did not appear at the hearing,[5] at which the Court received testimony from Plaintiff Moreno that the disparaging comments and statements about him on Defendant's website and in e-mail correspondence have no basis in fact and are false. The Court considered the Verified Complaint, the testimony of Moreno, the Certification of Warren S. Wolf, Esq., and the Exhibits attached thereto.

### III. Preliminary injunction standard

In the Third Circuit, to obtain a preliminary injunction, "a plaintiff must show: '(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.'" Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 249-50 (3d Cir. 2011)

---

[5] Defendant seems to have ignored his responsibilities in this case. After removing the case, Defendant has never filed an answer, nor has defense counsel sought leave to withdraw.

9

(quoting Kos Pharm. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir.

2004)).

IV. **Discussion**

A. **Likelihood of success on the merits**

Plaintiffs have demonstrated a likelihood of success on the

merits for breach of contract, among other claims. "To establish

a breach of contract claim, a plaintiff has the burden to show

[(1)] that the parties entered into a valid contract, [(2)] that

the defendant failed to perform his obligations under the

contract and [(3)] that the plaintiff sustained damages as a

result." Murphy v. Implicito, 392 N.J. Super. 245, 265 (App.

Div. 2007); Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J.

372, 411 (2009) (citing Murphy with approval).

The Court finds that Plaintiffs have presented a valid

contract -- the settlement agreement -- with a non-disparagement

and non-defamation provision. (Compl. Ex. A 7-8.) Plaintiffs

also present evidence that Defendant has disparaged Moreno and

Medpro on his website and in e-mails to third parties by

implying Plaintiffs' involvement in fraudulent conduct or scams

with Justin Williams. (Compl. Ex. B.) These statements are

strong evidence that Defendant failed to perform his obligations

under the non-disparagement provision of the settlement

agreement. Finally, Moreno testified that Defendant contacted

several of his customers and attempted to persuade them not to

do business with Moreno. Although Moreno does not have specific evidence of lost business as a result of Tringali's efforts, he asserts that his business has slowed in the past few months. He also argues that it is impossible to quantify the impact of the false website and e-mail statements by Tringali on his reputation. (Pl. Mot. at 8.) The Court finds that the statements about Plaintiffs' business dealings are of a kind that tends to cause reputational harm that is difficult to quantify. Defendant's e-mail exchange with a Medpro customer further demonstrates a likelihood that Plaintiffs would establish damages from the breach of contract. Tringali's references to "help[ing] two victims" of Moreno and/or Williams suggests that Tringali had contact with other Medpro customers and succeeded in convincing them not to do business with Plaintiffs. (Compl. Ex. D at 1.) Plaintiffs' customer admitted that completing the transaction with Plaintiffs "was extremely stressful" with "this person['] added commentary." (Id. at 8.)

The Court holds that Plaintiffs have demonstrated a likelihood of success on the merits for a breach of contract claim with this unopposed evidence. Plaintiffs are likely to prove that Tringali's comments about Plaintiffs were also defamatory and false, and that they are likely to continue unless enjoined.

11

Plaintiffs also have demonstrated a likelihood of success on the merits for intrusion on seclusion. To prove a claim for intrusion on seclusion, the plaintiff must show that the defendant "intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 588 (2009).

The Court finds that Defendant has engaged in a pattern of publicizing personal information, including social security numbers of relatives of Moreno's former business partner. At the hearing before the Court, Moreno represented that Defendant has released bank account information about his business. Such distribution of this private data likely would be highly offensive to a reasonable person. Defendant's website also evinces an intention to release more documents as they are obtained, and Defendant has communicated to third parties his intention to travel to Moreno's home. Where Defendant has caused, and has threatened to continue to cause, personal distress and apprehension due to invasion of private interests and places, Moreno is not required to wait until further incursions happen before enjoining them. Plaintiffs have shown enough to establish a likelihood of success on the merits for

intrusion on seclusion, and Defendant has not contested or opposed any of Plaintiffs' allegations, assertions or evidence.

**B.    Irreparable harm**

Next, Plaintiffs must make a "clear showing of immediate irreparable injury." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1986). For a breach of contract claim, to determine whether a remedy in damages would be adequate, a court may consider the Restatement (Second) of Contracts: "'(a) the difficulty of proving damages with reasonable certainty; (b) the difficulty of procuring a suitable substitute performance by means of money awarded as damages; and (c) the likelihood that an award of damages could not be collected.'" Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 802 (3d Cir. 1989). The Third Circuit has found that the loss of reputation or goodwill, or the loss of market share, or the destruction of a business may constitute irreparable harm. See Robert E. Bartkus & Elizabeth J. Sher, N.J. Federal Civil Procedure § 5-2 at 175-76 (2014) (collecting cases). The Third Circuit has recognized that the "potential for damage to . . . reputation" may constitute irreparable harm in some circumstances. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 196 (3d Cir. 1990) ("Potential damage to reputation constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.").

Plaintiffs claim that they "have suffered, and will continue to suffer, irreparable harm" because "Plaintiffs' customer base includes the recipients of Defendant's defamatory emails" and Defendant's website will reach "Plaintiffs' customers and potential customers." (Pl. Mot. at 7-8.)

Plaintiffs have made a showing of irreparable harm. Defendant has contacted Plaintiffs' customers and has posted on the Internet disparaging comments about Moreno and his business practices. Two of the three factors in <u>Instant Air Freight</u> favor finding that money damages are inadequate: the difficulty of proving damages with reasonable certainty and the difficulty of procuring suitable substitute performance by means of money awarded in damages. The third factor --- the likelihood that an award of damages could not be collected -- cannot be determined on the record.

The type of allegations that Defendant has lodged against Moreno and Medpro, and Defendant's meddling contact with Plaintiffs' customers, are of a kind capable of causing immediate and irreparable harm. Moreno represented to the Court that he cannot quantify his business losses, but testified that his business is down and Defendant contacted at least one of his international customers, who later communicated to Moreno that she did not want to upset Defendant and have him "coming after her." This testimony supports the conclusion that Defendant's

14

campaign of harassment and disparagement is having an effect on the relationships between Plaintiffs and their customers. The record contains evidence that Defendant has contacted several other customers, and Defendant himself represented that he "helped" two "victims" of fraud, implying that Defendant dissuaded them doing further business with Plaintiffs. This harm is irreparable. The harm caused by publication of private and personal information, such as bank accounts and social security numbers is likewise irreparable.

**C.    Harm to other interested parties**

Defendant would not be harmed if enjoined from disparaging Plaintiffs on his website or other online forums, or from refraining from publishing personal information about Plaintiffs, or visiting Moreno's home. This factor weighs in favor of a preliminary injunction.

**D.    Public interest**

There is a public interest in the dissemination of truthful information about businesses, but the public is harmed by the spreading of false and defamatory statements about businesses, which could mislead consumers. There is a public interest in keeping the marketplace free from false accusations of fraud or other crimes against business rivals. This factor weighs in favor of a preliminary injunction.

15

E.   Summary

Plaintiffs have established a likelihood of success on the merits and made a clear showing of irreparable harm. The entry of a preliminary injunction would not harm Defendant and would advance the public interest keeping the marketplace free of false and defamatory statements about business competitors. Defendant offers no opposition in his own defense to any of Plaintiffs' allegations, assertions or evidence, and did not appear in his own defense before this Court. Because this motion was unopposed, and because there is no prospect of monetary harm to Defendant if this preliminary injunction proves to have been improvidently granted, the Court will waive the requirement of Fed. R. Civ. P. 65(c) for Plaintiffs to post an injunctive bond.

V.   CONCLUSION

For the reasons explained above, the Court will enter a preliminary injunction against Defendant Tringali. An accompanying Preliminary Injunction Order will be entered. In addition to the electronic posting of these documents on the Court's docket, the Order also provides that Plaintiffs' counsel shall mail a copy of these Findings of Fact and Conclusions of

Law and of the Order for Preliminary Injunction to both defense counsel and to Defendant to assure full and prompt notice.[6]

July 24, 2014
Date

s/ Jerome B. Simandle
JEROME B. SIMANDLE
Chief U.S. District Judge

---

[6] Ordinarily, service upon counsel of record suffices and there is no contact between an attorney and an opposing party who is represented by counsel, as in this case. Due to the seeming inaction of Mr. Leven in answering the Verified Complaint and appearing upon this motion, in an abundance of caution the Court authorizes direct service by mail upon Mr. Tringali at his last known address.

