IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MICHAEL MORENO and MEDPRO, INC.

              Plaintiffs,

        v.

RORY E. TRINGALI,

              Defendant.

HONORABLE JEROME B. SIMANDLE

Civil No. 14-4002 (JBS/KMW)

**OPINION**

APPEARANCES:

Warren S. Wolf, Esq.
GOLDBERG & WOLF, LLC
1949 Berlin Road, Suite 201
Cherry Hill, NJ 08003
     Attorney for Plaintiffs

Robert A. Vort, Esq.
Suite 101
2 University Plaza
Hackensack, NJ 07601
     Attorney for Defendant

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This is an action by Plaintiffs Michael Moreno and Medpro
Inc. against a business competitor, Defendant Rory Tringali, for
violating a non-disparagement and non-defamation provision of a
settlement agreement arising out of prior litigation between the
parties, and otherwise defaming, disparaging, and harassing
Plaintiffs. A default [Docket Item 7] and a preliminary
injunction [Docket Items 9 & 10] were previously entered in

favor of Plaintiffs; the Court subsequently declined to set aside that default judgment. [Docket Items 26 & 27.]

Pending before the Court is Plaintiffs' Motion for Partial Summary Judgment. [Docket Item 49.] For the reasons set forth below, the Court will grant Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' breach of contract claim and for a permanent injunction.

## II.   BACKGROUND

Plaintiffs Michael Moreno and Medpro Inc. ("Medpro") buy and sell pre-owned cosmetic lasers. They filed a complaint against Defendant Rory E. Tringali, a business competitor, alleging, among other things, that Defendant was disparaging, defaming, and harassing Plaintiffs, and had breached the "Non Disparagement and Defamation" provision of an existing settlement agreement between them, which the parties entered into on September 20, 2012 after litigation ("Agreement" or "Settlement Agreement"). (Ex. A to Compl. [Docket Item 1-1] at 7-8; Docket Item 54-7 at ¶ 8.) In addition to a breach of contract claim, the Complaint contains the following causes of action: (1) defamation; (2) defamation per se; (3) tortious interference with prospective business relations; (4) intentional infliction of emotional distress; (5) civil assault; (6) intrusion of privacy/seclusion; (7) intrusion of

privacy/false light; (8) common law unfair competition; and (9) injunctive relief. [Docket Item 1-1.] Plaintiff moves for partial summary judgment only on the breach of contract claim (Count VI of the Complaint) and for a permanent injunction (Count X). [Docket Item 49-3 at 6.]

The Settlement Agreement executed by Plaintiffs and Defendant in 2012 states at paragraph thirteen:

> 13. Non Disparagement and Defamation
>
> Plaintiffs, Tringali and Syneron agree not to make any disparaging remarks about any Party to the civil litigation or cast any such Party in a negative light, except to the Prosecutor or Judge in the pending criminal litigation. The parties agree that each violation will result in the greater of $5000 damages per se or any actual damages a party can prove. This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.
>
> Plaintiffs and Defendants agree not to make any defamatory remarks about any Party to the civil litigation. The parties agree that each violation of this section will result in the greater of $5000 damages per se or any actual damages a party can prove. This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.

[Docket Item 49-2 at 2.] The Agreement also provides that

> . . . if any party is found to be in breach of this Agreement, it shall pay the reasonable legal fees and costs incurred by the non-breaching party to enforce its rights in this Agreement.

[Id. at 3.] Defendant admits that both of these provisions were in the Agreement he signed. [Docket Item 54-7 at ¶¶ 10, 11.]

On April 4, 2014, Defendant emailed Plaintiffs and Justin Williams (a person also in the cosmetic laser business) with the subject line "Gloves are off," saying "I had ENOUGH with you, this is just the BEGINNING!" [Docket Item 50 at 41.] This email also included a link to a website apparently titled "JUSTIN-WILLIAMS-BROOKE-HORAN-WILLIAMS-LASER-FRAUD-CROOKS.COM." [Id.] When a user clicked the link Defendant sent, the user would be connected to a website that included, inter alia, the following allegations, statements, documents, and images:

- "Mike Moreno Medpro Lasers, New Jersey Business Partner Justin Williams" [Docket Item 50 at 44];

- an email purportedly from Moreno saying that he would pay for "half of what JW [presumably Justin Williams] stole here," apparently in response to an email sent to "Mike Moreno" with the subject line "I HAVE BEEN SCAMMED!!!" and stating, "Mike/John [here, presumably again Justin Williams], you are quite a team!!" [id. at 45];

- another email to Mike Moreno from an apparently dissatisfied customer stating, "Jon/Mike, as per my last email, I would like to terminate my contract with Med Pro" and directing "Jon/Mike" to communicate with her lawyer "start[ing] legal proceedings" [id. at 46];

- emails from Justin Williams which purport to connect Mike

Moreno to Justin Williams and Brooke Horan [id. at 46-47];

- more emails from apparently dissatisfied customers sent to Mike Moreno [id. at 48-49]; and

- several pictures of cars, passports, houses, and Justin Williams wearing only a towel [id. at 50-75].

