Warren S. Wolf, Esquire
GOLDBERG & WOLF, LLC
1949 Berlin Road, Suite 201
Cherry Hill, New Jersey 08003
Telephone: (856) 651-1600
Facsimile: (856) 651-1615
*Attorneys for Plaintiffs,*
*Michael Moreno and Medpro, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL MORENO AND MEDPRO, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RORY E. TRINGALI, <br><br> Defendant. | DOCKET NO. 14-CV-04002-JBS-KMW <br><br> CIVIL ACTION |

**PLAINTIFFS MICHAEL MORENO AND MEDPRO, INC.'S BRIEF IN SUPPORT OF A MOTION TO HOLD DEFENDANT IN CONTEMPT OF COURT AND FOR OTHER RELIEF**

## Table of Contents

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 1

LEGAL ANALYSIS ................................................................................................ 7

I. DEFENDANT SHOULD BE HELD IN CONTEMPT FOR AN INTENTIONAL VIOLATION OF THE PERMANENT INJUNCTION ENTERED ON JUNE 27, 2017 FOR THE EMAIL HE SENT ON JULY 5, 2018 ............................................................... 7

II. THE DEFENDANT'S EMAILS OF JULY 5, 2018, MAY 17, 2014 AND APRIL 15, 2016 CONSTITUTE THREE SEPARATE VIOLATIONS OF THE SETTLEMENT AGREEMENT AT $5,000 PER VIOLATION, ENTITLING PLAINTIFFS TO AN ADDITIONAL JUDGMENT OF $15,000 AND COUNSEL FEES ....................... 8

III. THE DEFENDANT SHOULD BE ORDERED TO PRODUCE THE DOCUMENTS REQUESTED IN THE DEPOSITION NOTICE AND TO SIT FOR HIS DEPOSITION AT PLAINTIFF'S COUNSEL'S OFFICE IN NEW JERSEY ................................... 10

IV. DEFENDANT SHOULD BE ORDERED THAT HE CANNOT ASSERT HIS RIGHT AGAINST SELF-INCRIMINATION IN RESPONSE TO A DEPOSITION AND DOCUMENT REQUESTS SEEKING INFORMATION PERTAINING TO HIS ASSETS IN 2018 AND SUCH RECENTLY TRANSFERRED OUT OF HIS NAME WHEREBY THE CRIMINAL CHARGES AGAINST HIM PERTAIN TO HIS CONDUCT IN 2006 AND 2007…………………….. ........................................................................... 14

CONCLUSION ..................................................................................................... 16

## Table of Authorities

Cases

*Andrews et al v. Holloway et al.,*
 1996 WL 495148 (D.N.J. 1996)..................................................................................7

*E.S. v. H.A.,*
 451 N.J.Super. 374, 384 (App. Div. 2017)..................................................................14

*Harley-Davidson, Inc. v. Morris,*
 19 F.3d 142, 148 (3d Cir.1994) ....................................................................................7

*McComb v. Jacksonville Paper Co.,*
 336 U.S. 187, 191 (1949) ..............................................................................................7

*State v. Muhammad,*
 182 N.J. 551, 567, 868 A.2d 302 (2005) ....................................................................14

*Terry v. Modern Woodmen of America,*
 57 F.R.D. 141, 143 (W.D.MO 1972) ..........................................................................12

*Thompson v. Sun Oil Company,*
 523 F.2d 647, 650 (8th Cir.1975)................................................................................12

*Waste Conversion, Inc. v. Rollins Environmental Services (NJ), Inc.,*
 893 F.2d 605, 609 (3d Cir.1990) ..................................................................................7

*United States v. Merritt-Chapman & Scott Corporation,*
 305 F.2d 121, 123 (3rd Cir. 1962)..............................................................................15

Federal Rules of Civil Procedure

Fed. R. Civ. P. 70(b)...............................................................................................................3

Fed. R. Civ. P. 69(a)(2) .........................................................................................................11