17

# Exhibit 7

2013 WL 6199253
Only the Westlaw citation is currently available.
United States District Court,
D. New Jersey.

FEDERAL INSURANCE COMPANY, Plaintiff,

v.

Dina VON WINDHERBURG–
CORDEIRO, Defendant.

Civil Action No. 12–2491 (JAP).

|

Nov. 27, 2013.

**Attorneys and Law Firms**

Robert Joseph Fettweis, Tressler LLP, Newark, NJ, for Plaintiff.

Dina Von Windherburg–Cordeiro, Porto Vasco, Portugal, pro se.

**OPINION**

PISANO, District Judge.

*1 This matter comes before the Court on the following two motions by Plaintiff Federal Insurance Company ("Federal"): (1) to confirm arbitration awards dated August 2, 2012 and April 3, 2012; and (2) to strike Defendant Dina von Windherberg–Cordeiro's ("Defendant") answer and dismiss Defendant's counterclaim. For the reasons below, Plaintiff's motions are granted.

**I. BACKGROUND**

This is an action alleging, inter alia, violations of New Jersey's Insurance Fraud Prevention Act, N.J.S.A. § 17:33A–1 et seq. According to the complaint, as of November 7, 2002, Defendant was an insured under a $1.5 million Voluntary Accident Insurance Policy (the "Policy"). The Policy provided, among other things, coverage for "Permanent Total Disability." In 2005, Defendant gave notice to Federal of a claim for Permanent Total Disability benefits as a result of injuries allegedly suffered from a fall down an escalator at the Munich Airport in Munich, Germany. Federal, however, denied Defendant's claim.

On March 3, 2011, in accordance with the arbitration provision in the Policy, Defendant filed a demand for arbitration with the American Arbitration Association disputing the denial of her claim and asserting claims for breach of contract, equitable reformation, insurance bad faith and violations of the New Jersey Consumer Fraud Act. Federal filed a counterclaim in the arbitration that included a count for common law fraud founded upon representations made by Defendant during the claim investigation and the arbitration. A final award was issued in that arbitration on August 2, 2012 ("August 2 Award") on all claims and the counterclaim, and a final award on attorney's fees was entered on April 3, 2013 ("April 3 Award"). Malamis Decl. Exs. 3 and 5.

The August 2 Award was a full and final award in favor of Federal on all of Defendant/Claimant's claims and a partial award as to liability on Federal's counterclaim for fraud. In the written decision, the arbitration panel chair concluded that Defendant's claimed disabilities and limitations were "largely or entirely feigned." D.I. 41–5 at 2. The decision stated that Defendant had "engaged in deliberate deception and [had] feigned her injuries and symptoms for the purpose of financial gain." Id. at 5. The April 3 Award grants fees and costs to Federal in the amount of $513,303.72. No motions to vacate, modify or correct either of these awards have been filed.

**II. ANALYSIS**

*A. Motion to Confirm Arbitration Awards*

The Federal Arbitration Act (the "FAA") creates a strong presumption in favor of enforcing arbitration awards. *New Jersey Carpenters Funds v. Professional Furniture Services*, 2009 WL 483849 at *2 (D.N.J. February 25, 2009) (citing *Brentwood Medical Associates v. United Mine Workers of America*, 396 F.3d 237, 241 (3d Cir.2005)). In general, review of an arbitration award under the FAA by the district court is "extremely deferential." *Metromedia Energy, Inc. v. Enserch Energy Servs.*, 409 F.3d 574, 578 (3d Cir.2005). Consequently, a court may vacate an arbitration award under the FAA "only in exceedingly narrow circumstances." Id. Pursuant to the FAA, a district court may vacate an arbitration award only: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to

Federal Ins. Co. v. von Windherburg-Cordeiro, Not Reported in F.Supp.2d (2013)

postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1)-(4). The Court finds no evidence of any of these conditions.

*2 Defendant has opposed Plaintiff's motion to confirm, but her opposition fails to raise any viable arguments in support of her position. Rather, her papers primarily complain of misconduct by her attorneys and allegations, without evidence, of arbitrator partiality. More importantly, Defendant has failed to move to vacate the arbitration award, and if a party fails to move to vacate an arbitration award, that party forfeits the right to oppose confirmation of the award if sought by another party. *See Prasad v. Investors Associates, Inc.,* 82 F.Supp.2d 365, 367–68 (D.N.J.2000) (the FAA "does not permit the assertion of challenges to an arbitration award in opposition to a motion to confirm the award after the three-month limitations period has expired.") (citing *Lander Co. v. MMP Investments, Inc.,* 107 F.3d 476, 478 (7th Cir.1997) ("Under the Act, if you fail to move to vacate an arbitration award you forfeit the right to oppose confirmation (enforcement) of the award if sought later by the other party."). Under the FAA, Defendant had ninety days after each arbitration award was filed or delivered to serve a notice of motion to vacate such award. 9 U.S.C. § 12 ("notice of motion to vacate, modify, or correct an award must be served upon an adverse party or his attorney within three months after the award is filed or delivered"). She failed to do so within the requisite time, and, consequently, she cannot be heard now in opposition to confirmation of those awards.

*B. Motion to Dismiss Counterclaim and Strike Answer*
Plaintiff seeks dismissal of Defendant's counterclaims and further asks the Court to strike Defendant's answer for failing to comply with the Federal Rules of Civil Procedure. Alternatively, Plaintiff seeks an Order that all of the allegations in the amended complaint are deemed admitted. The motion is unopposed.

On March 22, 2013, Defendant filed a document purporting to be her answer to the amended complaint. *See* D.I. 37. The document also contained a counterclaim.

The "answer" is a lengthy submission that begins with a three-paragraph introduction (unnumbered), followed by sixty-three numbered paragraphs (that do not correspond with the amended complaint), followed by a twenty page single-spaced narrative. Nothing contained in the "answer" appears to respond directly or indirectly to the amended complaint.

The "counterclaim," which is expressly designated as such, is two pages long and contains fourteen numbered paragraphs. In it, Defendant alleges that the Policy's advertising and presentation differs from the coverage actually provided by the Policy, and that she received information by letter that led her to believe she would receive certain policy benefits. Defendant also describes certain of her medical conditions and alleges that her medical condition constitutes a "Permanent Total Disability" under the policy. Defendant alleges that the "presentation materials" she received should have informed her of the terms of the policy. Finally, the counterclaim alleges that New Jersey insurance regulators would not have approved of the terms of the policy and that New Jersey prohibits the promotion and sale of insurance policies "containing confusing terms to the public." It appears, although it is not specified, that Defendant is attempting to assert claims for breach of contract and violation of the New Jersey Consumer Fraud Act.

*3 Plaintiff argues that Defendant's counterclaims must be dismissed because they fall squarely within the Policy's arbitration clause. Pursuant to the Policy, the parties agreed that in the event of "a dispute under the policy," either party could make an arbitration demand. Specifically, the Policy provides as follows:

> In the event of a dispute under the policy, either we, the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary may make a written demand for arbitration. In that case, we and the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary, will each select an arbitrator. The two arbitrators will select a third. If they cannot agree within fifteen (15) days, either we or the Insured Person, or in the event of Loss of Life,

Federal Ins. Co. v. von Windherburg-Cordeiro, Not Reported in F.Supp.2d (2013)

the Insured Person's beneficiary, may request that the choice of the arbitrator be submitted to the American Arbitration Association. The arbitration will be held in the state of the Insured Person's principal residence.

As this Court has noted in an earlier Opinion, the arbitration clause is broad. *See Federal Ins. Co. v. von Windherburg-Cordeiro*, No. 12–2491, 2012 WL 6761877 (December 31, 2012). The issues raised in Defendant's counterclaim fall within the scope of the arbitration agreement. Where, as here, claims are subject to an arbitration agreement, they cannot proceed in district court and, therefore, Defendant's counterclaim shall be dismissed in its entirety.

The second part of Plaintiff's motion requests that the Court strike Defendant's answer for failure to comply with the requirements of Rule 8(b)(A) ("state in short and plain terms its defenses to each claim asserted against it"), Rule 8(d) (allegations should be "simple, concise and direct") and Rule 10(b) ("state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances"). Plaintiff also argues that the answer should be stricken under Rule 12(f) as "redundant, immaterial, impertinent and scandalous." Finally, Plaintiff contends the Court should strike the Answer because, although Defendant signed the letter attached to her pleading, she did not sign the actual pleading. See Rule 11 (every pleading must be signed).