The website also contained graphics stating: "MORE PICTURES AND DOCUMENTS COMING SOON! STAY TUNED!" [Id. at 79-80.]

Plaintiffs contend that the statements on the website were false "to the extent [the website] states and implies that Mike Moreno and/or Medpro are partners and/or involved with Justin Williams on the frauds and scams alleged on the Defendant's website." [Docket Item 49 at ¶ 14.] Defendant contests this, stating that the statements were true. [Docket Item 54-7 at ¶ 14.]

Plaintiffs also allege that "[t]he website casts the Plaintiffs in a negative light as it attempts to portray them as being involved in the alleged fraud and scams which are alleged on the website." [Docket Item 49 at ¶ 15.] Defendant likewise contests this allegation: "The statements were true, and any bad light in which plaintiffs were framed was caused by their own conduct[.]" [Docket Item 54-7 at ¶ 15.]

Defendant admits that the link to the website was mailed to Brooke Horan and Justin Williams as well as to Plaintiffs. [Id.

5

at ¶ 16.] The website was created on March 28, 2014. [Id. at ¶ 32.] Defendant states that he removed some items from the website in April of 2014 and took down the website on June 13, 2014 [Docket Item 54-7 at ¶ 37]; however, Plaintiffs state that Defendant did not "remove any of the disparaging content against the Plaintiffs until on or after June 28, 2014." [Docket Item 49 at ¶ 37.]

In addition to the website, Plaintiff alleges that Defendant "has contacted" at least four of Plaintiffs' customers, allegedly "to dissuade [them] from doing business with the Plaintiffs by claiming the Plaintiffs rip off their customers, commit frauds, [and] that there are many other victims of the Plaintiffs' alleged frauds out there." [Docket Item 49 at ¶¶ 17-24.] Defendant admits that he has been in contact with the four named parties (Leanne Velona, Jen Chura, Pamela Bellow-Olatunji, and Chafic Medawar) but denies that he did so for the purpose alleged by Plaintiffs; rather, "those people reached out to Tringali for help dealing with plaintiffs[.]" [Docket Item 54-7 at ¶ 17.]

In late 2013 to early 2014, Defendant corresponded with Velona and admits to stating that "Plaintiffs were ripping people off, and . . . included several Internet links called Ripoffreport.com, Complaintsboard.com, and Scamclub.com";

however, he states, "the statements were true." [Id. at ¶ 20.]
On March 25, 2014, Defendant emailed Velona regarding "other
'victims' of Plaintiffs and a potential way to 'recover'[,]"
which Defendant states was "in response to Velona's request to
Tringali for help dealing with plaintiffs." [Docket Item 49 at
¶ 21; Docket Item 54-7 at ¶ 21.] On April 5, 2014, Defendant
emailed Velona again, wherein he stated that he had already
helped two of Plaintiffs' "victims." [Docket Item 54-7 at ¶ 22.]
Finally, on April 9, Defendant sent Velona "a parcel report of
the assessed value of Plaintiff's home." [Id. at ¶ 23.]
Plaintiff alleges that this was "an attempt to communicate that
Plaintiffs were becoming rich from the alleged scams" [Docket
Item 49 at ¶ 24]; Defendant denies this, stating that he "sent
the emails to Velona to help a victim of plaintiffs' scams," but
does not explain how sending Velona a parcel report of the value
of Plaintiff's home would do so. [Docket Item 54-7 at ¶ 24.]

On March 6, 2014, Defendant admits, he sent an email with
"Medpro" in the subject line, wherein he described himself as a
victim of fraud. [Docket Item 54-7 at ¶¶ 25-27.] Plaintiffs
allege that Defendant sent this email to twelve customers and/or
industry professionals, including Chura, Medawar, Bellow-
Olatunji, and Mike Goodrich. [Docket Item 49 at ¶ 25.] Defendant
admits to sending the email to Chura, Medawar, and Bellow-

Olatunji, but denies that the Complaint refers to Mike Goodrich. [Docket Item 54-7 at ¶ 25.] However, a review of the Amended Complaint shows that Plaintiffs did allege that Defendant disparaged Plaintiffs to Mike Goodrich. [Docket Item 1-1 at ¶ 61.]

Finally, Plaintiff alleges that "Defendant further disparaged Plaintiffs in communications with at least five (5) industry professionals: Tony Kokjohn, Jean Marc Porier, Mike Goodrich, Doug Grief, and Rebecca Bell." [Docket Item 49 at ¶ 28.] Defendant denies this allegation, stating: "Any and all statements by defendant about plaintiffs were true."[1] [Docket Item 54-7 at ¶ 28.]