Fed. R. Civ. P. 8(b)(6) ...........................................................................................................15

## INTRODUCTION

This Court entered an injunction and money judgment against Defendant Rory Tringali ("Defendant" or "Mr. Tringali") under an Order entered June 27, 2017 ("Order"). The Defendant has failed to abide by the injunction, failed to pay the judgment, has transferred his assets into a Florida home in an apparent effort to put same beyond the reach of the Plaintiff's judgment and refused to provide any post-asset discovery responses. Instead, he has falsely tried to use his right against self-incrimination from a pending criminal proceeding pertaining to his conduct in 2006-7, claimed he has medical issues preventing him from traveling to New Jersey but has refused to produce documentation of same and has not offered any reason why he has not produced documents responsive to the document requests served upon him on July 14, 2018.

Plaintiffs, by their undersigned counsel, hereby file this Brief in support of their Motion seeking to (1) hold the Defendant in contempt for violating the permanent injunction, (2) increase the judgment entered against the Defendant for three violations of the Settlement Agreement and counsel fees, (3) compel the Defendant to appear for his deposition and to produce the requested documents and (4) determine the Defendant cannot assert his right against self-incrimination in such deposition.

## FACTUAL BACKGROUND

This Court may recall that this action was originally filed to enforce a Settlement Agreement resolving a prior federal action, Medpro, Inc., et al v. Syneron, Inc., Rory Tringali, et al., filed in the United States District Court in New Jersey, Camden Vicinage, Civil Case Number 08-cv-3426 ("Prior Federal Action"). The Prior Federal Action was settled pursuant to the Settlement Agreement ("Agreement") entered into by the parties on or around September 20,

2012. See Exhibit A to Verified Complaint filed in this matter, a true copy of the Verified Complaint with the Settlement Agreement is attached as Exhibit 1 to the Certification of Warren S. Wolf in Support Motion to Hold Defendant in Contempt of Court and for Other Relief dated September 14, 2018 ("Wolf. Cert."). The Agreement included a provision prohibiting the Defendant from disparaging or defaming Plaintiffs. Specifically, the Agreement at paragraph 13 states:

> 13. Non Disparagement and Defamation
>
> Plaintiffs, Tringali and Syneron agree not to make any disparaging remarks about any Party to the civil litigation or cast any such Party in a negative light, except to the Prosecutor or Judge in the pending criminal litigation. The parties agree that each violation of this section will result in the greater of $5000 damages per se or any actual damages a party can prove. This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.
>
> Plaintiffs and Defendants agree not to make any defamatory remarks about any Party to the civil litigation. The parties agree that each violation of this section will result in the greater of $5000 damages per se or any actual damages a party can prove. This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.
>
> *Id*.

The Agreement also provides for counsel fees and costs in the event of a breach at paragraph 7:

> 7. ... if any party is found to be in breach of this Agreement, it shall pay the reasonable legal fees and costs incurred by the non-breaching party to enforce its rights in this Agreement.
>
> *Id*.

Under the Order, this Court found that the Defendant violated the Agreement on eleven (11) different occasions and awarded the Plaintiffs judgment for $55,000 (11 x $5,000 =

$55,000). Attached as Exhibit 2 to Wolf cert. is a true copy of the Court's Order of June 27, 2017. The Order also awarded the Plaintiffs their counsel fees.[1]

The Order also entered a permanent injunction providing that, among other things, the Defendant "shall permanently cease and desist from disparaging and/or defaming the Plaintiffs and/or casting the Plaintiffs in a negative light, consistent with the single 'non-disparagement and defamation' provisions of paragraph 13 of the Settlement Agreement". The Order also required the Defendant to "permanently refrain from defaming or disparaging Plaintiffs within the business community."

The Order was served upon Defendant via Certified Mail, RRR and First Class Mail as required in the Order, at both of the addresses provided by him during his deposition and upon the offices of Robert Vort, Esquire who was Defendant's counsel of record.[2] Wolf Cert. at paras. 2-5.