The Court, granting Defendant a significant amount of leeway in light of her *pro se* status, is not inclined to strike Defendant's answer. However, the Court notes that in an answer, a "denial must fairly respond to the substance of the allegation." Fed.R.Civ.P. 8(b)(2). Rule 8 is clear that, "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed.R.Civ.P. 8(b)(6). Consequently, if an answer fails to deny any of the allegations in the complaint, those allegations must be accepted as true. *See United States for Use of Automatic Sprinkler Corp. of America v. Merritt–Chapman & Scott Corp.*, 305 F.2d 121, 123 (3d Cir.1962) (allegations of complaint not denied by answer were deemed to have been admitted.). Here, to the extent that Defendant's answer fails to deny allegations in the Amended Complaint, those allegations shall be deemed admitted.

III. CONCLUSION

**\*4** For the reasons above, Plaintiff's motion to confirm the arbitration awards is granted. Plaintiff's motion to dismiss Defendant's counterclaim is also granted. Plaintiff's motion to strike Defendant's answer is denied, but the alternative relief sought is granted and, to the extent that Defendant's answer fails to deny allegations in the Amended Complaint, those allegations are deemed admitted.

All Citations

Not Reported in F.Supp.2d, 2013 WL 6199253

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 8

Colony Ins. Co. v. Kwasnik, Kanowitz & Associates, P.C., Not Reported in F.Supp.3d...

2014 WL 2920810
Only the Westlaw citation is currently available.
United States District Court,
D. New Jersey.

COLONY INSURANCE COMPANY, Plaintiff,

v.

KWASNIK, KANOWITZ &
ASSOCIATES, P.C. et. al, Defendants.

Civil No. 1:12–cv–00722 (NLH/AMD).
|
Filed June 27, 2014.

Attorneys and Law Firms

Robert F. Walsh, White and Williams LLP, Philadelphia, PA, Michael E. Di Febbo White and Williams LLP, Philadelphia, PA, for plaintiff Colony Insurance Company.

Michael W. Kwasnik, Aventura, FL, pro se.

OPINION

HILLMAN, District Judge.

*1 Before the Court is Plaintiff's Combined Motion for Summary Judgment and for Default Judgment. For the reasons set forth below, the Motion will be granted in part and denied in part.

*Jurisdiction*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

*Background*

Plaintiff Colony Insurance Company ("Colony") initiated this action to rescind an insurance policy and recover damages as a result of false statements made on an application for professional liability insurance. In February 2010, Defendant Michael Kwasnik

("Kwasnik") signed and submitted an application for professional liability insurance on behalf of his law firm, Kwasnik, Kanowitz, and Associates ("KKA"). (Decl. of Robert F. Walsh in Supp. Of Pl.'s Mot. For Summ. J. / Mot. To Enter Default J. [Doc. No. 80–3 to 12] (hereinafter Walsh Decl.) Ex. C, at 5.) The application contained three questions relating to past and possible future claims against the applicants for malpractice or ethical violations. (*Id.*) In particular, question thirteen of the application asked:

13 (a): "[I]n the last seven (7) years, has any professional liability claim or suit ever been made against the Firm or any predecessor firm or any current or former member of the Firm or predecessor firm?"

13(b): "[D]o you know of any circumstances, acts, errors or omissions that could result in a Professional Liability claim?"

13 (c): "[H]as an attorney for who [*sic*] coverage is sought ever been refused admission to practice ... by any court, administrative agency or regulatory body or been [the] subject of a disciplinary complaint made to any of the aforementioned entities?"

(*Id.*) Kwasnik answered "no" to all three questions. (*Id.*) After reviewing the application and other supplemental materials, Colony issued KKA a lawyer's professional liability insurance policy ("Policy") that covered the firm and its comprising attorneys: Kwasnik, Howard Kanowitz ("Kanowitz"), and Robert Keltos ("Keltos"). (Walsh Decl. Ex. B.)

Colony commenced this action alleging Kwasnik and KKA committed fraud by giving false answers to questions 13(a) through (c).[1] (Pl.'s Compl. [ Doc. No. 1].) For relief, Colony seeks to rescind the Policy and recover damages under the New Jersey Insurance Fraud Prevention Act ("IFPA"), N.J.S.A. §§ 17:33a–1 to–34. (*Id.* at wherefore clause.) Kwasnik filed an answer on behalf of himself and KKA.[2] (Def.'s Answer [Doc. No. 9].) However, the Court struck Kwasnik's answer and entered a default against him for violating an order compelling his deposition. (Order [Doc. No. 77] Sept. 12, 2013 .) Colony now moves for a default judgment against Kwasnik and for summary judgment against KKA. (Pl.'s Mot. For Summ. J. / Default J. [Doc. No. 80].) Neither Kwasnik nor KKA responded to the motion.

## .Discussion

### I. Choice of Law
*2 In diversity cases, federal courts apply the forum state's choice of law rules to determine which state's substantive laws are controlling. *Maniscalo v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir.2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, Inc., 313 U.S. 487 (1941)). However, defendants must raise choice of law issues or they are waived. *Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 180 (3d Cir.1995) (*en banc*). At no point in the present case did any party question the applicability of New Jersey law, which is the basis of Colony's claims. Therefore, the Court will apply New Jersey substantive law.[3]

### II. Motion for Summary Judgment
Colony has asked for summary judgment against KKA on both its claim for rescission and its claim for damages under the IFPA.

### A. Standard for Summary Judgment
Summary judgment is appropriate where the Court is satisfied that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); Fed.R.Civ.P. 56(a). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* Judgment is appropriate as a matter of law if there can only be one reasonable verdict under the governing law. *Id.* at 250.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* at 324. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party cannot rely upon mere allegations, general denials, or vague statements to establish a genuine

issue of material fact. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir.2001).

When deciding a motion for summary judgment, courts look to the pleadings, depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, and interrogatory answers. *Celotex*, 477 U.S. at 330; Fed.R.Civ.P. 56(a). However, "a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' " *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir.2004) (citing *Anderson*, 477 U.S. at 255).

Additionally, Local Civil Rule 56.1 requires movants for summary judgment to submit a statement of material facts for which there is no genuine issue. L. Civ. R. 56.1(a). The respondent must then submit a responsive statement, along with its opposition papers, identifying the material facts in dispute. *Id.* Any material fact not disputed by respondent in this manner must be deemed admitted for purposes of deciding the motion. *Id.* However, only facts that are properly supported by the record will be deemed admitted. *Id.*; see also *Yocham v. Novartis Pharmals. Corp*, 736 F.Supp.2d 875, 879 (D.N.J.2010). Because KKA did not responded to Colony's motion, all of the properly supported facts in Colony's statement of uncontested material facts will be treated as admitted.

### A. Rescission for Equitable Fraud
*3 Equitable fraud is a basis for rescinding a contract. *First Am. Title Ins. Co. v. Lawson*, 827 A.2d 230, 237 (N.J.2003) (citing *Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521 (N.J.1981)). A rescinded contract is void *ab initio*, which means "it is considered 'null from the beginning' and treated as if it does not exist for any purpose." *Id.* at 237 (quoting Black's Law Dictionary 1568 (7th ed.1999)).

Equitable fraud generally has three elements: (1) material misrepresentation of fact, (2) intent that the other party rely on it, and (3) detrimental reliance by the other party. *Id.* at 237 (quoting *Liebling v. Garden State Indem.*, 767 A.2d 515 (N.J.Super.Ct.App.Div.2001)). Unlike legal fraud, a person need not know his statement is false to be guilty of equitable fraud. *Whale*, 432 A.2d at 524 (citing *Equitable Life Assurance Soc'y v. New Horizons, Inc.*, 28 N.J. 307, 314 (1958)).

Colony Ins. Co. v. Kwasnik, Kanowitz & Associates, P.C., Not Reported in F.Supp.3d...

In the context of insurance contracts, the equivalent of equitable fraud exists when the insured: (1) makes a false statement that is (2) "material to the particular risk assumed by the insurer," and (3) the insurer actually and reasonably relies on the statement in issuing the policy. *Lawson*, 827 A.2d at 237 (quoting *Allstate Ins. Co. v. Meloni*, 236 A.2d 402 (N.J.Super.Ct . App.Div.1967)). Knowledge of the statement's falsity is not a prerequisite for rescission of an insurance policy unless the applicant made the statement in response to a subjective question–*e.g.* a question asking what the applicant believes or is aware of. *Lawson*, 827 A.2d at 237 (citing *Ledley v. William Penn Life Ins. Co.*, 651 A.2d 92 (N.J.1995)).