The Court previously entered a preliminary injunction in this matter. [Docket Items 9 & 10.] Among other things, the Court ordered Defendant Tringali to (1) remove all references to Plaintiffs on Defendant's website and any other website under his control; (2) delete any posts he created about Plaintiffs on any websites, blogs, chat rooms, and reviews which cast Plaintiffs in a negative light; (3) cease and desist from disparaging and/or defaming Plaintiffs and/or casting them in a

---

[1] The Court will address below whether an assertion that a given communication was true in fact operates as a denial that it disparaged someone.

negative light. (Preliminary Injunction Order [Docket Item 10].)[2]
Defendant has not, to date, attempted to contest, oppose, vacate
or modify the preliminary injunction. [Docket Item 54-7 at
¶ 45.]

## III. DISCUSSION

### A. Breach of Contract

#### 1. Enforcing Settlement Agreement

Plaintiffs contend that there is no genuine dispute of
material fact that Defendant breached ¶ 13 the Settlement
Agreement by making "disparaging remarks" about Plaintiffs to
others and by casting Plaintiffs "in a negative light," and for
that reason, summary judgment should be granted as to their
breach of contract claim. The Court agrees.

At summary judgment, the moving party bears the initial
burden of demonstrating that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a
matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986). Once a properly supported

---

[2] Additionally, the Court ordered Defendant to (1) cease and
desist from contacting any of Plaintiffs' customers; (2) cease
and desist from contacting Plaintiffs other than through
counsel; (3) stay outside a 500-yard radius of Plaintiff's home
in New Jersey; (4) refrain from defaming or disparaging
Plaintiffs within the business community; (5) refrain from
trying to obtain, distribute or publicize any private and
personal information about Plaintiff Moreno or Moreno's family.
[Docket Item 10.]

motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate for the court to make at the summary judgment stage. Davis v. Portlines Transportes Maritime Internacional, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

Furthermore, because Defendant failed to file an Answer to

the Amended Complaint, the well-pleaded allegations therein
(except as they relate to damages) are deemed admitted. Fed. R.
Civ. P. 8(b)(6); accord United States v. Merritt-Chapman & Scott
Corp., 305 F.2d 121, 123 (3d Cir. 1962). Thus, the detailed
factual allegations of the Verified Complaint, which Defendant
removed to this Court and then defaulted in answering, are
deemed true, and the documents attached to the Verified
Complaint containing the "disparaging" and "negative light"
statements of Defendant, are deemed authentic expressions of
Defendant's statements.

Under New Jersey law, to establish a claim for breach of
contract, a plaintiff must "prove that a valid contract existed,
[the d]efendant materially breached the contract and [the
p]laintiff suffered damages as a result of the breach."
Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 421 F.
Supp. 2d 831, 833 (D.N.J. 2006) (citing Coyle v. Englander's,
199 N.J. Super. 212, 223 (App. Div. 1985)).

Here, Plaintiff has proved that the Agreement executed by
Plaintiffs and Defendant on September 20, 2012 is a valid
contract. It is well-settled law that a "settlement agreement
between parties to a lawsuit is a contract." Nolan by Nolan v.
Lee Ho, 120 N.J. 465, 472 (1990). Defendant does not contend
that he was tricked, misled, or in any way did not understand

the contract at the time he signed it; indeed, he was
represented by counsel during the pendency of the litigation
which led to the Settlement Agreement and counsel advised him in
the preparation and execution of the Agreement. Because the
Agreement is a valid contract to which Defendant and Plaintiffs
were both bound, it is "governed by principles of contract law."
Sipler v. Trans Am Trucking, Inc., 881 F. Supp. 2d 635, 637
(D.N.J. 2012). When such a settlement agreement is in effect, it
"is an enforceable contract to which a court must give legal
effect according to the parties' intent as expressed in the
document." Blunt v. Lower Merion School Dist., 767 F.3d 247, 282
(3d Cir. 2014) (citing Davis v. Huskipower Outdoor Equip. Corp.,
936 F.2d 193, 196 (5th Cir. 1991)). When "parties express their
intent in language in [a] settlement agreement and were
represented by skilled attorneys, [the] court should not look
beyond that language to understand [the] agreement." Sipler, 767
F.3d at 282 (citing Lubrizol v. Exxon Corp., 871 F.2d 1279, 1283
(5th Cir. 1989)).

**2. "Disparaging remarks," "defamatory remarks," and remarks
casting Plaintiffs "in a negative light"**

Plaintiffs also allege that they have proved, with no
remaining genuine dispute of material fact, that Defendant
breached Paragraph 13 of the Agreement, in that Defendant made
"disparaging remark[s]" and/or "defamatory remark[s]" about

Plaintiffs, and that Defendant "cast" Plaintiffs "in a negative light."