*Defendant attempts to transfer his assets beyond the reach of his creditors*

Approximately six months after the judgment in the Order was entered, the Defendant appears to have purchased a home in Florida for $485,000 with cash. Wolf Cert. at paras. 13-14, Exhibit 9. There does not appear to be a mortgage against the Defendant's new home. Wolf Cert. at paras. 14-15. Since Florida has an unlimited homestead exemption, this appears to be a blatant attempt by the Defendant to shield $485,000 from Plaintiffs judgment.

---

[1] Counsel fees and costs of $51,632.11 were awarded under Order of January 10, 2018 and consolidated into the Order judgment through an order entered on January 22, 2018 in the total amount of $106,632.11.
[2] Mr. Vort died on September 3, 2017 and Defendant has subsequently had Stephen N. Dratch, Esquire enter an appearance on in this action.

*Defendant Continues to Defame Plaintiffs*

On July 5, 2018, Mr. Tringali sent an email to Darcy Wentzel at Money Tree Finance pertaining to a possible medical laser sale to About Skin East Auckland Skin and Laser Center. Attached as Exhibit A to the Certification of Plaintiff in Support Motion to Hold Defendant in Contempt of Court and for Other Relief dated 9/13/18 ("Plaintiff's Cert."), is a true copy of the email. In said email, Mr. Tringali is forwarding an older email wherein Mike Moreno and Justin Williams are cast in a negative light. The email states that Justin Williams and Mike Moreno worked together to allegedly rip off Mike Goodrich on a laser sale where money was wired to them and the buyer never received the lasers. The email alleges that a laser they were trying to ship was detained in customs and the money was never refunded to Mr. Goodrich's PayPal account. The email alleges that Mr. Goodrich will be posting more truths about the alleged fraud committed by Mike Moreno and Justin Williams. The email identifies certain websites associated with people who commit scams and fraud such as ripoffreport.com, complaintsboard.com and scamhelp.com. The email advises to watch out for others who work with Justin Williams such as Mike Moreno. The email appears to have been sent from Mr. Tringali to Ms. Wentzel in an effort to impede a sale of a medical laser to the About Skin East Auckland Skin and Laser Center. This appears to be an intentional violation of the permanent injunction entered against Defendant.

In addition to being a violation of a permanent injunction, the email of July 5, 2018 is also a violation of the Agreement. A further review of the email thread indicates that Mr. Tringali also sent two more emails with the same content which violate the Agreement. The aforementioned Mike Goodrich email was forwarded on May 17, 2014 from Mr. Tringali to Kelly McNamara, a dermal practitioner at the Longevity Lounge. See email attached to

4

Plaintiff's Cert. at Exhibit A. Then on April 15, 2016, Mr. Tringali sent the same email again to Ms. McNamara. Id.

Accordingly, the email thread attached to Plaintiff's Certification evidences three (3) different violations of the Agreement by Mr. Tringali whereby he forwarded the negative content against the Plaintiffs to third parties on July 5, 2018, May 17, 2014 and April 15, 2016. Each of these constitute a $5,000 violation under the Agreement. Accordingly, Plaintiff seeks an additional judgment against the Defendant for $15,000 for these three (3) violations of the Agreement.

*Post Judgment Asset Discovery*

Under letter dated July 16, 2018, Plaintiff served a Notice to take Oral Deposition of Rory Tringali and for document production in an effort to discover the Defendant's assets subject to execution to collect on the aforementioned money judgment. See Exhibit 3 to Wolf Cert. The notice was served upon a new address for Mr. Tringali which he provided in response to an information subpoena previously served upon him.

Mr. Tringali appears to have hired a new attorney in New Jersey, Stephen Dratch, Esquire. Under letter dated August 8, 2018, Mr. Dratch responded that Mr. Tringali could not appear for the deposition due to his health condition. See letter from Dratch dated August 8, 2018 attached to Wolf Cert. at Exhibit 4. Mr. Dratch then wrote a follow-up letter dated August 10, 2018 wherein he advised that Mr. Tringali would be evoking his privilege against self-incrimination in response to the deposition seeking to discover where his assets are located. Wolf Cert. Exhibit 5.