A false statement on an insurance application is material if, at the time it was made, " 'a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action.' " *Palisades Safety & Ins. Ass'n v. Bastien*, 814 A.2d 619, 622 (N.J.2003) (quoting *Longobardi v. Chubbs Ins. Co.*, 582 A.2d 1257 (N.J.1990)). Furthermore, insurers are generally entitled to reasonably rely on representations made in insurance applications. *Cf. John Hancock Mut. Life Ins. Co. v. Cronin*, 139 N.J. Eq. 392, 398 (N.J.1947) (insurer's right to rely on representations was not diminished by fact that insurer did independent investigation).

The uncontested facts show that Kwasnik provided false answers to all three parts of question 13 on KKA's application. First, Kwasnik answered "no" to question 13(a) which asked: "[I]n the last seven (7) years, has any professional liability claim or suit ever been made against the Firm or any predecessor firm or any current or former member of the Firm or predecessor firm?" (Walsh Decl. Ex. C, at 5.) In fact, at least four professional liability claims were filed against KKA, its attorneys, or its predecessor firm during the relevant time period.

In 2010, Kwasnik and the predecessor to KKA —Kwasnik, Rodio, Kantowitz, & Buckley, P.C. ("Predecessor Firm")—were sued by a client for breach of fiduciary duty, conversion, negligence, and waste. (Walsh Decl. Ex. F, ¶¶ 129–141.) The client alleged, among other things, that Kwasnik formed a trust for the client, named his firm as trustee, and then misappropriated and used the trust assets for his personal gain.[4] (*Id.* ¶¶ 7–128.)

*4 Another client filed a second lawsuit in 2010 against Kwasnik, Kanowitz, and the Predecessor Firm. (Walsh Decl. Ex. I.) That case had essentially the same facts as the first, except plaintiff accused defendants of mismanaging the trust assets by commingling funds and self-dealing. (*Id.* ¶¶ 35–48.)

Also in 2010 Kwasnik and the Predecessor Firm were sued for fraud, breach of fiduciary duty, and violations of securities laws. (Walsh Decl. Ex. H.) In that case, plaintiffs alleged they relied on Kwasnik's status as an attorney when he and others made false representations to convince plaintiffs to surrender an annuity and invest the money with a financial institution of which Kwasnik was also ostensibly the "Founding Chairman." (*Id.* ¶¶ 1–14.) The complaint further alleged Kwasnik and the other defendants failed to inform the plaintiffs that they would forfeit a death benefit valued at $234,550.24 by surrendering the annuity. (*Id.*)

Finally, Kwasnik and the predecessor firm were named as third-party defendants in a 2009 malpractice action in which the third-party plaintiffs claimed they were being sued as a result of following Kwasnik's legal advice. (Walsh Decl. Ex. J.) Thus, Kwasnik's answer to question 13(a) was false because there were several professional liability suits filed against the applicants in the relevant time period.

The second question Kwasnik answered falsely was question 13(b) which asked: "[D]o you know of any circumstances, acts, errors or omissions that could result in a Professional Liability claim?" (Walsh Decl. Ex. C, at 5.) Kwasnik answered "no." (*Id.*) However, in January 2011 Kwasnik exchanged several letters with an attorney who represented one of Kwasnik's clients. (Walsh Decl. Ex. K.) One of the letters explicitly accused Kwasnik of self-dealing and mishandling the funds in his client's trust and threatened litigation. (*Id.* at 5–6.) In response, Kwasnik wrote: "[y]ou have threatened litigation against me ... I have contacted Matthew Wolf, Esquire in preparation for said action and he is being copied on this letter." (*Id.* at 4.) The former client eventually filed suit, but not until after KKA submitted its application. (Walsh Decl. Ex. Z.) In light of these facts, particularly Kwasnik's own statement, a reasonable jury could only conclude Kwasnik knew of circumstances that could result

in a professional liability claim when he completed the application in February 2011.

The third question Kwasnik answered falsely was question 13(c) which asked: "[H]as an attorney for who [sic ] coverage is sought ever been refused admission to practice ... by any court, administrative agency or regulatory body or been [the] subject of a disciplinary complaint made to any of the aforementioned entities?" (Walsh Decl. Ex. C, at 5.) Again, Kwasnik answered "no." (Id.) In fact, the New Jersey Office of Attorney Ethics filed a disciplinary complaint against Kwasnik in 2008 with the Supreme Court of New Jersey's Ethics Committee. (Walsh Decl. Ex. L.) The complaint included several counts for knowing misappropriation of trust funds and various conflicts of interest. (Id.) In light of the foregoing undisputed facts, a reasonable jury could only conclude that Kwasnik made false statements on KKA's application for professional liability insurance.

**\*5** The false statements on KKA's application were also material to the risk assumed by Colony. As a matter of common sense, the questions concerned exactly the type of claims for which KKA sought coverage. Moreover, Colony submitted with its motion a declaration by Elana Lovitch ("Lovitch"), the underwriter who reviewed KKA's application and made the decision to offer KKA a policy. (Decl. of Elana Lovitch in Supp. Of Pl.'s Mot. For Summ. J. / Mot. To Enter Default J. [Doc. No. 80–1] (hereinafter Lovitch Decl.).) In her declaration, Lovitch stated that questions 13(a), (b), and (c) are "essential" to the decision process because the answers "may reflect on the insured's professional competence and ethical standards, which in turn may indicate the potential for future claims." (Id. ¶¶ 6, 10–11.) She further stated:

> "[If KKA had answered the questions truthfully,] I am certain that I would have rejected the Application ... [T]he claims indicated a pattern of alleged malpractice and misconduct by the firm, particularly attorney Michael Kwasnik, which made KKA an unacceptable professional liability insurance risk ... because of the obvious risk that additional such claims would be asserted in the future."

(Id. ¶ 14.) Thus, Lovitch's uncontested declaration establishes the materiality of KKA's false statements because they went to the very heart of the risk assessment.

Colony's reliance is established by the fact that Lovitch would not have offered KKA a policy if not for the false statements. Furthermore, that reliance was reasonable because Colony was entitled to rely on KKA's statements and nothing in the record suggests that Colony had reason to know the statements were false.

Given the uncontested facts discussed above, a reasonable jury could only conclude that Kwasnik made false statements on KKA's insurance application; that the false statements were material to the risk assumed by Colony; and that Colony actually and reasonably relied on those statements. Therefore, Colony is entitled to summary judgment on its claim to rescind the policy as to KKA.[5]

**B. Damages under the IFPA**

Colony has also moved for summary judgment on its claim for damages under the IFPA. The purpose of the IFPA is to "confront aggressively the problem of insurance fraud in New Jersey," and it must be construed "liberally to accomplish the Legislature's broad remedial goals." N.J. STAT. ANN. § 17:33A–2; *Liberty Mut. Ins. Co. v. Land,* 892 A.2d 1240, 1246 (N.J.2006).

It is a violation of the IFPA to knowingly make a false or misleading statement concerning any fact that is "material to an insurance application or contract." N.J. STAT. ANN. § 17:33A4(a)(4)(a). Furthermore, violation of the IFPA entitles the defrauded insurer to compensatory damages, including "reasonable investigation expenses, costs of suit and attorneys fees." N.J. STAT. ANN. § 17:33A–7 (a).

The uncontested facts, discussed *supra,* show that Kwasnik made several false statements on KKA's application regarding past and possible future claims for malpractice and ethical violations. Given the evidence of Kwasnik's personal participation in many of the relevant events, a reasonable jury could only conclude that he made the false statements knowingly. Finally, those statements were unquestionably material to the application given their importance to the underwriter's decision to offer KKA a policy.

*6 Accordingly, Colony is also entitled to summary judgment against KKA for violating the IFPA.

### III. Motion for Default Judgment

Colony has moved for a default judgment against Kwasnik on its claims for rescission and violation of the IFPA.