The crux of Defendant's argument against the grant of summary judgment is that, "[a]lthough [paragraph 13 of the Agreement] is written in terms of disparagement and defamation, it must be construed more strictly. . . . Plaintiffs' complaint is nominally an action for breach of contract . . . . It must be analyzed, however, under the law of product disparagement or trade libel, Patel v. Soriano, 369 N.J. Super. 192[, 246-48 (App. Div. 2004)] . . . ." [Docket Item 54 at 7.] Defendant contends that there must be malice proven, and that Moreno has not sufficiently rebutted Defendant's evidence that "Tringali was motivated by ill will as opposed to legitimate business competition or that Tringali knew that his statements were false." [Docket Item 54 at 10.] The Court disagrees that this approach is correct.

This is a simple breach of contract (i.e., the Settlement Agreement) case. In Patel, the reviewing court reversed the trial court's finding that a plaintiff's case was properly construed as a defamation case (subject to a one year statute of limitations) and instead found that the "cause of action should have been reviewed as one of trade libel" with a six year statute of limitations. Id. at 246. As the court in Patel noted,

13

"[t]rade libel identifies the tort addressing aspersions cast
upon one's business operation." Id. However, this Court does not
now consider a tort claim, but rather only Plaintiffs' claim for
breach of contract. There was neither contract nor settlement
agreement at issue in Patel. Furthermore, the actual doctrine of
trade libel is only applicable when the statements at issue
concern the plaintiff's "product or property," rather than
"charging 'personal misconduct' or 'reprehensible personal
characteristics.'" New Jersey Auto. Ins. Plan v. Sciarra, 103 F.
Supp. 2d 388, 409 (D.N.J. 1998) (internal citations omitted).
The Court does not, in the allegations submitted by Plaintiffs
and admitted to by Defendant, discern statements made by
Tringali against Plaintiffs' product or property. Nor does
Defendant explain how his statements, though he alleges they
were made without what he asserts to be the requisite malice,
were directed at Plaintiffs' "product or property" such that
trade libel would be the appropriate doctrine from which to draw
applicable principles of law.

In contrast, other courts have had occasion to assess the
correct approach to construing non-disparagement clauses,
specifically in settlement agreements. The Court finds these
cases instructive.

In Eichelkraut v. Camp, the Court of Appeals of Georgia

14

examined this issue in detail. 236 Ga. App. 721 (1999). There, the parties had previously entered into a settlement agreement wherein they agreed that they would "'cease and refrain from making any disparaging or defamatory remarks or comments regarding one another, expressly or by implication, including but not limited to any parties' personal or business dealings and reputations.'" Id. at 722. Subsequently, the appellant mailed a letter to a district court judge stating that the appellee was being investigated for fraud, embezzlement, and racketeering and asked the judge to reconsider "'your choice of Trustee'"; she also mailed a letter to the Georgia Society of Certified Public Accountants "'to alert you to the blatant disregard of professional ethics'" exhibited by the appellee, accused him of ethical violations, and stated that he was being criminally investigated. Id. at 722-23.

The court ruled that the letters "on their faces[] were disparaging[,]" notwithstanding that the statutory definition of "disparagement" in Georgia identifies it as a form of slander or defamation:

> [T]his statutory definition of a tort does not
> dispense with the cardinal rule of contract
> construction that in interpreting contracts, we must
> ascertain the intent of the parties. . . . We conclude
> that the agreement clearly reflects the parties'
> intent that the non-disparagement clause applied to
> all derogatory communications, whether true or not. .
> . . [T]he phrasing of the clause itself clearly

15

contemplates a broad definition of the term
"disparaging," as it prohibits both "disparaging or
defamatory remarks or comments."

Id.

Similarly, in Halco v. Davey, the Supreme Judicial Court of
Maine found that a plaintiff stated a valid claim for breach of
a settlement agreement that prohibited the parties from
"disparage[ing] or discredit[ing]" one another where the
plaintiff alleged that the defendant called the settlement a
"'payoff' that 'only promotes more lawsuits' and that the
defendants 'had beaten this guy the whole way through,' . . .
could establish injury to [the plaintiff's] reputation because
the statements can be understood as suggesting that his claim
was frivolous." 919 A.2d 626, 630 (2007). The court there looked
to Webster's II New Riverside University Dictionary to establish
the plain or ordinary meanings of the words "disparage" and
"discredit" to reach its conclusion. Id.

In Fisher v. Biozone Pharmaceuticals, Inc., the Northern
District of California ruled that a plaintiff had violated a
settlement agreement that prohibited him from "mak[ing] any
derogatory, disparaging or critical negative statements . . .
against any Defendant" when the plaintiff emailed a journalist
and stated that the defendants regularly breached their
agreements and other regulations and that he had filed an SEC

16

whistleblower complaint and several lawsuits against them:

> [T]he settlement's non-denigration term does not
> implicate First Amendment rights. . . . Nor is the
> point whether the defendants have established a tort
> such as defamation. The information that the plaintiff
> continued to disseminate [such as] accusing the
> defendants of . . . fraud . . . [is] disparaging in
> the normal sense, and certainly in the broad sense
> intended by the settlement agreement. Even if what the
> plaintiff said was old information, and probably even
> if it was true, this still breached the broad mandate
> of the settlement agreement's non-disparagement
> clause.