Under letter dated August 13, 2018, Mr. Wolf wrote to Mr. Dratch requesting documentation to support the allegation that Mr. Tringali was too ill to appear at a deposition in New Jersey. Wolf Cert. at Exhibit 6. The letter also requested that Mr. Tringali provide the documents requested in the Notice of Deposition so we could attempt to evaluate Mr. Dratch's request that the deposition possibly be held telephonically. The letter also questioned how Mr. Tringali could seek to assert his Fifth Amendment right against self-incrimination in a deposition seeking his assets in 2018 and those recently transferred out of his name since the criminal case involved facts pertaining to his conduct in 2006. See Mr. Wolf's letter of August 13, 2018 attached to Wolf Cert. at Exhibit 6.

Mr. Dratch responded with a letter dated August 17, 2018 enclosing a letter from Mr. Tringali again indicating that Defendant was going to assert his privilege against self-incrimination in response to a 2018 asset-seeking deposition. The letter did not respond to the request that the documents be provided. Attached as Exhibit 7 to Wolf cert. is the letter from Stephen Dratch, Esquire of August 17, 2018 and Mr. Tringali's letter of same date.

Under letter dated August 21, 2018, Mr. Wolf responded to Mr. Dratch to again remind him that his client has failed to produce any documentation pertaining to the alleged health issues of Mr. Tringali. See Wolf Cert. at Exhibit 8. The letter also explained that they have not given a reason as to why they cannot produce the documents requested in the subpoena. The letter also again reminded Mr. Dratch that the privilege against self-incrimination for conduct allegedly constituting a crime in 2006 would not have any effect on a deposition seeking to determine assets in the name the Defendant approximately 12 years later.

Neither Mr. Dratch nor Mr. Tringali have responded to Mr. Wolf's letter of August 21, 2018.

## LEGAL ANALYSIS

**I.   DEFENDANT SHOULD BE HELD IN CONTEMPT FOR AN INTENTIONAL VIOLATION OF THE PERMANENT INJUNCTION ENTERED ON JUNE 27, 2017 FOR THE EMAIL HE SENT ON JULY 5, 2018**.

A court may hold a party in contempt for failing to follow a court order.  Fed.R.Civ.P. 70(e).  This Honorable Court summarized the law of civil contempt as follows:

> In assessing whether an individual disobeyed this court's Order, the individual's conduct need not be willful or intentional, for, as the Supreme Court has noted "[t]he absence of willfulness does not relieve [a party] from civil contempt" in light of the remedial purposes underlying the civil contempt remedy. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949). See also Harley–Davidson, Inc. v. Morris, 19 F.3d 142, 148 (3d Cir.1994) ("We note that willfulness is not a necessary element of civil contempt."); Waste Conversion, Inc. v. Rollins Environmental Services (NJ), Inc., 893 F.2d 605, 609 (3d Cir.1990) (same).

Andrews et al v. Holloway et al, 1996 WL 495148 (D.N.J. 1996).

> The Order required the Defendant to
>
> permanently cease and desist from disparaging and/or defaming the Plaintiffs and/or casting the Plaintiffs in a negative light, consistent with the single 'non-disparagement and defamation' provisions of paragraph 13 of the Settlement Agreement and
>
> permanently refrain from defaming or disparaging Plaintiffs within the business community.

Order of June 27, 2017, attached to Wolf Cert. at Exhibit 2.

The Order was served upon Defendant at the two addresses provided by him via Certified Mail, RRR and First Class Mail pursuant to said order.  Wolf Cert. at paras. 2-4, Exhibit 2.  The Order was also served upon Defendant's counsel of record at such time.  Wolf cert. at para. 5, Exhibit 2.