### A. Standard for Default Judgment

Pursuant to Rule 55, obtaining a default judgment is a twostep process. First, when a defendant has failed to plead or otherwise respond, a plaintiff may request an entry of default by the Clerk of the Court. *See* Fed.R.Civ.P. 55(a). Second, after the Clerk has entered the party's default, a plaintiff may then obtain a default judgment by either: (1) asking the Clerk to enter judgment, if the judgment is a sum certain, or (2) by applying to the court. *See* Fed.R.Civ.P. 55(b). In the present case, the Court ordered the Clerk to enter default against Kwasnik as a sanction for violating its order compelling his deposition,[6] and now the Court must determine if Colony is entitled to a default judgment. (Order [Doc. No. 77] Sept. 12, 2013.)

Courts in the Third Circuit consider three factors when deciding whether to grant a default judgment[7]: (1) whether plaintiff would suffer prejudice if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's default was due to culpable conduct. *Chamberlain v. Giampapa,* 210 F.3d 154, 164 (3d Cir.2000) (citing *United States v. $55,518 in U.S. Currency,* 728 F.2d 192, 195 (3d Cir.1984)); *see also Hill v. Williamsport Police Dep't,* 69 F. App'x 49 (3d Cir.2003).

In the context of a default judgment, "prejudice" does not mean irreparable harm. *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 222 (3d Cir.2003). Rather, prejudice exists where the defendant's actions "impede[ ] a party's ability to prepare effectively a full and complete trial strategy." *Id.* A defense is litigable if the "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *See $55,518 in U.S. Currency,* 728 F.2d at 195. "[C]ulpable conduct means actions taken willfully or in bad faith." *Gross v. Stereo Component Systems,* Inc., 700 F.2d 120, 123–24 (3d Cir.1983) (citing

*Feliciano v. Reliant Tooling Co., Ltd.,* 691 F.2d 653, 657 (3d Cir.1982)).

### B. Colony is entitled to a default judgment

Without a default judgment, Colony would suffer prejudice because it would be forced to proceed on its claims without deposing Kwasnik. Given Kwasnik's key role in the case, Colony would undoubtedly be hindered in its ability to prepare a full and effective trial strategy.

Furthermore, Kwasnik does not have a litigable defense. The Court struck his answer as a sanction for failing to comply with a discovery order. (Order [Doc. No. 77] Sept. 12, 2013.) As a result, Kwasnik is effectively in the same position as if he never answered Colony's complaint, and therefore he is deemed to have admitted every well-pleaded allegation in the Complaint. *See United States for the use of 'Automatic' Sprinkler Corp. v. Merritt–Chapman & Scott Corp.,* 305 F.2d 121, 123 (3d Cir.1962); Fed.R.Civ.P. 8(b)(6).

*7 Finally, Kwasnik is culpable for his default. The Court entered Kwasnik's default as a sanction for failing to comply with its order compelling his deposition. (Order [Doc. No. 77] Sept. 12, 2013.) In issuing the sanctions, the Court adopted Magistrate Judge Donio's report and recommendation which found that Kwasnik prevented Colony from deposing him through a willful and bad-faith pattern of avoidance in violation of a court order. (*Id.*) Thus, Kwasnik's default was a direct result of his culpable behavior.

Colony's motion for a default judgment must be granted because all of the *Chamberlain* factors are present.[8] Colony would suffer prejudice without a default judgment; Kwasnik does not have a litigable defense; and Kwasnik is culpable for his default.

### IV. Damages

Pursuant to Section 17:33A–7 of the IFPA, Colony is entitled to compensatory damages, including "reasonable investigation expenses, costs of suit and attorneys fees." N.J. STAT. ANN. § 17:33a–2 (a). Although Colony submitted a summary of the fees and expenses it seeks to recover, the Court does not have enough information to assign damages. Therefore, Colony's request for damages will be denied without prejudice, and Colony will be granted leave to file a motion pursuant to Rule 54(d). With

Colony Ins. Co. v. Kwasnik, Kanowitz & Associates, P.C., Not Reported in F.Supp.3d...

that motion Colony should provide separate analyses that explain how the fees and expenses should be apportioned between KKA and Kwasnik. Furthermore, Colony should attach detailed billing records that specify who performed each task; whether that person was a partner associate, or paralegal; the time spent; and the rate charged.

**V. Remaining Claims**

In Count III of its Complaint Colony asked for a declaration as to the parties' rights and obligations with respect to specific pending actions, but only if the Court declined to rescind the Policy in full. Since the Court will grant the instant motion, thereby rescinding the policy as to all remaining defendants, Count III of Colony's Complaint will be dismissed as moot.

The only remaining claims in this case are Kwasnik's crossclaim against Kanowitz [Doc. No. 9], Kanowitz's crossclaim against Kwasnik [Doc. No. 6], and Keltos' crossclaim against Kwasnik [Doc. No. 11]. None of the parties have made any effort to pursue their crossclaims since filing them. Accordingly, the Court will order Kwasnik, Kanowitz, and Keltos to show cause as to why their crossclaims should not be dismissed, in accordance with Local Civil Rule 41.1(a), for lack of prosecution.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Combined Motion for Summary Judgment and for Default Judgment shall be granted in part and denied in part.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2920810

Footnotes

1    Colony also named Kanowitz and Keltos as defendants, but has since settled with them. However, Kanowitz and Keltos each filed crossclaims against Kwasnik which are still pending.

2    Kwasnik also filed a crossclaim against Kanowitz which is still pending.

3    New Jersey's choice of law rules are in accord with this result. See DeMarco v. Stoddard, 84 A.3d 965, 972 (N.J.Super.Ct.App.Div.2014) (stating that a trial court has discretion whether to permit parties to raise choice of law issues not raised early in the case); see also Chalef v. Ryerson, 648 A.2d 1139, 1142 (N.J.Super.Ct.App.Div.1994) (declining to consider choice of law issue on appeal when it was not properly presented before the trial court).

4    Kwasnik's state of mind is not at issue with respect to question 13(a) since it was not a subjective question. However, if there could be any doubt as to whether this claim constituted a professional liability claim in Kwasnik's mind, those doubts would be resolved by the fact that the firm tendered the claim to its malpractice insurer for coverage. (Walsh Decl. Ex. O, 123–25.) Furthermore, when the insurer denied the claim, Kwasnik and the Predecessor Firm filed an action in state court seeking a declaration that the claim was covered under their professional liability policy. (Id.)

5    See also, Lawson, 827 A.2d at 240 (holding that rescission is appropriate as to the firm as an entity when the person responsible for the application is involved with the fraud).

6    Although the Court entered Kwasnik's default under Rule 55(a) instead of Rule 37, the Third Circuit has explicitly stated in dicta that Rule 55(a) is a proper tool with which a court can sanction a party who fails to comply with its order. Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 918 (3d Cir.1992) (citing Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1310 (2d Cir.1991)).

7    These three factors are a subset of the six factors identified in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir.1984). See Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 919 (3d Cir.1992) (noting that the court applies "some or all of the six-part [Poulis] test ... in reviewing sanction orders that deprive a party of the right to proceed with or defend against a claim.")

8    Although Kwasnik was acting on behalf of a professional corporation when he submitted the application, he is still liable for damages under the IFPA. According to New Jersey's tort-participation theory, corporate officers are liable for torts and statutory violations in which they personally participate. See Allen v. v. and A Bros., Inc., 26 A.3d 430, 443 (N.J.2011) (citing Saltiel v. GSI Consultants, Inc., 788 A.2d 268 (N.J.2002)).

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 9

2013 WL 4039021
Only the Westlaw citation is currently available.
United States District Court,
D. New Jersey.

JACKSON HEWITT, INC., Plaintiff,

v.

Doris DUPREE–ROBERTS, Defendant.

Civ. No. 13–00388.
|
Aug. 7, 2013.

Attorneys and Law Firms

James Simon Coons, Ansa Assuncao, LLP, East Brunswick, NJ, for Plaintiff.

OPINION

WALLS, Senior District Judge.

**\*1** Plaintiff Jackson Hewitt, Inc. moves for default judgment against Defendant Doris Dupree–Roberts. Under Federal Rule of Civil Procedure 78, the motion is decided without oral argument and granted.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jackson Hewitt is a Virginia corporation with its principal place of business in Parsippany, New Jersey. Compl. ¶ 1. It is a franchisor of income tax preparation businesses. *Id.* Defendant Doris Dupree–Roberts is a citizen and resident of Texas. *Id.* ¶ 2.