No. 12-cv-03716-LB, 2017 WL 1097198, at *7 (N.D. Cal. March 23,

2017). The implication that even normal competitive business

practices may be foreclosed by the non-disparagement clause of a

settlement agreement is suggested in Moran v. Davita, Inc.,

where the court discussed a finding that a non-disparagement

clause was a non-essential term in a settlement agreement:

"Plaintiff had never previously been advised of Defendants'

request for a non-disparagement clause and that Plaintiff, as an

employee of Davita's competitor, could never agree to sign such

a clause." No. 06-5620, 2013 WL 3811664, at *7 (D.N.J. July 22,

2013).

The Oxford English Dictionary defines the adjective

"disparaging" as "that disparages; that speaks of or treats

slightingly, that brings reproach or discredit." It defines the

verb "disparage" as "to bring discredit or reproach upon; to

dishonor, discredit; to lower in credit or esteem," or as "to

17

speak of or treat slightingly; to treat as something lower than it is; to undervalue; to vilify." Disparaging, Oxford English Dictionary (online ed.), http://www.oed.com/view/Entry/54910 (last visited June 27, 2017); disparage, Oxford English Dictionary (online ed.), http://www.oed.com/view/Entry/54905 (last visited June 27, 2017). Under those definitions, there is no genuine dispute of material fact that Defendant's allegations against Moreno and Medpro on the website and in communications to others were disparaging, in that they "sp[oke] slightingly of" Plaintiffs and "vilif[ied]" and "br[ought] discredit or reproach upon" Plaintiffs' reputations.

As Plaintiffs state:

> The first paragraph [of Paragraph 13 of the Agreement] contains two restrictions: no disparaging remarks and cannot cast any party in a negative light. The second paragraph prohibits defamatory remarks.

[Docket Item 55 at 5.] The Court agrees that the "defenses offered by [D]efendant only apply to the defamation restriction in the second paragraph." Id. In accordance with normal principles of contract interpretation, it would be unreasonable to subsume the first paragraph into the second and rule that only defamatory statements could violate the clear and unambiguous language prohibiting disparaging statements and other statements casting a negative light, when defamatory statements are prohibited just a few sentences later. Moreover,

18

each subparagraph of ¶ 13 has its own liquidated damages
provision, further indicating that the defamatory remarks
provision is independent of the disparaging remarks and negative
light provision. Defendant does not explain or attempt to
explain how his statements on the website and his communications
with others were not violative of the restrictions on
disparaging remarks and casting Plaintiffs in a negative light.

Accordingly, for purposes of this motion to enforce the
Settlement Agreement, the Court will focus on determining
whether Defendant has violated the "disparaging remarks" and/or
"casting Plaintiffs in a negative light" clauses, the breach of
which does not require Plaintiff to prove malice or falsity. The
Court will not consider whether Plaintiff has also proved breach
of the "defamatory remarks" clause because that takes us on an
excursion into whether the negative remarks were also knowingly
false or made with malice,[3] against which Defendant argues

---

[3] In New Jersey, "[t]he elements of a defamation claim are: (1)
the assertion of a false and defamatory statement concerning
another; (2) the unprivileged publication of that statement to a
third party; and (3) fault amounting at least to negligence by
the publisher." DeAngelis v. Hill, 180 N.J. 1, 12-13 (2004)
(citing Restatement (Second) of Torts § 558 (1977)). "[W]ords
that subject a person to ridicule or contempt, or that clearly
sound to the disreputation of an individual are defamatory on
their face." Id. at 13-14 (2004) (internal citations omitted).
Truth is a defense: "[E]ven under the negligence standard in a
defamation action, no business owner will ever be liable for the
truth he tells about a rival. See Ward v. Zelikovsky, 136 N.J.
516, 530 (1994) ('True statements are absolutely protected under

19

truthfulness as a defense to defamation. Rather than testing whether there is a genuine dispute of material fact regarding their truthfulness, the Court will instead determine whether there is any genuine dispute about their "disparaging" and "negative light" character, neither of which requires Plaintiffs to prove that the remarks were false.

Under their Settlement Agreement, the parties exchanged material promises and received assurances not just to be free from what the law already protects them from--_i.e._, defamation-- but for significantly broader relief from "any disparaging remarks" and even "any" remarks that "cast any such Party in a negative light." Whether any factual dispute exists whether Defendant Tringali has breached these promises is thus the issue.