On July 5, 2018, Mr. Tringali sent an email to Darcy Wentzel at Money Tree Finance pertaining to a possible medical laser sale to About Skin East Auckland Skin and Laser Center.

7

Attached as Exhibit A to the Certification of Plaintiff in Support Motion to Hold Defendant in Contempt of Court and for Other Relief dated 9/13/18 ("Plaintiff's Cert."), is a true copy of the email. In said email, Mr. Tringali is forwarding an older email wherein Mike Moreno and Justin Williams are cast in a negative light. The email states that Justin Williams and Mike Moreno worked together to allegedly rip off Mike Goodrich on a laser sale where money was wired to them and the buyer never received the lasers. The email alleges that a laser they were trying to ship was detained in customs and the money was never refunded to Mr. Goodrich's PayPal account. The email alleges that Mr. Goodrich will be posting more truths about the alleged fraud committed by Mike Moreno and Justin Williams. The email identifies certain websites associated with people who commit scams and fraud such as ripoffreport.com, complaintsboard.com and scamhelp.com. The email advises to watch out for others who work with Justin Williams such as Mike Moreno. The email appears to have been sent from Mr. Tringali to Ms. Wentzel in an effort to impede a sale of a medical laser to the About Skin East Auckland Skin and Laser Center. This appears to be an intentional violation of the permanent injunction entered against Defendant.

Defendant should be held in contempt of the Order for his intentional violations of same via his email of July 5, 2018.

## II.  THE DEFENDANT'S EMAILS OF JULY 5, 2018, MAY 17, 2014 AND APRIL 15, 2016 CONSTITUTE THREE SEPARATE VIOLATIONS OF THE SETTLEMENT AGREEMENT AT $5,000 PER VIOLATION, ENTITLING PLAINTIFFS TO AN ADDITIONAL JUDGMENT OF $15,000 AND COUNSEL FEES.

In the Order and the accompanying Court Opinion, this Court has already determined that the Agreement is a valid contract between the parties and Plaintiffs are entitled to $5000 for each

8

violation of the non-disparagement provisions of the Agreement. Wolf Cert. Exhibit 2.

Specifically, the Agreement at paragraph 13 states:

> 13. Non Disparagement and Defamation
>
> Plaintiffs, Tringali and Syneron agree not to make any disparaging remarks about any Party to the civil litigation or cast any such Party in a negative light, except to the Prosecutor or Judge in the pending criminal litigation. The parties agree that each violation of this section will result in the greater of $5000 damages per se or any actual damages a party can prove. This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.
>
> Plaintiffs and Defendants agree not to make any defamatory remarks about any Party to the civil litigation. The parties agree that each violation of this section will result in the greater of $5000 damages per se or any actual damages a party can prove. This amount is not intended as a penalty, but is agreed upon in the event actual damages are too difficult to prove.
>
> Wolf cert. at Exhibit 1.

The Agreement also provides for counsel fees and costs in the event of a breach at paragraph 7:

> 7. ... if any party is found to be in breach of this Agreement, it shall pay the reasonable legal fees and costs incurred by the non-breaching party to enforce its rights in this Agreement.
>
> Id.

In the Order, the Court found the Defendant violated the non-disparagement provisions eleven (11) times and awarded the Plaintiff's $55,000 plus their counsel fees. Wolf Cert. Exhibit 2.

Since the entry of the Order, Plaintiffs have learned of three (3) more violations of the Agreement. Defendant's email of July 5, 2018, as discussed above in the contempt of court section, is a violation of the non-disparagement clause of the Agreement. As explained above, it disparages and defames Plaintiffs and casts them in a negative light.

9

A further review of the email thread indicates that Mr. Tringali also sent two more emails with the same content which violate the Agreement. Plaintiffs Cert. at Exhibit A. The aforementioned Mike Goodrich email was forwarded on May 17, 2014 from Mr. Tringali to Kelly McNamara, a dermal practitioner at the Longevity Lounge. See email attached to Plaintiff's Cert. at Exhibit A. Then on April 15, 2016, Mr. Tringali sent the same email again to Ms. McNamara. Id.