On or about December 30, 1999, Jackson Hewitt and Dupree–Roberts entered into Franchise Agreements TX 228 and TX 224. *Id.* ¶¶ 20, 27. On the same day, Dupree–Roberts personally guaranteed her performance and obligations set out under the Franchise Agreements. *Id.* ¶¶ 7, 21, 28. These Franchise Agreements authorized Dupree–Roberts to operate Jackson Hewitt income tax preparation businesses for a 10–year term within a defined geographic area in Texas designated by five zip codes. *Id.* At the end of the initial 10–year term, Dupree–Roberts and Jackson Hewitt renewed both franchise agreements for an additional 10–year term. *Id.* ¶¶ 22, 29. On February

9, 2010, Dupree–Roberts again provided Plaintiff with a personal guaranty of her performance and obligations under the renewed Franchise Agreement. *Id.* ¶¶ 23, 30.

On January 8, 2010, Jackson Hewitt signed a promissory note in favor of Dupree–Roberts. *Id.* ¶ 35. According to the terms of the promissory note, all unpaid balances would immediately become due to Jackson Hewitt upon termination of the Franchise Agreements. *Id.* ¶ 36. Under the two Franchise Agreements, Dupree–Roberts was obligated to pay Jackson Hewitt royalty fees, advertising fees, electronic filing fees and other fees determined as a percentage of the "gross volume of business" at the franchised locations. *Id.* ¶ 37. Gross volume of business is defined as "the total revenue and other consideration from the franchised business." *Id.*

On or about September 10, 2010, Jackson Hewitt terminated the first Franchise Agreement, TX 228, citing Dupree–Robert's failure to meet performance standards. *Id.* ¶ 31. On September 23, 2011, Jackson Hewitt terminated the second Franchise Agreement, TX 224, citing Dupree–Robert's failure to make payments pursuant to the terms of the Franchise Agreement and promissory note. *Id.* ¶ 45. According to Jackson Hewitt Dupree–Roberts has failed to comply with her post-termination obligations. *Id.* ¶¶ 62–64.

Plaintiff alleges Dupree–Roberts is now operating a competing tax business under the name "Roberts Insurance and Tax agency" at previous franchise location 11001 Fondren Road, Suite C, Houston, TX 77096, in breach of her covenant not to compete found in Franchise Agreement TX 224. *Id.* ¶¶ 57–58. Jackson Hewitt sent Dupree–Roberts a cease and desist letter demanding she immediately cease operation of the competing tax business within the former franchised territory and advising Dupree–Roberts that she was in violation of her post-termination obligations under the TX 224 Franchise Agreement. *Id.* ¶ 59. Dupree–Roberts was unresponsive. *Id.*

**\*2** Plaintiff filed the Complaint on January 18, 2013. Dupree–Roberts was served with a Summons and a copy of Plaintiff's Verified Complaint by regular and certified mail on March 21, 2013. ECF No. 4. Jackson Hewitt requested an Entry of Default on April 30, 2013 under Fed.R.Civ.P. Rule 55(a), which the Clerk granted on May

1, 2013. ECF No. 5. Throughout the litigation Dupree–Roberts has been unresponsive.

On May 10, 2013 Plaintiff moved for Default Judgment against Defendant for a failure to plead or otherwise defend. Mot. for Default ¶ 1; ECF No. 6. Jackson Hewitt seeks damages in the amount of $162,306.37 plus post judgment interest. Mot. for Default ¶ 1. This amount is comprised of (1) $158,958.47 in monetary damages including interest; (2) $2,997.00 in attorneys' fees and; (3) $350.90 in costs. *Id.* Plaintiff also seeks to permanently enjoin Defendants in her various post-termination obligations found in the Franchise Agreements including an injunction from operating a competing tax preparation business at 11001 Fondren Road, Suite C, Houston, TX 77096 under the terms of the covenant not to compete. *Id.*

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. The power to grant default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984) (citations omitted). Because the entry of default prevents a plaintiff's claims from being decided on the merits, "this court does not favor entry of defaults or default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir.1984). Accordingly, the Third Circuit has clarified that, while "the entry of default judgment is left primarily to the discretion of the district court," this "discretion is not without limits," and cases should be "disposed of on the merits whenever practicable." *Hritz*, 723 F.2d at 1181 (citations omitted). *See also $55,518.05 in U.S. Currency*, 728 F.2d at 194–95.

The Third Circuit considers three factors in determining "whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir.2000).

In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages,

are treated as conceded by defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir.2005). The court must, however, make "an independent inquiry into 'whether the unchallenged facts constitute a legitimate cause of action' " and must make an "independent determination" regarding questions of law. *Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06–1581, 2007 WL 1674485, at *4 (D.N.J. June 8, 2007).

## DISCUSSION

### I. Jurisdiction

**\*3** Before entering a default judgment as to a party "that has not filed responsive pleadings, a district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.*, No. 05–3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008). A default judgment entered without personal jurisdiction over the defendant is void. *D'Onofrio v. Il Mattino*, 430 F.Supp.2d 431, 436 (E.D.Pa.2006).

### A. Subject Matter Jurisdiction

Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiff Jackson Hewitt is a Virginia Corporation with its principal place of business in New Jersey. Compl. ¶ 1. Defendant Doris Dupree–Roberts is a Texas resident. *Id.* ¶ 2. The amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000. *Id.* ¶ 3.

### B. Personal Jurisdiction

This Court possesses personal jurisdiction over Defendant Doris Dupree–Roberts. The Franchise Agreement includes a clause by which Defendant consented to personal jurisdiction in "the United States District Court nearest to [Jackson Hewitt's] principal place of business, (presently the District of New Jersey, Newark Division)." The Defendant was personally bound by this clause. Compl. ¶ 4. And Plaintiff Jackson Hewitt complied with the requirements for proper service of process necessary to establish personal jurisdiction. *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir.1991). Dupree–Roberts was served on March 21, 2013 under Fed.R.Civ.P. 4(h) by certified and regular mail, return receipt requested. Aff. of Service, ECF No. 4.

## II. Liability

Because a party seeking a default judgment is not entitled to such relief as a matter of right, the court may enter a default judgment "only if the plaintiff's factual allegations establish the right to the requested relief." *Nautilus Ins. Co. v. Triple C. Const. Inc.,* No. 10–2164, 2011 WL 42889, at *4 (D.N.J. Jan.6, 2011).

Jackson–Hewitt brings five breach of contract claims against Dupree–Roberts, including: 1) breach of the covenant not to compete; 2) unpaid fees; 3) breach of the promissory note; 4) unjust enrichment; and 5) breach of the guarantees. Compl. ¶¶ 68–95.

To properly make out a breach of contract claim, Plaintiff must allege: (1) a valid contract, (2) breach of that contract, and (3) damages resulting from that breach. *Coyle v. Englander's,* 199 N.J.Super. 212, 223, 488 A.2d 1083 (App.Div.1985).

### A. Breach Of The Franchise Agreement, Promissory Note, and Guarantees

On or about December 30, 1999, Plaintiff entered into two Franchise Agreements with Dupree–Roberts for the operation of Jackson Hewitt income tax preparation businesses for a 10–year term within a defined geographic area designated by five zip codes in Texas, which Dupree–Roberts personally guaranteed. Compl. ¶¶ 20, 27. There is no evidence these Franchise Agreements are invalid. Indeed, Dupree–Roberts successfully operated under the terms of the Franchise Agreements for 10 years before renewing both Franchise Agreements for additional 10 year term. *Id.* ¶ 27, 488 A.2d 1083. Dupree–Roberts again personally guaranteed these renewed obligations on February 9, 2010. *Id.* ¶¶ 23, 30, 488 A.2d 1083. On January 8, 2010, Jackson Hewitt issued a promissory note in favor of Dupree–Roberts. *Id.* ¶ 35, 488 A.2d 1083. According to the terms of the promissory note, all unpaid balances would immediately become due to Jackson Hewitt upon termination of the Franchise Agreements. *Id.* ¶ 36, 488 A.2d 1083.

**\*4** Dupree–Roberts breached the Franchise Agreements with Jackson Hewitt because on or about September 10, 2010, Dupree–Roberts failed to meet performance standards resulting in Jackson Hewitt terminating the first Franchise Agreement TX 228. *Id.* ¶ 31, 488 A.2d 1083. On September 23, 2011, Jackson Hewitt terminated the second Franchise Agreement, TX 224, because Dupree–Roberts failed to make payments pursuant to the terms of the Franchise Agreement and promissory note. *Id.* ¶ 45, 488 A.2d 1083. Following termination of the agreements, Jackson Hewitt alleges Dupree–Roberts failed to meet her post-termination obligations in accordance with the agreement, guaranty and promissory note. *Id.* ¶¶ 57–58, 62–64, 488 A.2d 1083.