Defendant Tringali's statements on the website detracted from Moreno's and Medpro's reputations where it stated that Moreno expressed his willingness to take financial responsibility for what Justin Williams stole. It also suggested the existence of numerous dissatisfied customers, some of whom

---

the First Amendment.')" <u>Senna v. Florimont</u>, 196 N.J. 469, 496 (2008). "Although a belief in the truth of the matter published is insufficient to sustain the defense of truth, it is relevant in determining whether the defendant showed actual malice in regard to the truth or falsity of the publication" where actual malice is the required level of fault. <u>Lawrence v. Bauer Pub. & Printing Ltd.</u>, 89 N.J. 451, 467 (1982).

described Moreno, Medpro, and Williams "scamming" them, and one of whom described needing to begin "legal proceedings," implying a certain heightened level of wrongdoing or, at the very least, something very far from a lawful and fair commercial transaction. It also stated that "more," presumably more documents or similarly damning information, would be forthcoming.

Defendant also disparaged Moreno and/or Medpro where he corresponded with customers like Velona and described Moreno as having had "victims," and where he sent an email about Medpro and described himself as having been a "victim" of fraud. To call someone a victim of a third person implies that the third person has harmed the alleged "victim"; this self-evidently castigates or detracts from the reputation of the person who is alleged to have harmed the "victim." Each of these statements was not only disparaging but also cast Plaintiffs in a negative light.

Accordingly, the Court finds that Plaintiffs have met their burden of establishing that there is no genuine issue of material fact as to whether Defendant breached Paragraph 13 of the Settlement Agreement; the breach is clear and no reasonable finder of fact could find otherwise than that Defendant committed it by disparaging Plaintiffs and by casting Plaintiffs

in a negative light.

### 3. Number of breaches

The Court further finds that Plaintiffs have established eleven breaches of the non-disparagement clause and the "negative light" clause.

Plaintiffs suggest that the undisputed evidentiary record establishes twenty-three (23) breaches by Defendant of the non-disparagement clause and/or "negative light" clause of the Settlement Agreement. They are, specifically, as follows:

1) January 9, 2014 email to Velona: Referring Velona to ripoffreport.com, complaintsboard.com, scamclub.com, yelp.com (a review site), dotmed.com, and telling her to "Call me. . . . a client of there's [theirs] that been ripped off for over 1 year and they are posting the truth." [Docket Item 51 at 7.]

2) January 14, 2014 email to Velona: with a subject line indicating the address of a real property "owned by MORENO, MICHAEL" and with a link to a website with that property's value and estimated annual tax. [Docket Item 51 at 10-11.]

3) March 25, 2014 email to Velona: with a subject line of "Re: Justin Williams ESR LLC-Medpro Lasers," Defendant wrote, "I have been in contact with other victims[.]"

[Docket Item 51 at 5.]

4) April 5, 2014 email to Velona: Defendant told Velona not
to answer any email from "justin, mike Moreno or Brooke
or their lawyers . . . If they made you sign a
settlement agreement . . . I cannot help you. I just
helped two victims and hopefully help my self as well."
[Docket Item 51 at 3.]

5) March 6, 2014 email to "Larry Leven"; "Doctor Spence";
Velona; Mike Goodrich; webbankus@gmail.com;
jchura@midtownsurgery.com; nenupharlaser@hotmail.com;
"Cynthia"; beth@greenmetalusa.com;
kelly@longevitylounge.info; bnaturalspa@verizon.net;
chafic@paraform-lb.com; and Alfonso Villareal: under the
subject line "Re: Justin Williams ESR LLC-Medpro
Lasers," Defendant wrote that he "was a victim of fraud
from Justin & Brooke Williams." [Docket Item 51 at 8.]
Plaintiffs claim this March 6, 2014 email amounts to
twelve breaches because it had twelve recipients who are
not parties or the lawyer for Defendant.

6) Defendant's admission (by operation of the default
judgment) that he "disparaged the Plaintiffs to business
associates and contacts in the industry including, but
not limited to, Tony Kokjohn, Jean Marc Porier, Mike

23

Goodrich, Doug[] Grief and Rebecca Bell." [Compl. P 61, Docket Item 1-1 at 18-19.] Plaintiffs argue that this constitutes five breaches.

7) Defendant's email of the link to the disparaging website to Brooke Horan and Justin Williams. [Docket Item 50 at 41.] Plaintiffs argue that this constitutes two breaches.

The Court will address these in turn.

The Court grants summary judgment on the claim that the January 9, 2014 email to Velona constituted a breach of the non-disparagement clause. The content of the email suggests that a "scam" or "ripoff" has occurred, the recipient is a customer of Medpro, and the context is vouching for a person who claims he or she has been ripped off by Moreno and Medpro. See Verified Complaint & Ex. D thereto, the contents of which are deemed admitted by Defendant, as acknowledged in Def. Opp. Br. at 2 ("The entry of default means that Tringali is deemed to have admitted the well pleaded allegations of the complaint, Fed. R. Civ. P. 8(b)(6)" [footnotes and citations omitted]).