In the Order and the accompanying Court Opinion, this Court has already determined that such breaches entitled the Plaintiffs to have their counsel fees paid by the Defendant pursuant to para. 7 of the Agreement. These new breaches should also justify the Defendant reimbursing Plaintiffs for their counsel fees incurred in this application.

Accordingly, the email thread attached to Plaintiff's Certification evidences three (3) different violations of the Agreement by Mr. Tringali whereby he forwarded the negative content against the Plaintiffs to third parties on July 5, 2018, May 17, 2014 and April 15, 2016. Each of these constitute a $5,000 violation under the Agreement. Accordingly, Plaintiffs seek an additional judgment against the Defendant for $15,000 for these three (3) violations of the Agreement and an award of their counsel fees incurred on this application.

### III. THE DEFENDANT SHOULD BE ORDERED TO PRODUCE THE DOCUMENTS REQUESTED IN THE DEPOSITION NOTICE AND TO SIT FOR HIS DEPOSITION AT PLAINTIFF'S COUNSEL'S OFFICE IN NEW JERSEY.

Although the Court has discretion to determine if the deposition should occur in New Jersey or Florida, it should occur in New Jersey because this action is based in New Jersey, the Defendant instituted this action in this Court, the Defendant violated this Court Order of June 27, 2017, the Defendant violated the Settlement Agreement of the parties which provides for

jurisdiction in the New Jersey Courts, the Defendant intentionally and purposely caused damages to a New Jersey resident through his conduct which resulted in the Settlement Agreement. Further, the Defendant claims medical reasons prevent him from appearing for a deposition in New Jersey, but has failed to produce any documents to justify same.  Lastly, the Defendant appears to have recently transferred $485,000 into a Florida home to put it beyond the reach of his creditors including Plaintiffs.

The Federal Rules provide that in "aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.  Fed. R.Civ.P. 69(a)(2).

Under letter dated July 16, 2008, Plaintiffs served a Notice of Deposition with Document Requests ("NDWDR") upon the Defendant and his only known counsel, Lawrence Leven, Esquire.[3]  Wolf Cert. Exhibit 3.

Defendant's new counsel Stephen Dratch, Esquire responded under letter dated August 8, 2018 that the Defendant wanted to resolve the matter amicably[4] and he could not appear for his deposition "for a variety of reasons, the most important being his health condition."  Wolf Cert. at Exhibit 8.  The letter also alleged the document requests were overly broad.

Mr. Dratch sent a second letter dated August 10, 2018 wherein he sought to have the deposition occur in the Defendant's home state of Florida or telephonically and again claimed

---

[3] The Court may recall that Mr. Leven represented the Defendant when the case was originally removed to his Court.  Subsequently, Robert Vort, Esquire entered and appearance for the Defendant, but died on September 5, 2017.  Stephen Dratch entered an appearance for the Defendant on September 5, 2018.

[4] Unfortunately, settlement discussions were not successful.

11

the Defendant has health issues which prevent him from coming to New Jersey for this deposition.[5]  Wolf Cert. Exhibit 5.

Mr. Wolf responded under letter of August 13, 2018 by asking for documentation or other proof of the Defendant's alleged medical conditions.  Wolf Cert. Exhibit 6.  In same letter, we also asked the Defendant to produce all documents in his possession responsive to the document requests which Defendant was not objecting.  We advised this will help the Plaintiffs evaluate the Defendant's request for a telephonic deposition.   The Defendant has failed to produce any documents responsive to the requests or any documentation to support the medical condition which prevents him from traveling to New Jersey for his deposition.

The District Court has great discretion in designating the location of the taking of a deposition Thompson v. Sun Oil Company, 523 F.2d 647, 650 (8th Cir.1975).  Each application must be considered on its own facts and equities. Terry v. Modern Woodmen of America, 57 F.R.D. 141, 143 (W.D.MO 1972).