Jackson Hewitt alleges money damages under the Franchise Agreement, guarantees and promissory note amounting to $158, 958.47. Mot. to Dismiss, 6.

Plaintiff has established liability for breach of the Franchise Agreement, personal guarantees, and promissory note. Plaintiff has abandoned its unjust enrichment claim in its motion for default judgment.

### B. Breach Of The Covenant Not To Compete

Under paragraph 18.2 of the Franchise Agreements, Dupree–Roberts agreed:

> For a period of twenty-four (24) months after the earlier of (1) the effective date of termination for any reason, or (2) the expiration of this Agreement ... you may not directly or indirectly prepare or electronically file individual income tax returns, teach tax courses, offer Bank Products or own, engage in, operate, manage, purchase, invest in (except to purchase stock in a publicly traded company listed on a national stock exchange), franchise, lend money to, lease or sublease to, or agree to sell or sell all or a majority of the assets of the Franchised Business to any Competing Tax Business as defined herein, within the Territory or within an area ten (10) miles outside the boundaries of the Territory.

Mot. for Default J. Ex. 2 ¶¶ 15.

Covenants not to compete "are enforceable only insofar as they are reasonable under the circumstances." *Solari Industries v. Malady,* 55 N.J. 571, 585, 264 A.2d 53 (1970).

In the case of a covenant relating to a former employee, reasonableness is governed by a three-part standard: "(1) it must protect a legitimate interest of the employer; (2) it may impose no undue hardship on the employee; and (3) it must not impair the public interest." *Id.* And "[e]ven if the covenant is found to be enforceable, it may be limited in its application concerning its geographical area, period of enforceability, or its scope of activity-the so-called 'blue pencil rule.' " *Id.* In the case of covenants not to compete negotiated in the sale of business, New Jersey courts "give wider latitude to covenants not to compete that are ancillary to the sale of a business than in the employment context." *Coskey's T.V. & Radio Sales v. Foti,* 253 N.J.Super. 626, 633, 602 A.2d 789 (N.J.App.Div.1992).

New Jersey courts have not yet decided whether covenants not to compete found in the franchise context are closer to employee covenants or agreements ancillary to the sale of business. One federal district court "predict[ed] the New Jersey Supreme court would rule the covenants not to compete in franchise agreements are closer to agreements ancillary to the sale of business" and evaluated the franchise covenant under the more lenient standard. *Jiffy Lube Intern., Inc. v. Weiss Bros., Inc.,* 834 F.Supp. 683, 691 (D.N.J.1993).

**\*5** Regardless, even under the more stringent standard, the covenant not to compete found in the Franchise Agreement is reasonable. First, the covenant protects a legitimate interest of the franchise to "provide Jackson Hewitt the opportunity to transfer customers to new or existing Jackson Hewitt franchisees." Compl. ¶ 54. These customers were retained under the Jackson Hewitt brand using Jackson Hewitt methods. Jackson Hewitt is entitled to try and retain them. Second, the covenant is not overly burdensome to Dupree-Roberts. Under paragraph 18.7 of Franchise Agreement TX 224, Dupree-Roberts acknowledged she had "other skills, experience or education that will afford [her] the opportunity to derive income from other endeavors." Franchise Agreement ¶ 18.7. What is more, the covenant is geographically restricted to five zip codes plus a ten mile radius and limited to only two years. *See, e.g., A.T. Hudson & Co. v. Donovan,* 216 N.J.Super. 425, 426 (N.J.Super.1987) (upholding a two year restrictive covenant); *Transamerican Trucking Serv., Inc. v. Ruane,* 273 N.J.Super. 130, 133, 641 A.2d 274 (App.Div.1994) (same). Finally, the public interest would not suffer from

the enforcement of the covenant not to compete given the multiplicity of tax preparation services available. This limited and circumscribed covenant is valid and enforceable.

Third, Dupree-Roberts is in breach of the covenant not to compete because she is currently operating a Competing Tax Business under the name "Roberts Insurance and Tax Agency" at a former Jackson Hewitt franchise location 1100 Fondren Road, Suite C, Houston, TX 77096. Compl. ¶ 58. On or about February 3, 2012, Jackson Hewitt sent Dupree-Roberts a cease and desist letter advising her she was in violation of her post-termination obligations under the TX224 Franchise Agreement, which Dupree-Roberts ignored. *Id.* ¶ 59, 641 A.2d 274.

Finally, Jackson Hewitt alleges irreparable harm from Dupree-Roberts' continued operation of a competing business. *Id.* ¶¶ 60, 76, 641 A.2d 274; Decl. of Arnold Janofsky in Supp. of Mot. for Default J. ¶¶ 31. Plaintiff argues Dupree-Roberts' "failure to comply with her covenant not to compete hinders Jackson Hewitt's ability to provide tax preparation services to existing clients and threatens to destroy Jackson Hewitt's relations with its customers in Defendant's former territories under the Franchise Agreements" and seeks to enjoin defendants from operating a competing tax business in her former franchise territory. Compl. ¶ 60.

Plaintiff has adequately established liability for breach of the covenant.

### III. Propriety of Entry of Default Judgment

Plaintiff has properly served Defendant with process, the Clerk of the Court has entered default against her, and Plaintiff has established legitimate causes of action for breach of contract and grounds for injunctive relief. The Court now determines whether default judgment is appropriate by evaluating: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa,* 210 F.3d 154, 164 (3d Cir.2000).

**\*6** If a default judgment is not entered, Plaintiff will continue to be harmed "because [it] will not be able to seek damages for [its] injuries due to defendant's continuing refusal to participate in this case." *Newman v. Axiom Worldwide,* No. 06–5564, 2010 WL 2265227, at \*5 (D.N.J.

June 2, 2010). Furthermore, the amounts owed on the recurring fees are subject to interest. Defendant will owe Plaintiff more money the longer Plaintiff does not receive payment, causing additional harm. *See Howard Johnson*, 2011 WL 2148575, at *4.

Defendant has been unresponsive to this action. Defendant has offered no defense, and the facts asserted in the Complaint do not contain any information that could provide the basis for a meritorious defense. The Court assumes that the Defendant has no litigable defenses available. *Rose Containerline, Inc. v. Omega Shipping Co.*, No. 10–4345, 2011 WL 1564637, at *3 (D.N.J. Apr.25, 2011) (citing *Carpenters Health & Welfare Fund of Phila. v. NDK Gen. Contractors, Inc.*, No. 06–3238, 2007 WL 1018227, at *5 (E.D.Pa. Mar.27, 2009) (finding that because defendant had filed no responsive pleading to the plaintiff's complaint, and the record did not indicate any litigable defense, the court must presume the defendant had none)).

The Third Circuit has defined culpable conduct as "conduct that is taken willfully or in bad faith." *Hill v. Williamsport Police Dept.*, 69 F. App'x 49, 52 (3d Cir.2003) (quotations omitted). "Reckless disregard for repeated communications from plaintiffs and the court ... can satisfy the culpable conduct standard." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir.2006) (citation omitted). Here, Dupree–Roberts has disregarded all communications from Plaintiff. Nor does the record suggest any good faith justification for her failure to respond. There is no evidence before the Court "that defendants' failure to respond to plaintiff's complaint was caused by anything other than defendants' own culpability and willful negligence." *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08–2662, 2009 WL 2147843, at *5 (D.N.J. July 15, 2009). The Court presumes that the Defendant acted culpably because she has "failed to answer, move, or otherwise respond." *Stonebridge Bank v. Nita Props., LLC*, No. 09–5145, 2011 WL 380759, at *6 (D.N.J. Jan.31, 2011).

## IV. Damages And Other Relief
Plaintiff seeks "damages for Dupree-Roberts' wrongful conduct", "an injunction enforcing the post-termination obligations set forth in the franchise agreements", "as well as attorneys' fees and costs." Mot. for Default, 2.

### A. Money Damages
The only allegations in a Complaint not treated as true upon the entry of a default judgment are those pertaining to the amount of damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990). Under Federal Rule of Civil Procedure 55(b)(2), a district court "may conduct such hearing or order such references as it deems necessary and proper" in order "to determine the amount of damages." If the damages are for a "sum certain or for a sum which can by computation be made certain," further evidentiary inquiry is not necessary. Fed.R.Civ.P. 55(b) (1); *Comdyne I*, 908 F.2d at 1149.