The Court declines to grant summary judgment as to the January 14 email. While Plaintiffs' argument that this email constituted an attempt by Defendant to imply that Moreno became rich from his behavior may be correct, the Court finds that

there is a genuine issue of material fact as to whether this
email disparages Moreno or casts him in a negative light simply
for owning an expensive home.

The Court will grant summary judgment as to the March 25
email to Velona: Defendant described himself and others as
"victims" in an email that was, by its subject line, about both
Justin Williams and Medpro. Defendant is also deemed to have
admitted these facts by default as noted above and as prescribed
by Rule 8(b)(6). This disparages Medpro in violation of the
Settlement Agreement, as well as casting Medpro into a "negative
light," and the Court will grant summary judgment for this
breach.

The Court will also grant summary judgment as to the April
5 email, wherein Defendant told Velona not to answer emails from
Moreno, Williams, or Horan and again described helping "two
victims." This disparages Moreno, as well as casts him in a
negative light, in that it suggests that Moreno has at least two
victims whom he has played a role in harming; the Court will
therefore grant summary judgment as to this breach.

The Court grants summary judgment as to the March 6 email.
This email has a subject line that mentions "Medpro" as the
March 25 email did, within the body of the email linking Medpro
to Defendant's allegedly being a victim of fraud "from Justin &

Brooke Williams." The mention of Medpro, coupled with the clear
statement of victimization of fraud, as part of a stream of even
more precise emails disparaging Medpro, renders this another
disparaging email violating the Settlement Agreement, as well as
casting Medpro in a negative light. Furthermore, as explained
above, Defendant has by default admitted these facts pled in the
Verified Complaint and attachments thereto. Although there are
twelve recipients listed on Tringali's March 6 email, apparently
only one--customer Velona--forwarded it to Moreno, recognizing
that it involved Tringali's campaign of disparagement against
Moreno and Medpro. Velona, of course, had provided Moreno with
this and other copies of Tringali's disparaging emails. Where it
is the caption of Tringali's March 6 email, and not the body of
the text, that includes Medpro, the Court will not automatically
assume that the other eleven recipients made the connection.
This will count as one breach, without prejudice to Plaintiffs'
right to seek to prove multiple breaches in due course.
Accordingly, the Court will grant summary judgment.

    The Court will also grant summary judgment as to the claims
that Defendant disparaged Plaintiffs to Tony Kokjohn, Jean Marc
Porier, Mike Goodrich, Doug Grief, and Rebecca Bell. [Compl.
¶ 61.] By virtue of the default judgment, Defendant has admitted
these factual allegations. See Comdyne I, Inc. v. Corbin, 908

F.2d 1142, 1149 (3d Cir. 1990) ("A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal citations omitted). For that reason, the Court will grant summary judgment as to these five breaches.

The Court will also grant summary judgment as to the claim that Defendant disparaged Moreno and/or Medpro by emailing the link to the disparaging website to Williams and Horan. Defendant argues that summary judgment on this claim should not be granted because "Horan and Williams are partners with [P]laintiffs and, as a result, e-mails to them do not constitute publication." [Docket Item 54 at 12.] Defendant is correct that the "tort of defamation requires publication to a third party[.]" [Id., citing Gnapinsky v. Goldyn, 23 N.J. 243, 252 (1957).] However, as discussed at length, supra, Plaintiffs seek summary judgment on their claim for breach of the Settlement Agreement's non-disparagement clause and "negative light" clause, not for the tort of defamation. The only exception in the Settlement Agreement about to whom Defendant was permitted to make disparaging remarks or remarks that cast Plaintiffs in a negative light was that such remarks were permitted if made "to the Prosecutor or Judge in the pending criminal litigation."

[Docket Item 49-2 at 2.] Because Williams and Horan were not excepted parties to the non-disparagement clause, Defendant is liable for two breaches of that clause with his emails to Williams and to Horan. The Court therefore grants summary judgment as to those two breaches.

Accordingly, for the foregoing reasons, the Court will grant summary judgment to Plaintiffs for breach of ¶ 13 of the Settlement Agreement as to eleven claimed breaches of the Settlement Agreement's non-disparagement clause.

### 4. Liquidated damages

The issue that remains as to the breach of contract claim is whether Plaintiffs are entitled to summary judgment as to their claim for liquidated damages for the breaches of the non-disparagement and negative light clauses.

The general rule is that the amount of unliquidated damages is not established by a default judgment. Comdyne I, 908 F.2d at 1149. However, if "damages are 'liquidated or computable,'" they may be "awarded simply on the basis of the pleadings." Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 270 (E.D.Pa. 2014) (citing Comdyne I, 908 F.2d at 1152). See also Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).

The breached Settlement Agreement, however, contains a liquidated damages provision. This provision, which the parties

to the Agreement negotiated, through counsel, states that "five thousand dollars ($5,000.00) is to paid by the breaching party for each breach." [Docket Item 49-3 at 8.] Paragraph 13 of the non-disparagement clause continues that this "amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove." [Docket Item 49-2 at 2.]