Defendant should be required to appear for his deposition in New Jersey for several reasons.  First, this action is venued in New Jersey.  It is undisputed that this Court has jurisdiction in New Jersey.  Defendant is the party which instituted the action in his Court by removal.

Second, the Defendant has been targeting and attacking a New Jersey resident for over twelve (12) years and will not stop even with an injunction preventing him from continuing to cause such harm.  It all started in 2005 when Defendant began sending mafia-style threatening

---

[5] This letter also asserted the Defendant's right against self-incrimination which is discussed below.

emails to Plaintiffs. Verified Complaint[6] at paras. 15-26, Attached to Wolf Cert. as Exhibit 1. Then in 2006 and 2006, he destroyed Plaintiffs, whom are New Jersey residents, websites which was their primary source of income. Complaint at paras. 27-37. The Defendant been indicted in New Jersey for his horrible acts against its residents. Complaint at paras. 38-44. Plaintiffs brought the Prior Federal Action in 2008 which was based on the Defendant's aforementioned criminal conduct and resulted in a settlement. Complaint at para 12. Defendant breached the settlement and Plaintiffs were forced to file this action. The court found eleven (11) different breaches by the Defendant in the Order. Wolf Cert at Exhibit 2. The Court entered a permanent injunction against the Defendant in the Order which he has refused to abide by. See Contempt section above. He keeps doing bad acts to a New Jersey resident for over 12 years.

Third, the Defendant has refused to pay the judgment entered by this Court in the Order. Wolf Cert. para. 12. Instead, he bought a new home for $485,000 in the State of Florida. Wolf Cert at para. 13-14, Exhibit 9. The property appears to be free and clear of any mortgages. Wolf Cert at paras. 14-15. Since Florida has an unlimited homestead exemption, this appears to be a blatant attempt by the Defendant to transfer $485,000 beyond the reach of his creditors. The judgment in this action was entered only a few months before the Defendant transferred such funds. Clearly he has the funds to fly to New Jersey for his deposition.

For the foregoing reasons, it is requested Defendant produce the requested documents and appears for his deposition in New Jersey.

---

[6] All of these certified allegations have been deemed admitted by the Defendant because he failed to dispute same. Fed.R.Civ.P. 8(b)(6); United States v. Merritt-Chapman & Scott Corporation, 305 F.2d 121, 123 (3rd Cir. 1962).

13

**IV.     DEFENDANT SHOULD BE ORDERED THAT HE CANNOT ASSERT HIS RIGHT AGAINST SELF-INCRIMINATION IN RESPONSE TO A DEPOSITION AND DOCUMENT REQUESTS SEEKING INFORMATION PERTAINING TO HIS ASSETS IN 2018 AND SUCH RECENTLY TRANSFERRED OUT OF HIS NAME WHEREBY THE CRIMINAL CHARGES AGAINST HIM PERTAIN TO HIS CONDUCT IN 2006 AND 2007.**

As explained below, one of the reasons Defendant is asserting for failing to appear for his deposition and produce the documents requested by Plaintiffs is the Defendant's mistaken belief that he can assert his right against self-incrimination in response to same.  Accordingly, Plaintiffs seek an order directing Defendant that same is not applicable to Plaintiffs discovery requests because Defendant has failed to show how such discovery responses could possibly pertain to any alleged criminal conduct of the Defendant.

New Jersey's privilege against self-incrimination, although not enshrined in the State Constitution, is deeply rooted in New Jersey's common law and codified in both statute and an evidence rule. State v. Muhammad, 182 N.J. 551, 567, 868 A.2d 302 (2005).  It "offers broader protection than its federal counterpart under the Fifth Amendment." Id. at 568, 868 A.2d 302. Pursuant to N.J.S.A. 2A:84A–19, and its equivalent, N.J.R.E. 503, every person in New Jersey "has a right to refuse to disclose in an action ... any matter that will incriminate him or expose him to penalty." E.S. v. H.A., 451 N.J.Super. 374, 384 (App. Div. 2017).  The Appellate Division further explained that

> A  matter will incriminate (a) if it constitutes an element of a crime against this State, or another State or the United States, or (b) is a circumstance which with other circumstances would be a basis for a reasonable inference of the commission of such a crime, or (c) is a clue to the discovery of a matter which is within clauses (a) or (b) above; provided, a matter will not be held to incriminate if it clearly appears that the witness has no reasonable cause to apprehend a criminal prosecution. ...

Id; N.J.S.A. 2A:84A–18; N.J.R.E. 502.

14

The NDWDR seek to determine the Defendant's assets subject to execution because he has failed to pay the judgment entered by this Court. See discovery requests at Wolf Cert. at Exhibit 3.  Under letter dated August 10, 2018, Mr. Defendant's counsel Stephen N. Dratch, Esquire advised the Defendant will invoke his right against self-incrimination arising from the criminal case pending against the Defendant in Burlington County in response to the discovery requests seeking his assets in 2018.

The criminal case pending against the Defendant in Burlington County pertains to the Defendant's conduct in 2006 and 2007 wherein he destroyed the Plaintiffs' websites.  See Verified Complaint at paras. 27-44, attached to Wolf cert at Exhibit 1.   All of these certified allegations have been deemed admitted by the Defendant because he failed to dispute same. Fed.R.Civ.P. 8(b)(6); United States v. Merritt-Chapman & Scott Corporation, 305 F.2d 121, 123 (3rd Cir. 1962).

It is disingenuous for the Defendant to refuse to answer questions in a deposition or produce documents pertaining to his assets in 2018 and those recently transferred out of his name or held by others by claiming such responses will cause him to incriminate himself in a criminal matter pertaining to his conduct over 10 years ago.  The Prior Federal Action was the civil suit based upon the same facts as the criminal charges.  That case was settled.  This current action was sought to enforce the Agreement which was the settlement of the Prior federal Action. Plaintiffs already have judgment.  The NDWDR is solely sought to find assets to satisfy Plaintiffs' judgment.

Under letter dated August 13, 2018, we explained to Mr. Dratch that Defendant cannot asset his against self-incrimination arising from a criminal case based upon conduct in 2006-7 in response to discover requests seeking assets held in 2018.  Wolf Cert. at Exhibit 6.  Mr. Dratch

15

responded with a letter of August 17, 2018 which enclosed a letter of same date from Defendant. Wolf Cert. at Exhibit 7.  The Defendant's letter admitted that the criminal case was based upon his conduct from 2006 and 2007 and failed to show any connection to Plaintiffs' request to discovery Defendant's assets in 2018.   We pointed this out to Mr. Dratch in our letter of August 21, 2018 and have never received a response to same.  Wolf Cert. at Exhibit 8.

The Defendant cannot assert his right against self-incrimination because he has failed to show how responding to the Plaintiff's requests for asset discovery in 2018 could increase his exposure on pending criminal charges pertaining to his conduct in 2006-7.  Accordingly, the Defendant should be ordered that he can assert his right against self-incrimination in response to Plaintiff's pending discovery requests.

## CONCLUSION

For all of the foregoing reasons, this Honorable Court should grant Plaintiffs Michael Moreno and Medpro, Inc.'s Motion to Hold Defendant in Contempt of Court and (1) holding the Defendant in contempt for violating the permanent injunction, (2) increasing the judgment entered against the Defendant for three violations of the Settlement Agreement, (3) compelling the Defendant to appear for his deposition and to produce the subpoenaed documents and (4) determining the Defendant cannot assert his right against self-incrimination in such deposition.

Date:   9/14/18                                    __/s/ Warren S. Wolf_____
                                                                 Warren S. Wolf, Esquire
                                                                 Attorneys for Plaintiffs