*7 Plaintiff now requests default judgment awarding money damages under the terms of her Franchise Agreement and promissory note. This request is supported by Exhibit 7 attached to the Plaintiff's Motion for Default, which itemizes past due royalty fees, advertising and marketing fees, electronic filing fees, rents, and outstanding billed promissory notes balances totaling a principle of $123,084.77. Mot. For Default, Ex. 7. Per section 8.4 of the Franchise Agreement, Plaintiff is also entitled to prejudgment interest accruing daily with respect to past due fees and promissory note balances at a contractually agreed upon rate of 18% per year. *Id.* Ex. 1; 2. As of the date of Plaintiff's Motion for Default Judgment, May 10, 2013, interest had accrued in the amount of $35,873.70 and continues to accrue. Decl. of Arnold Janofsky in Supp. of Mot. for Default J. ¶ 33. Combination of the outstanding balance and the accrued interest totals Plaintiff's requested sum of $158,958.47. Jackson Hewitt is entitled to a judgment of $158,958.47 plus post judgment interest.

### B. Injunctive Relief
The Franchise Agreements provide that upon violation of the covenants, Jackson Hewitt is "entitled to preliminary and permanent injunctive relief and all monies and other consideration you received as a result of any violation of these covenants, as well as all other damages." Franchise Agreement ¶ 20.18. These post-termination obligations include various contractual obligations to return property following the termination of the Franchise Agreements as well as Dupree-Roberts' obligation to comply with her covenant not to compete. Franchise Agreement, ¶¶ 20.3(b)-(g) 18 .2.

"The allowance of injunctive relief is a discretionary matter in that the court may be called upon to give or withhold relief depending upon variables, namely, the circumstances of the case." *Gilpin v. Jacob Ellis Realties, Inc.*, 47 N.J.Super. 26, 29, 135 A.2d 204 (App.Div.1957).

There are several factors that must be weighed in determining whether to grant permanent injunctive relief: (1) the character of the interest to be protected; (2) the relative adequacy of the injunction to the plaintiff as compared with other remedies; (3) the unreasonable delay in bringing suit; (4) any related misconduct by plaintiff; (5) the comparison of hardship to plaintiff if relief is denied, and hardship to defendant if relief is granted; (6) the interests of others, including the public; and (7) the practicality of framing the order or judgment. *Sheppard v. Township of Frankford*, 261 N.J.Super. 5, 617 A.2d 666 (App.Div.1992). Additionally, the moving party must show its "legal right to such relief has been established and that the injunction is necessary to prevent a continuing, irreparable injury." *Verna v. Links at Valleybrook Neighborhood Ass'n*, 371 N.J.Super. 77, 89, 852 A.2d 202 (App.Div.2004) (citing *McCullough v. Hartpence*, 141 N.J.Eq. 499, 502, 58 A.2d 233 (Ch.1948)).

**1. Various Post–Termination Obligations**

**\*8** Jackson Hewitt seeks "a permanent injunction enforcing the post-termination obligations detailed in the franchise agreements." *Id.* The Franchise Agreements contain a clause which entitles Jackson Hewitt to:

> temporary and permanent injunctions ... to enforce our exclusive rights in our Marks, to enforce your post-termination or expiration obligations, to prevent an unauthorized assignment or transfers of your franchise, to prevent the unauthorized use or disclosure of our trade secret, propriety or confidential information, and to prohibit any act or omission by you or your employees that constitutes a violation of any law or regulation, is dishonest or misleading to any current or prospective customers of the Franchised Business, constitutes a danger to any other Franchisees,

> employees, customers, or to the public, or that may impair the goodwill of our Marks.

Franchise Agreement ¶ 28.14.

Paragraph 20.3(b) (c);(e)-(h) of the Franchise Agreements outlines Dupree–Roberts' posttermination obligations to:

> (b) return to Jackson Hewitt all originals and copies of all trade secret and confidential Jackson Hewitt information and client files, without retaining copies, and all collateral agreements;

> (c) delete all confidential materials and client files from her computers and hard drives;

> ...

> (e) notify the telephone company and all listings agencies and advertising directories for the territories that Defendant no longer has the right to use such telephone numbers and listings, and authorizing the transfer of same to Jackson Hewitt;

> (f) return to Jackson Hewitt all leased equipment from any leasing program Jackson Hewitt arranges or sponsors;

> (g) return to Jackson Hewitt or destroy all literature, sign facings and unused advertising materials bearing the Jackson Hewitt Marks; and

> (h) immediately cease identifying herself as a present or former Jackson Hewitt franchisee or franchise owner.

Franchise Agreement 20.3(a)-(j); Compl. ¶ 50.

Weighing these factors reveals that permanent injunctive relief is appropriate. Jackson Hewitt has expended substantial resources building its brand and the products associated with that brand. Dupree–Roberts is no longer operating a Jackson Hewitt franchise, and is no longer entitled to the above property or rights. Dupree–Roberts is enjoined to honor these posttermination obligations, will refrain from referring to herself as a former Jackson Hewitt franchise, and will return to Jackson Hewitt all outstanding property.

**2. Covenant Not To Compete**

Plaintiff now seeks injunctive relief with respect to Defendant's failure to comply with the covenant not to compete found in the Franchise Agreements. Jackson Hewitt requests:

> a preliminary and permanent injunction enjoining Defendant and her employees, agents, servants, representatives, attorneys and/or affiliates, and all those who act in concert or participation with her from preparing or electronically filing individual tax returns, offering Financial Products, or participating in any way in a Competing Tax business within each territory under the TX 224 Franchise, Agreement, and within ten miles of the boundaries of each territory under the TX 224 Franchise Agreement, until two years from the date of this Court's Order.

*9 This Court will grant Jackson Hewitt's requested injunction. The purpose of a restrictive covenant is to provide the Plaintiff with the opportunity to transfer customers to new or existing Jackson Hewitt franchisees. Dupree–Roberts obtained clients through the Jackson Hewitt brand, and then transferred them to a comparable business at the same location. This was expressly forbidden from the terms of the agreed Franchise Agreement. Any hardship to Dupree–Roberts was part of the basis of the bargain. Pursuant to paragraph 18.6, Dupree–Roberts acknowledged Jackson Hewitt is entitled to permanent injunctive relief in the event of her violation of the covenants in section 18.2. Dupree–Roberts also acknowledged in paragraph 18.7 that the covenant not to compete was necessary to protect the Plaintiff and the restrictions would not impose any undue hardship. Jackson Hewitt terminated the Franchise Agreements on September 23, 2011, nearly two years from the present date. If Dupree–Roberts had complied with the covenant she would have been able to open her own tax related business soon. However, Jackson Hewitt is now entitled to try and retain customers obtained by its good name.

Dupree–Roberts is enjoined from operating a Competing Tax Business at the following former Jackson Hewitt franchise location: 11001 Fondren Road, Suite C, Houston, TX 77096 or otherwise within ten miles of the boundaries of Franchise Agreement TX 224 for a period of two years from the date of this Court's order.

### C. Attorney's Fees And Costs

Under Paragraph 28.18 of the Franchise Agreements, Dupree–Roberts agreed "the non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce [the] Agreement or any Collateral Agreement[s]." Franchise Agreement ¶ 28.18; Compl. ¶ 65. Attorneys' fees clauses are enforceable under New Jersey law. *See North Bergen Rex Transport, Inc. v. Trailer Leasing Co.,* 158 N.J. 561, 730 A.2d 843 (N.J.1999). Federal Rule of Civil Procedure 54 further provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1). Plaintiff's request for $2,997.00 in attorneys' fees and $350.90 in costs will be granted based on the review of supporting documentation detailing these costs. Certification of John F. Dienelt, Esq. in Supp. of Mot. For Default J. ¶¶ 3, 5, 8.

### CONCLUSION

Plaintiff's motion for default judgment is granted. Judgment is entered in the amount of $162,306.37 plus post judgment interest. Defendant must comply with her Franchise Agreement post-termination obligations as detailed in this Court's accompanying order, and is enjoined from operating a Competing Tax Business within the geographic boundaries described in Franchise Agreement TX 224.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 4039021

---

End of Document      © 2016 Thomson Reuters. No claim to original U.S. Government Works.