New Jersey law follows the approach of the Second Restatement of Contracts and generally enforces reasonable liquidated damages clauses, noting that "such clauses should be deemed presumptively reasonable and . . . the party challenging such a clause should bear the burden of proving its unreasonableness." Wasserman's Inc. v. Twp. of Middletown, 137 N.J. 238, 252 (1994).

Defendant has not alleged that the liquidated damages provision in Paragraph 13 of the Settlement Agreement is unreasonable or otherwise "unenforceable on grounds of public policy," Restatement (Second) of Contracts, Sec. 356(1) (1981), and the Court does not discern any unreasonableness on the fact of the Agreement. Accordingly, because the liquidated damages provision contracted for by Plaintiffs and Defendant is presumptively reasonable, the Court will enforce that provision.

Because Defendant breached the non-disparagement clause of the Settlement Agreement eleven times, and because the Agreement

29

provides for damages of the greater of $5,000 or actual damages,
Defendant shall be liable for damages in the amount of fifty-
five thousand dollars ($55,000).

### B. Permanent Injunction

Plaintiffs move for an order converting the preliminary
injunction ordered in this case on July 24, 2014, to a permanent
injunction. [Docket Item 49-3 at 13.] Defendant has not opposed
this request.

A court

> may issue a permanent injunction in the context of a
> default judgment where [the following] requirements
> are met[:] "[the plaintiff must show] (1) that it has
> suffered an irreparable injury; (2) that remedies
> available at law, such as monetary damages, are
> inadequate to compensate for that injury; (3) that,
> considering the balance of hardships between the
> plaintiff and defendant, a remedy in equity is
> warranted; and (4) that the public interest would not
> be disserved by a permanent injunction."

E.A. Sween Co., Inc. v. Deli Exp. of Tenafly, LLC, 19 F. Supp.
3d 560, 576 (D.N.J. 2014), citing eBay, Inc. v. MercExchange,
LLC, 547 U.S. 388, 391 (2006) (further internal citations
omitted).

The Court has previously determined that Plaintiffs have
satisfied the four factors listed in eBay. [Docket Item 9 at 13-
15.] Plaintiffs have demonstrated an irreparable injury and that
money damages would be inadequate to compensate Plaintiffs fully
for the injury. [Id. at 14.] The Court also found that Defendant

would not be harmed if he is enjoined from disparaging
Plaintiffs, "publishing personal information about Plaintiffs,
or visiting Moreno's home." [Id. at 15.] Finally, the Court
found that the public interest would be served by the entry of
the injunction in this matter. [Id.]

Because the eBay factors have been met, and because
Defendant does not oppose the motion to make the preliminary
injunction permanent, the Court will grant Plaintiffs' motion as
to the permanent injunction. The terms of the permanent
injunction adopt those of the preliminary injunction [Docket
Item 10] and are set forth in the accompanying Order and
Permanent Injunction.

### C. Legal fees and costs

Plaintiffs assert that Defendant is also liable for "the
legal fees and costs incurred as a result of Defendant's breach"
of the Settlement Agreement, pursuant to Paragraph 7, which
states that "if any party is found to be in breach of this
Agreement, it shall pay the reasonable legal fees and costs
incurred by the non-breaching party to enforce its rights in
this Agreement." [Docket Items 49-3 at 14-15; 49-2 at 3.]
Plaintiffs "seek[] an order" entitling them "to submit a
Certification of Legal Fees and Costs incurred in this action,
on notice to Defendant[,] for the Court's determination to set

the amount of fees and costs to be awarded." [Docket Item 49-3 at 15.] Because the Court has determined that summary judgment is appropriate on Plaintiffs' claim that Defendant breached the Settlement Agreement, the Court will grant Plaintiffs' motion. Plaintiffs may submit a Certification of Counsel of Legal Fees and Costs incurred by Plaintiffs to enforce the non-disparagement clause and negative light clause of the Settlement Agreement; such Certification shall be submitted in the format required by Local Civil Rules 54.1 & 54.2 with appropriate notice to Defendant, whose counsel will have an opportunity to respond, and the Court shall determine the appropriate amount of fees and costs to be awarded pursuant to Paragraph 7 of the Settlement Agreement.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Plaintiffs' Motion for Summary Judgment as to the breach of contract claim and grant summary judgment to Plaintiffs for eleven claims of breach of contract; grant Plaintiffs' Motion to enforce the liquidated damages provision and hold Defendant liable for $55,000.00 for the nine breaches of contract; grant Plaintiffs' Motion to convert the preliminary injunction to a permanent injunction; and grant Plaintiffs' Motion for attorney's fees and costs, and allowing counsel for

Plaintiffs to submit a Certification of Counsel of Legal Fees and Costs. The accompanying Order and Permanent Injunction will be entered.

**June 27, 2017**
DATE

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge